**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ROBERT L. BREUDER, )
)
      Plaintiff, )
   v. )   Case No.: 1:15-cv-9323
)
BOARD OF TRUSTEES OF COMMUNITY )   Hon. Andrea R. Wood
COLLEGE DISTRICT NO. 502, DUPAGE )
COUNTY, ILLINOIS, an Illinois body politic and )
corporate, KATHY HAMILTON in her official )
and individual capacity, DEANNE MAZZOCHI )
in her official and individual capacity, FRANK )
NAPOLITANO in his official and individual )
capacity, and CHARLES BERNSTEIN in his )
official and individual capacity, )
)
      Defendants. )

**PLAINTIFF ROBERT L. BREUDER'S OPPOSITION TO DEFENDANTS MOTION**
**TO DISMISS COUNTS I, II, III, V AND VI OF THE COMPLAINT**

From January 1, 2009, until his wrongful termination on October 20, 2015, Plaintiff Robert L. Breuder ("Dr. Breuder") served as President of the College of DuPage ("COD"). During his tenure, Dr. Breuder oversaw a significant number of initiatives and improvements at COD that distinguished COD as a leader among community colleges nationwide, and which garnered Dr. Breuder much recognition amongst the academic community for his leadership skills. Over the last two years, however, COD's successes and Dr. Breuder's reputation have been tarnished by Defendants Kathleen Hamilton, Deanne Mazzochi, Frank Napolitano, and Charles Bernstein (collectively, "Defendants"), who have engaged in a personally motivated and malicious campaign to malign Dr. Breuder based on false charges of mismanagement, misconduct, fraud, and corruption. Using their official positions as members of the Board of Trustees ("Board"), Defendants denied Dr. Breuder any opportunity to defend his reputation or his administration of COD. In the months leading up to his termination, the Board placed Dr. Breuder under a "gag" order and prohibited him from attending any COD functions or Board meetings. For months and months, Dr. Breuder was forced to standby while Defendants slandered his reputation and took any and all means necessary to terminate his presidency at COD. Defendants now ask this Court to dismiss Dr. Breuder's due process, conspiracy, tortious interference, and defamation claims, based on purported defenses, immunities, and privileges. As the Complaint demonstrates, this plea should be denied, as Defendants' conduct was recklessly (if not knowingly) indifferent to Dr. Breuder's legal rights, thus refuting all immunities and privileges, and Dr. Breuder's claims otherwise are well pled.

## LEGAL STANDARD

Defendants seek dismissal of Counts I, II, III, V and VI of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To state a claim under the Federal Rules, a complaint need only to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the

plaintiff must allege facts that, when accepted as true and in a light most favorable to plaintiff, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted); *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich*, 722 F.3d at 915. Under Rule 12(b)(6), a complaint should be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Ledford v. Sullivan,* 105 F.3d 354, 357 (7th Cir. 1997). By these standards, Defendants' Motion to Dismiss should be denied.

## ARGUMENT

## I. COUNTS I AND II STATE A CLAIM AGAINST DEFENDANTS FOR DUE PROCESS VIOLATIONS OF DR. BREUDER'S PROPERTY AND LIBERTY INTERESTS

As set forth in Dr. Breuder's Opposition to the Board's Motion to Dismiss, filed herewith, Counts I and II state a claim for violation of Dr. Breuder's Fourteenth Amendment rights based on the unlawful termination of his employment as President of COD, which followed months and months of stigmatization and slander by Defendants, without due process of the law. Defendants now argue that they are entitled to immunity on Counts I and II because their actions did not violate a clearly established right to which Dr. Breuder was entitled. Qualified immunity generally is not grounds for dismissal on a Rule 12(b)(6) motion. *Guy v. State of Ill.*, 958 F. Supp. 1300, 1311 (N.D. Ill. 1997) ("it is rarely appropriate to address the question of qualified immunity on a Rule 12(b)(6) motion to dismiss . . . .") (citation omitted). Nevertheless, for the reasons below, Defendants' motion to dismiss Counts I and II should be denied.

### A. The Law Clearly Established that Dr. Breuder Had a Property Interest in His Employment By Virtue of His Contracts and Board Policies.

Defendants argue that they are entitled to qualified immunity on Count I because the law was not clearly established that Dr. Breuder had a protectable property interest in his employment

vis-à-vis his Employment Contract, the January 2015 Agreement, or Board policies. In so arguing, Defendants rely on a September 17, 2015 memo to the Board that "discussed Illinois law . . . and explained that Plaintiff's employment agreement was void *ab initio*."[1] Mot. at 2. Whether reliance on this memo was justified turns on two-step analysis: 1) was a constitutional right violated; and if so, 2) was the right clearly established under the law. *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 696 (7th Cir. 2004). There is no question that Dr. Breuder has alleged the violation of a constitutional right (*i.e.,* deprivation of a property right in his employment without due process), and that the law clearly established that he had such a right at the time of his termination. *See id.* (property right in contract); *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987) (property right in employer policy); *see also* Opp. to Bd. Mtn. § I.A.

Defendants are, however, entitled to a certain amount of "leeway in their actions," and if their "mistake as to what the law requires is reasonable, [they are] entitled to the immunity defense." *Baird*, 389 F.3d at 696 (citations omitted). The allegations in the Complaint demonstrate that Defendants were not reasonably mistaken as to what the law required, but instead knew that Dr. Breuder's contracts were valid and were intentionally and maliciously fabricating ways to skirt the law. *See* Cmplt. ¶¶ 57-89. That conclusion is made apparent by the fact that on March 25, 2015, Defendant Hamilton testified before the Illinois General Assembly regarding a bill (now enacted at 110 ILCS 805/3-65) to limit the authority of community college boards to execute multi-year employment contracts, and admitted that the then-current law permitted such contracts. (Ex. A.1 to Opp. to Bd. Mtn. at 6:3-5 ("[t]hree year[ contracts are] fairly standard for the presidents of

---

[1] The only issue addressed in the September 17 memo was whether the Employment Contract was void *ab initio* because it exceeded the term of the contracting board. Accordingly, the additional arguments raised regarding the validity of the contract (*i.e.,* that it violated Section 3.9 of the Illinois Public Community Colleges Act and the Open Meetings Act) do not provide grounds for immunity because Defendants did not rely on these arguments when terminating Dr. Breuder or voiding his Employment Contract.

community colleges").[2] Defendant Hamilton's admission, coupled by the allegations in the Complaint, raises a genuine question as to whether Defendants were "reasonably mistaken" as to what the law required. Thus, the Court should not dismiss Count I based on qualified immunity. *Baird*, 389 F.3d at 696-97; *Guy*, 958 F. Supp. at 1311.

### B. The Law Clearly Established that Dr. Breuder Had a Liberty Interest in His Occupational Freedom.

Defendants argue that they are entitled to immunity on Count II because "a reasonable person would not have known that the statements at issue were clearly established as defamatory under Illinois law." Mot. at 2-3. This argument fails for two simple reasons: 1) Dr. Breuder's federal liberty interest claim does not turn on his state common law defamation claim, *see* Opp. to Bd. Mtn. § II, and 2) state common law immunities and privileges do not apply to federal claims under 42 U.S.C. § 1983, *Owens v. Benigni*, No. 88 C 7036, 1989 WL 24096, at *1 (N.D. Ill. Mar. 14, 1989), *see also Sebesta v. Davis*, No. 12 C 7834, 2013 WL 5408796, at *2 (N.D. Ill. Sept. 26, 2013). Moreover, even if Dr. Breuder's defamation claim had any bearing on his liberty interest claim, the law clearly established that Defendants statements were defamatory under Illinois law, *see infra* Section IV, and so qualified immunity is not a basis for dismissal of Count II. *Guy*, 958 F. Supp. at 1311.

### II. THE COMPLAINT STATES A CLAIM FOR CIVIL CONSPIRACY AGAINST DEFENDANTS

Defendants assert that Dr. Breuder's civil conspiracy claim is not properly pled because: 1) it is not an independent cause of action under either Illinois or federal law; 2) it "adds nothing" to Dr. Breuder's breach of contract and due process claims; and 3) Defendants, as agents of the Board, cannot conspire amongst themselves. As set forth below, each of these arguments fails.

### A. Illinois and Federal Law Recognize Civil Conspiracy Claims Based on Breach of Contract and Due Process Violations.

As to civil conspiracy for breach of contract under Illinois law, Defendants are wrong to

---

[2] The Court can take judicial notice of the debates. *Perkins v. Linkedin Corp.,* 53 F. Supp. 3d 1222, 1241 (N.D. Cal. 2014); *Fleet Bank v. Burke*, 23 F. Supp. 2d 196, 202 (D. Conn.), *vacated on other grounds*, 160 F.3d 883 (2d Cir. 1998).

assert that Illinois does not recognize such a claim. Civil conspiracy to breach a contract has been recognized in Illinois for decades. *See, e.g., J.F. Equip., Inc. v. Owatonna Mfg. Co.*, 494 N.E.2d 516, 521-22 (Ill. App. Ct. 1986); *Dempsey v. Sternik*, 498 N.E.2d 310, 314 (Ill. App. Ct. 1986); *Blivas & Page, Inc. v. Klein*, 282 N.E.2d 210, 215 (Ill. App. Ct. 1972). In fact, this District has recognized that under Illinois law, "[w]here [a] third party influences a contracting party to breach the contract, the innocent contracting party has a cause of action against both the other contracting party and a tort [conspiracy] action against the third party." *Denari v. Genesis Ins. Co.,* No. 01 C 2015, 2002 WL 255505, at *1 (N.D. Ill. Feb. 22, 2002). Defendants also are wrong to argue that they cannot be conspirators under Illinois law since they were active wrongdoers (*i.e.,* parties to the breach). As the Complaint makes clear, Defendants are not charged as parties to the breach because Defendants were not parties to the contract. Thus, Defendants were not active wrongdoers but conspirators.

As to civil conspiracy claims under federal law, such claims are permitted under § 1983 if there is an underlying constitutional injury. *Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971, 984 (N.D. Ill. 2013). Defendants seem to acknowledge that fact, but argue that Dr. Breuder's conspiracy claim must be dismissed because it "adds nothing" to his due process claims which have been asserted against Defendants in their individual capacities. The logic behind this argument, though not entirely clear, is not supported by the law. This District has recognized conspiracy claims against state officials, acting in their individual capacities, even where the plaintiff also has charged the official with liability for the underlying constitutional violation. *Id.* at 980-81, 984 (allowing parallel § 1983 claims against state officials, acting in their individual capacities, for First Amendment violations and civil conspiracy). Accordingly, Dr. Breuder's conspiracy claim is rightly pled.

## B. The Intra-Corporate Doctrine Does Not Bar the Civil Conspiracy Claim.

Defendants also assert that Dr. Breuder's conspiracy claim should be dismissed because it is barred by the "intra-corporate" conspiracy doctrine. To date, the Seventh Circuit has not decided

whether the "intra-corporate" conspiracy doctrine applies to § 1983, and the district courts are split on whether it so applies. *Drager*, 969 F. Supp. 2d at 985. Nevertheless, whether the doctrine applies to § 1983 is of no consequence to Dr. Breuder's conspiracy claim for two reasons.

First, "[t]he deprivation of civil rights is unlawful and the intra-corporate doctrine only applies when members of a corporation are jointly pursuing the corporation's 'lawful business.'" *Id.* (citing *Sassak v. City of Park Ridge,* 431 F. Supp. 2d 810, 821 (N.D. Ill. 2006)). Since Dr. Breuder has alleged a violation of his civil rights, the intra-corporate doctrine does not bar his conspiracy claim.

"Second, an exception to the intra-corporate conspiracy doctrine exists where employees are motivated solely by personal bias." *Id.* (citing *Hartman v. Board of Trustees of Community College Dist.,* 4 F.3d 465, 470 (7th Cir. 1993)). The Complaint alleges facts from which the Court can infer that Defendants were motivated by personal bias and animus. *See* Cmplt. ¶¶ 33-49, 51-53, 58, 60-61, 70-89, 101. Thus, even if the intra-corporate conspiracy doctrine were applicable, it would not present a bar to the conspiracy claim at this juncture. *Drager*, 969 F. Supp. 2d at 985.

### III.   COUNT V STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

Defendants seek dismissal of Count V for the following reasons: 1) the contracts are void *ab initio*; 2) Defendants cannot interfere with their own contracts; and 3) Defendants are immune from liability for their actions. None of these reasons supports dismissal of Count V.

#### A.  The Employment Contract and January 2015 Agreement are Enforceable.

As set forth in Dr. Breuder's Opposition to the Board's Motion to Dismiss, the Employment Contract and the January 2015 Agreement are valid and enforceable. Opp. to Bd. Mtn. § I.A. Thus, Count V does not fail to state a claim on the basis that the contracts are void *ab initio*.

#### B.  Individual Board Trustees Can Be Liable For Tortious Interference with Contracts Executed by the Board.

Defendants argue that Count V fails to state a claim because individual trustees, as agents of the Board, cannot interfere with a contract executed by the Board. Under Illinois law, however, an

agent can be held liable for tortious interference with a contract executed by its principal. While an agent "may, for a proper business purpose and in good faith, influence the actions of the corporation, . . . [t]his qualified privilege does not apply where officers act *solely* for their own gain or *solely* for the purpose of harming plaintiff since such conduct is not undertaken to further the corporation's interest." *Mittelman v. Witous*, 552 N.E.2d 973, 987 (Ill. 1989), *abrogated on other grounds, Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129 (Ill. 1993). Under that logic, this District has held that trustees of a community college board can be held liable for tortious interference of contract where the "individual[ trustees are] acting to further their personal interests and not the interests of the college . . . ." *Bakalis v. Bd. of Trustees of Cmty. Coll. Dist. No. 504, Cty. of Cook, State of Ill.*, 886 F. Supp. 644, 645 (N.D. Ill. 1995). The Complaint here sufficiently alleges that Defendants were acting to further their own interests when voting to terminate Dr. Breuder's employment. *See* Cmplt. ¶¶ 32-56. Accordingly, Count V should proceed. *Bakalis,* 886 F. Supp. at 645.

## C.  Defendants' Conduct Is Not Protected by the Tort Immunity Act.

Defendants also contend that Count V must be dismissed because Defendants are immune from liability under Section 2-201 of Illinois Local Governmental and Governmental Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-101 *et seq*. Section 2-201 provides that a governmental official is immune from liability "resulting from his act or omission in determining policy when acting in the exercise of such discretion . . . ." *Id.* § 2-201. Illinois law is clear that to invoke immunity under Section 2-201, a governmental official bears the burden of establishing that the acts or omissions for which he is being sued "involve[] both the making of a policy choice and the exercise of discretion." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 679 (7th Cir. 2009); *see also Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 285 (Ill. 2003). Defendants have not met their burden of establishing that their actions involved both a policy choice and the exercise of discretion.

"The Illinois Supreme Court has defined 'discretionary' actions to be those 'unique to a

particular public office.'" *Valentino,* 575 F.3d at 679 (citing *Van Meter,* 799 N.E.2d at 286). "It also has held that decisions requiring a governmental entity to balance competing interests and to make a judgment call as to what solution will best serve those interests are policy decisions within the meaning of section 2–201." *Id.* (quotations omitted). While a community college board, acting through its trustees, does have discretion to hire and fire college employees, *see* 110 ILCS 805/3-32, a "one-time decision to fire one employee [ ] does not amount to a 'judgment call between competing interests.'" *Valentino,* 575 F.3d at 679 (quotations omitted). That is particularly true where the basis for the employee's termination is personal bias and animus and not a policy consideration. *See Valentino,* 575 F.3d at 679; *Weiler v. Vill. of Oak Lawn,* 86 F. Supp. 3d 874, 885 (N.D. Ill. 2015); *Bello v. Vill. of Skokie,* No. 14 C 1718, 2015 WL 9582986, at *13 (N.D. Ill. Dec. 31, 2015). In *Valentino,* for example, the Seventh Circuit denied immunity under the Tort Immunity Act to a mayor who fired an employee after she exposed corrupt practices in his office, because it was not established that the termination was the result of a policy decision. 575 F.3d at 679. Likewise, Defendants have failed to establish that their decision to terminate Dr. Breuder was the result of a policy consideration as opposed to personal bias and animus, as alleged in the Complaint.

"[B]ecause the Tort Immunity Act is in derogation of the common law, it must be strictly construed against the public entities involved." *Valentino,* 575 F.3d at 679. Where factual questions exist as to whether a decision was based on policy considerations or personal motivations, courts should not dismiss otherwise properly pled claims based on the Tort Immunity Act. Indeed, in *Weiler v. Vill. of Oak Lawn,* this District denied a motion to dismiss under the Tort Immunity Act where the allegations in the complaint raised a factual dispute about whether the Village Manager of Oak Lawn was "balancing competing interests" when he proposed a departmental reorganization that eliminated plaintiff's position, or was "retaliat[ing] against [plaintiff] for his complaints about [the Village Manager's] discriminatory comments and his support of the opposing party's

candidates." 86 F. Supp. 3d at 885. This District again reached that result in *Bello v. Vill. of Skokie*, where a factual question existed as to whether defendants were "balancing competing interests" or "retaliating against [plaintiff]" when they ordered him to cease responding 'kill' in roll call, ordered him to attend counseling, and suspended him . . . ." 2015 WL 9582986, at *13. Like *Weiler* and *Bello,* the Complaint here alleges facts sufficient to demonstrate that Defendants were not "balancing competing interests" when terminating Dr. Breuder, but rather were acting on personal motivations. *See* Cmplt. ¶¶ 32-56. Thus, the Tort Immunity Act is not grounds for dismissal.

### D. The Other Defenses Raised by Defendants Do Not Protect Defendants From Liability on Count V.

Defendants further seek dismissal of Count V on the basis that their actions in interfering with Dr. Breuder's contracts were protected by the First Amendment and subject to an absolute privilege. Neither argument supports dismissal of Count V.

As to the First Amendment, Defendants' argument is misplaced. Unlike the defendants in *Salaita v. Kennedy,* No. 15-cv-924, 2015 WL 4692961 (N.D. Ill. Aug. 6, 2015), Defendants are not true third parties to the contract. Defendants' status as third parties is a legal fiction, which applies only as a result of Defendants' use of their official positions to advance personal interests. This distinction is important: Unlike the *Salaita* defendants, whose power to interfere was limited to their opinions and threats, Defendants here had direct power to cause the injury as a result of their official positions as Board trustees. Thus, the protections provided in *Salaita* do not apply.

As to absolute immunity, Defendants articulate no reason why they are absolutely immune from liability on Count V. Defendants are entitled to absolute immunity only if acting within the scope of their duties. *See infra* Section IV.B (cases cited). If Defendants interfered with Dr. Breuder's contract only to advance their personal interests, then the interference was not reasonably related to Defendants' official duties. *Id.* Since the Complaint adequately alleges that Defendants acted solely to advance their personal interests, absolute immunity is not a basis for dismissal of Count V.

## IV. COUNT VI STATES A CLAIM FOR DEFAMATION UNDER ILLINOIS LAW

Defendants seek dismissal of Count VI, which alleges a claim for common law defamation, based on several different defenses, none of which supports dismissal of Count VI.

### A. The First Amendment Does Not Bar Dr. Breuder's Defamation Claim.

Defendants argue that they are entitled to First Amendment protection because their defamatory statements about Dr. Breuder were "non-actionable opinions statements" about a "public figure." Mot. at 9-10 (citing *N.Y. Times v. Sullivan,* 376 U.S. 254 (1964), *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), and *Hopewell v. Vitullo*, 701 N.E.2d 99 (Ill. App. Ct. 1998)). These arguments fail because: 1) Defendants' "opinion" statements were coupled by statements of fact that could be verified as true or false; 2) Dr. Breuder is not a "public official" or "public figure" under the U.S. Supreme Court's decisions in *Sullivan* and *Gertz*; and 3) even if Dr. Breuder is a "public official" or "public figure," he asserts a plausible claim that Defendants acted with "actual malice."

#### 1. Defendants' Statements Are Not Protected as Non-Actionable Opinions.

The statements made by Defendants about Dr. Breuder are not "non-actionable opinion statements." Under Illinois law, a statement is defamatory *per se* if it: (1) imputes the commission of a crime; (2) imputes infection with a loathsome communicable disease; (3) imputes an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) prejudices a party, or imputes a lack of ability, in his or her trade, profession or business." *Tunca v. Painter*, 965 N.E.2d 1237, 1252 (Ill. App. Ct. 2012). While "expressions of the speaker's opinion are protected under the first amendment and, therefore, not actionable, even if they are otherwise slanderous[, . . . a false assertion of fact can be libelous even if couched in terms of an opinion." *Id.* at 1253. Hence, "a statement is constitutionally protected under the first amendment only if it cannot be reasonably interpreted as stating actual facts." *Id.* (quotations omitted).

"[I]n determining whether a statement consists of facts or opinion, courts consider: (1) whether the statement has a precise and readily understood meaning; (2) whether the statement's literary or social context indicates that it contains facts; and (3) whether the statement is objectionably verified as true or false." *Id.* at 1253–54. Courts applying this standard often hold that a statement is not protectable opinion if the statement includes more than conclusory allegations of fault, incompetence, or the like. For example, in *Mittelman v. Witous*, the Illinois Supreme Court held that a statement was not protectable opinion where it provided more content than the mere allegation that the loss of a lawsuit was plaintiff's "fault." 552 N.E.2d at 985. There, the defendant's opinion was backed by factual statements that plaintiff "sat on [a] statute of limitations defense . . . for three years without attempting to settle in order to cut the firm's probable losses." *Id.* at 977, 985. Similarly, in *Tunca v. Painter*, the Illinois Appellate Court held that statements that "plaintiff had negligently cut that patient's artery and [thus] should expect a letter from a quality review committee regarding that negligent cutting of her artery" were not protectable opinion, because "defendants' alleged statements with regard to plaintiff's negligence contain a factual basis, namely, his cutting the patient's artery, which is a readily verifiable fact." 965 N.E.2d at 1254-55.

Like the statements in *Mittelman* and *Tunca,* Defendants' comments regarding Dr. Breuder's administration of COD included more than just opinions. Defendant's statements that Dr. Breuder's administration was "corrupt," "fraudulent," "wasteful," "abusive," and "criminal" were often coupled with statements of fact that could be objectionably verified as true for false, or were made contemporaneous to events that would factually verify the stated opinions. For example, on the night Defendants voted to place Dr. Breuder on administrative leave, Defendant Hamilton stated, "The College of DuPage has been through tough times—times marked by extraordinary and continuous denial. Those troubles are not yet over, but the cause of those troubles are." Cmplt. ¶ 61. At the time this statement was made, it was publicly known that several investigations were being

conducted at COD, including a criminal investigation relating to alleged fraud at COD's radio station. In context of this and other events leading up to Dr. Breuder's termination, as alleged in the Complaint and available in the public record, Defendants' statements cannot be reasonably construed as "non-actionable opinions." Thus, Count VI should not be dismissed.

2.  Dr. Breuder is Not a "Public Official" or a "Public Figure" Under *Sullivan* and *Gertz*.

Defendants also argue that their defamatory statements are protected under the U.S. Supreme Court's decision in *N.Y. Times v. Sullivan.* In *Sullivan,* the Supreme Court expanded First Amendment protection to defamatory statements made against "public officials" for matters relating to their official duties. 376 U.S. 254. While the decision rests on the strong public interest in robust and vigorous public discourse on matters of public concern, it is not unyielding. A "public official" can overcome the protections granted to his tortfeasors if it is shown that the defamatory "statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280. A decade later, the Supreme Court expanded *Sullivan* to "public figures." *Gertz,* 418 U.S. 323.

Defendants assert that Dr. Breuder's claims fall under *Sullivan* and *Gertz,* yet Defendants make no effort to establish that Dr. Breuder is either a "public official" or a "public figure." He is neither. Under *Sullivan* and its progeny, public education professionals are not "public officials" simply by virtue of their employment. In *McCutcheon v. Moran,* the Illinois Appellate Court held:

> We are unwilling to place the imprimatur of "public official" on a school teacher. . . .
> The relationship a public school teacher or principal has with the conduct of
> government is far too remote, in our minds, to justify exposing these individuals to a
> qualifiedly privileged assault upon his or her reputation.

425 N.E.2d 1130, 1133 (Ill. App. Ct. 1981); *see also Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc.,* 696 N.E.2d 761, 768 (Ill. App. Ct. 1998) (holding that work as a public teacher alone does not render plaintiff a public figure/official for purposes of a defamation claim); *Johnson v. Bd. Of Jr. Coll. Dist. No.* 508, 334 N.E.2d 442, 447 (Ill. App. Ct. 1975) (noting that junior college professors were

not public officials and not public figures for all purposes). As highlighted in *McCutcheon*, there is no reason its ruling should not apply equally to a community college president.

Dr. Breuder also is not a "public figure" under *Gertz* and its progeny. In *Gertz*, the Supreme Court set forth two bases for designating a plaintiff a "public figure": 1) instances in which "an individual [] achieve[s] such pervasive fame or notoriety," in which case, "he becomes a public figure for all purposes and in all contexts"; or 2) instances in which "an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." 418 U.S. at 351. In determining whether a plaintiff falls into either category, the Court cautioned that the decision should not be made "lightly" and that there should be no "assum[ption] that a citizen's participation in community and professional affairs rendered him a public figure for all purposes." *Id.* at 352. Instead, "[i]t is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id.*

In applying this standard, courts look to the particular controversy in dispute and question whether the plaintiff actively inserted himself into that controversy. In *Gertz*, for example, the Court held that plaintiff was not a "public figure," even though he was actively involved in the community, because his involvement in the controversy at issue was minimal and "[h]e plainly did not thrust himself into the vortex of [the controversy,] nor did he engage the public's attention in an attempt to influence its outcome." *Id.* at 352. Similarly, in *Davis v. Keystone Printing Service, Inc.*, the Illinois Appellate Court, applying *Gertz*, held that plaintiff was not a "public figure," despite his extensive involvement in public matters, where the evidence showed that he did not inject himself into the controversy giving rise to the defamation. 507 N.E.2d 1358, 1364-64 (Ill. App. Ct. 1987). Applying this rationale, there is no evidence (based on the face of the Complaint, as it must be) that Dr. Breuder inserted himself into the controversy that gave rise to his defamation claim. Rather, the

Complaint shows that the controversy was started first by Defendant Hamilton in collaboration with various political watchdog organizations, and then by Defendant Hamilton in collaboration with Defendants Mazzochi, Napolitano, and Bernstein. *See* Cmplt. ¶¶ 32-56. Moreover, on February 25, 2015, the Board issued a "gag" order to Dr. Breuder preventing him from taking any part in the controversy, including for the limited purpose of defending his reputation. Cmplt. ¶ 68. Under these facts, Dr. Breuder is not a "public figure" under the standard set forth in *Gertz* and adopted in *Davis*.

   3.   <u>The Complaint Sufficiently Alleges that Defendants Acted with Actual Malice.</u>

   Since Dr. Breuder is neither a "public official" nor a "public figure," he is not required to plead that Defendants acted with "actual malice." *See Davis*, 507 N.E.2d at 1364-66 (discussing actual malice standard under Illinois law). Nevertheless, the Complaint sets forth a plausible claim that Defendants' defamatory statements were made with actual malice.

   A defamatory statement is made with "actual malice" if it is made "with knowledge that it [is] false or with reckless disregard of whether it [is] false or not." *Sullivan,* 376 U.S. at 280. Whether an individual acts with actual malice or reckless disregard is a subjective inquiry but can be inferred from circumstantial evidence, such as where "there are obvious reasons to doubt the veracity of the informant," *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968), or where the defendant has a motive for defaming the plaintiff, *see Kipper v. NYP Holdings Co., Inc.,* 912 N.E.2d 26 n.4 (N.Y. 2009) (noting that "intent to injure plaintiff" is relevant to actual malice), *see also DR Partners v. Floyd,* 228 S.W.3d 493, 498 (Tex. App. 2007) ("[T]he relation of the parties" may be relevant to actual malice).

   Whether the actual malice standard is met is dependent on the facts of each case, and thus should be left to the province of the jury. *See St. Amant,* 390 U.S. at 732 (noting that it is the fact finder's charge to determine whether statements were made in good faith). At the pleading stage, all that is required is that plaintiff allege facts sufficient to give rise to a plausible claim that defendant acted with actual malice or reckless disregard. *Iqbal,* 556 U.S. at 678. The Complaint asserts facts

sufficient to give rise to such a claim, specifically in alleging that Defendants were motivated to defame Dr. Breuder in order to advance their personal and political interests. *See* Cmplt. ¶¶ 32-56. Accordingly, Defendants' First Amendment defense does not support dismissal of Count VI.

### B. Defendants Are Not Entitled to Absolute Immunity Based on the Pleading.

Defendants also seek dismissal of Count VI on the basis of absolute immunity. Under Illinois law, "officials of the executive branch of local governments cannot be held liable for statements made within the scope of their official duties." *Roberts v. Bd. of Educ.*, 25 F. Supp. 2d 866, 869 (N.D. Ill. 1998). This privilege is not a blanket immunity for government officials, as "[a]bsolute immunity is designed to protect [only] the functions that particular government officials perform, not the government officials themselves." *Auriemma v. Montgomery*, 860 F.2d 273, 277 (7th Cir. 1988). Accordingly, "[i]n determining whether a defendant is entitled to use the privilege as a defense, the inquiry focuses on the nature of the government official's duties" and whether the defamatory statements were reasonably related to those duties. *Roberts*, 25 F. Supp. 2d at 869-70; *see also Villagrana v. Vill. of Oswego*, No. 04 C 4603, 2005 WL 2322808, at *5 (N.D. Ill. Sept. 22, 2005).

The allegations in the Complaint demonstrate that Defendants are not entitled to absolute immunity because their defamatory comments were made outside the scope of their duties. First, the Complaint alleges that Defendants made several defamatory statements about Dr. Breuder not in their official capacities as Board trustees, but rather as private citizens. Defendant Hamilton made defamatory statements about Dr. Breuder in television and radio interviews in which she participated as a private citizen. Cmplt. ¶¶ 41-46, 53. Defendants Mazzochi, Napolitano, and Bernstein made defamatory comments about Dr. Breuder as private citizens prior to their election to the Board. Cmplt. ¶¶ 52, 54. Second, the Complaint alleges that Defendant Hamilton disseminated slanderous and libelous material about Dr. Breuder to various third parties unrelated to the Board or COD, including various political watchdog organizations. Cmplt. ¶¶ 35-40; *see also Villagrana*, 2005

WL 2322808, at *5 (defamatory comments made to unrelated third parties can relinquish immunity if such disclosure is outside the scope of an official's duties). Third, the Complaint alleges that Defendants made defamatory statements against Dr. Breuder solely to fabricate a basis to proceed with his termination. *See* Cmplt. ¶¶ 82, 83, 86, 89; *see also Roberts*, 25 F. Supp. 2d at 870 (false statements made to concoct a basis for terminating plaintiff may result in loss of immunity).

These allegations demonstrate that a factual question exists as to whether Defendants' defamatory comments were made within the scope of their official duties or were reasonably related to those duties. Accordingly, absolute immunity is not grounds for dismissal. *Roberts*, 25 F. Supp. 2d at 870 (dismissal inappropriate on a Rule 12(b)(6) motion where "allegations do not clearly point to the existence of a defense"); *Sandefur v. Vill. of Hanover Park, Ill.*, No. 10 C 5851, 2011 WL 2416036, at *7, *7 n.5 (N.D. Ill. June 9, 2011) (denying motion to dismiss where factual questions existed as to whether defendants were entitled to absolute immunity); *Villagrana*, 2005 WL 2322808, at *5 (same).

### C. Defendants Are Not Entitled to Qualified Immunity Based on the Pleading.

Defendants also are not entitled to dismissal of Count VI based on qualified immunity. "[T]he existence of conditional privilege alone will not protect a defendant from liability for defamation if the privilege was abused." *Anderson v. Beach*, 897 N.E.2d 361, 368 (Ill. App. Ct. 2008). "While the existence of such a privilege is a question of law for the court to decide, . . . '[o]nce the court decides that a qualified privilege exists, the plaintiff has the burden of showing that the defendant abused and lost the privilege by acting with actual or express malice.'" *Bogosian v. Bd. of Educ. of Cmty. Unit Sch. Dist. 200*, 73 F. Supp. 2d 949, 953 (N.D. Ill. 1999). Where the complaint alleges facts sufficient to demonstrate that the defendant may have abused the privilege (as it does here), dismissal on the pleadings is improper. *Id.* Indeed, "[i]t is the province of the jury" to make factual determinations as to whether a "defendant knowingly and intentionally published false information or recklessly disregarded its falseness." *Anderson*, 897 N.E.2d at 369. As discussed

herein, the Complaint alleges facts sufficient to give rise to a plausible claim that Defendants knowingly and intentionally published false information about Dr. Breuder or recklessly disregarded its falseness. Thus, qualified immunity is not grounds for dismissal. *Bogosian*, 73 F. Supp. 2d at 953.

### D. The Tort Immunity Act Does Not Bar Dr. Breuder's Defamation Claim.

Defendants have not met their burden to seek dismissal of Dr. Breuder's claims under Section 2-201 of the Tort Immunity Act. Illinois law requires that a governmental official seeking immunity under Section 2-201 establish that the acts or omissions for which he is being sued "involved both the making of a policy choice and the exercise of discretion." *Valentino*, 575 F.3d at 679; *Van Meter*, 799 N.E.2d at 285. Defendants have not demonstrated that their defamatory statements about Dr. Breuder were made in furtherance of "policy" determinations protected under Section 2-201. *See supra* Section III.C. Moreover, the Complaint alleges that many of the statements made by Defendants were made in their individual capacities, Cmplt. ¶¶ 41-46, 52-54, and the Tort Immunity Act does not protect a governmental official acting in his/her individual capacity, *see Bedenfield v. Shultz*, No. 01 C 7013, 2002 WL 1827631, at *10 (N.D. Ill. Aug. 7, 2002). Accordingly, dismissal of Count VI under Section 2-201 of the Tort Immunity Act should not be granted.[3]

### E. Statute of Limitations is Not a Bar to Count VI.

Defendants are correct that certain defamatory statements were made over a year from the filing of the Complaint. While those statements are not actionable in a suit for defamation under Illinois law, as they are time-barred, the Court should not wholly disregard the statements. The time-barred statements are relevant to Defendants' motive, intent, and malice in making later statements, and are properly considered for that purpose. The statements are also actionable with respect to Dr. Breuder's § 1983 claims. *Bryant v. City of Chicago*, 746 F.3d 239, 241 (7th Cir. 2014) (In Illinois, § 1983

---

[3] Defendants also argue that they are immune from liability under Section 2-210 of the Tort Immunity Act. Section 2-210 provides immunity only when a public employee is "acting in the scope of his employment." 745 ILCS 10/2-210. As discussed herein, the Complaint alleges that Defendants were not acting within the scope of their employment.

actions are subject to the two-year statute of limitations in 735 ILCS 5/13-202).

## V. Punitive Damages are Proper as to the Individual Capacity Claims

Defendants are not entitled to dismissal of the punitive damages prayers asserted against them in their individual capacities. Under 42 U.S.C § 1983, a plaintiff can recover punitive damages against a public official in his/her individual capacity "if the individual's conduct involves reckless or callous indifference to the plaintiff's federally protected rights or if the conduct was based upon an evil motive or intent." *Rojicek v. Cmty. Consol. Sch. Dist. 15*, 934 F. Supp. 280, 281 (N.D. Ill. 1996). Dr. Breuder is pursuing his § 1983 claims against Defendants in their individual capacities only, and since it is alleged that Defendants acted with ill motive and intent, or at least with reckless disregard, the punitive damage prayers are proper with respect to those claims. *Id.* Punitive damages also are appropriate with respect to Dr. Breuder's individual capacity state law claims. *McNamara v. Foley*, No. 97 C 4944, 1998 WL 409412, at *10 (N.D. Ill. July 15, 1998) (denying request to strike punitive damages claims against police officer in his individual capacity under Tort Immunity Act).

## VI. To the Extent the Complaint Alleges Official Capacity Claims Against Defendants, those Claims are Withdrawn

Defendants seek dismissal of all claims alleged against them in their official capacities that are redundant of claims asserted against the Board.[4] While Counts I and II (the only counts asserted against the Board and Defendants) do not charge Defendants specifically in their official capacities, to the extent these counts can be so construed, Dr. Breuder withdraws the official capacity claims. However, Counts I and II should proceed against Defendants in their individual capacities. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995); *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir. 1982).

---

[4] Defendants assert that the Board is a "municipal entity." Neither Section 3-11 of the Act nor the case cited by Defendants lead to that conclusion. *See* 110 ILCS 805/3-11 (defining Board as a "body politic and corporate"); *Bd. of Trs. of Cmty. Coll. Dist. No. 502 v. Dep't of Prof'l Regulation*, 363 Ill. App. 3d 190, 202 (2d Dist. 2006) (holding that community college board is a "political subdivision" under the Qualifications Based Selection Act).

WHEREFORE Plaintiff respectfully requests that the Court deny the Defendants' Motion to Dismiss Counts I, II, III, V and VI.

Dated: February 16, 2016

Respectfully submitted,

/s/ Melissa N. Eubanks_____
James R. Figliulo
Melissa N. Eubanks
FIGLIULO & SILVERMAN, P.C.
10 S. LaSalle Street, Suite 3600
Chicago, IL 60603
(312) 251-4600
*Attorneys for Plaintiff*

Martin A. Dolan
DOLAN LAW, P.C.
10 S. LaSalle Street, Suite 3702
Chicago, Illinois 60603
Phone: 312-676-7600
*Attorney for Plaintiff*

Terry A. Ekl
EKL, WILLIAMS & PROVENZALE LLC
Two Arboretum Lakes
901 Warrenville Road, Suite 175
Lisle, IL 60532
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

Melissa N. Eubanks, an attorney, states that a copy of the attached

## PLAINTIFF ROBERT L. BREUDER'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS COUNTS I, II, III, V AND VI OF THE COMPLAINT

will be caused to be served upon all counsel of record via electronic notification by the United States District Court's ECF System on February 16, 2016.

_/s/ Melissa N. Eubanks