# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT L. BREUDER, ) | |
| ) | |
| Plaintiff, ) | No. 1:15 cv 9323 |
| v. ) | Hon. Andrea R. Wood |
| ) | |
| BOARD OF TRUSTEES OF ) | |
| COMMUNITY COLLEGE DISTRICT ) | |
| NO. 502, DUPAGE COUNTY, ILLINOIS, ) | |
| an Illinois body politic and corporate, ) | |
| KATHY HAMILTON in her official and ) | |
| individual capacity, DEANNE ) | |
| MAZZOCHI in her official and individual ) | |
| capacity, FRANK NAPOLITANO in his ) | |
| official and individual capacity, and ) | |
| CHARLES BERNSTEIN in his official ) | |
| and individual capacity, ) | |
| ) | |
| Defendants. ) | |

## REPLY BRIEF IN SUPPORT OF
## BOARD OF TRUSTEES' MOTION TO DISMISS COUNTS I, II, AND IV

John P. O'Malley
Clare J. Quish
Peggy J. Osterman
SCHUYLER, ROCHE & CRISHAM, P.C.
180 North Stetson Avenue
Suite 3700
Chicago, IL 60601
(312) 565-2400
jomalley@SRCattorneys.com
cquish@SRCattorneys.com
posterman@SRCattorneys.com

Andrew C. Porter
Kaitlin G. Klamann
SCHIFF HARDIN LLP
233 S. Wacker Drive
Suite 6600
Chicago, IL 60606
(312) 258-5500
aporter@schiffhardin.com
kklamann@schiffhardin.com

*Attorneys for Defendant Board of Trustees*

Dated: March 14, 2016

**TABLE OF CONTENTS**

                                     **Page**

I.   Count I Fails for Lack of a Due-Process-Protected Property Interest ............................... 1

   A.   The Employment Agreement Was Void ................................................................. 1

     1.   COD Does Not Have Home-Rule Powers and, Under Dillon's Rule, Cannot Exercise Powers Inconsistent With Those Granted by Statute ........................................................................................................... 1

     2.   The Employment Agreement Was Void Ab Initio for Three Reasons ........................................................................................................ 4

       a.   The Agreement Attempts to Deprive Future Boards of the Power to Hire and Fire Plaintiff ....................................................... 4

       b.   The Agreement Attempts to Override the Public Community College Act ................................................................. 8

       c.   The Agreement Attempts to Override the Open Meetings Act .................................................................................................... 9

     3.   If the Underlying Employment Contract Is Void, the January 2015 Agreement Is also Void ............................................................................ 10

   B.   The Board's Policies and Procedures Do Not Create a Property Interest ............ 11

II.   Count II Fails to Allege a Due-Process-Protected Liberty Interest ................................. 13

III.   Even if Plaintiff Has a Property or Liberty Interest, He Received Sufficient Process ........................................................................................................................... 15

IV.   Plaintiff's Breach of Contract Claim Fails Because the Contract Is Void ....................... 15

Conclusion ........................................................................................................................... 15

As the Board's opening brief showed, Plaintiff has no due-process-protected property interest arising from his Employment Agreement because, for several reasons, the Agreement is void *ab initio* under Illinois law. Plaintiff argues that the Agreement is valid, incorrectly assuming that a community college board has powers equivalent to those of a home-rule unit of government such as the City of Chicago. The 1970 Illinois Constitution, however, limits such boards' powers to those prescribed by statute. Since the Employment Agreement conflicts with and exceeds the powers set forth in the Public Community College Act, 110 ILCS 805/1-1 *et seq.* (the "Act") and the Open Meetings Act, 5 ILCS 5/120 *et seq.* ("OMA"), it is void *ab initio* and bars Plaintiff's property-interest and contract claims.

Plaintiff's due process liberty claim also fails. To state such claim, a plaintiff must allege not only deprivation of his occupation, but also that a public official made defamatory statements about him. Here, the alleged statements by the individual defendants are non-defamatory as a matter of law, and therefore do not support a liberty-interest claim.

Finally, Plaintiff's due process claims fail because Plaintiff refused to avail himself of procedural protections offered by COD and the State of Illinois.[1]

**I.     Count I Fails for Lack of a Due-Process-Protected Property Interest.**

    **A.     The Employment Agreement Was Void.**

        **1.     COD Does Not Have Home-Rule Powers and, Under Dillon's Rule, Cannot Exercise Powers Inconsistent With Those Granted by Statute.**

Plaintiff argues that the Employment Agreement is valid and enforceable based on the premise that the Board has the same powers as a home-rule unit of government. Plaintiff challenges the Board's assertion that it is a "*non-home rule* body politic and corporate *and unit of local government.*" DE 49 at 3, n.2 (quoting DE 36 at 3; italics added by Plaintiff). As discussed

---

[1] The Board also adopts and incorporates the individual defendants' reply brief, DE 53.

below, the 1970 Illinois Constitution, the Act, and case law limit community college boards' powers to those conferred by statute. Since prior COD boards exceeded their statutory powers in approving and executing the Employment Agreement (including the original agreement and all four addenda), the Agreement is void *ab initio.*

Under the Illinois Constitution, a home-rule unit of government may "exercise any power and perform any function pertaining to its government and affairs." Ill. Const. art. VII, § 6. But only qualifying counties and municipalities (cities, villages, and incorporated towns) are granted these broad home-rule powers.[2] *Id.* All other units of local government "exercise limited governmental powers or power in respect to limited governmental subjects [and] shall have only powers granted by law." *Id.*, § 8. Article VII of the Illinois Constitution "'preserves the concept of Dillon's Rule'" for all non-home-rule units. *Metro. Sanitary Dist. of Greater Chi. v. On-Cor Frozen Foods, Inc.*, 36 Ill. App. 3d 239, 243 (1st Dist. 1976) (citing Constitutional Commentary, Smith-Hurd Annot. Const. Art. VII, § 8, at 85 (West 1971)). Article VII of the 1970 Illinois Constitution negated Dillon's Rule for home-rule units, but "[a]ll other units of local government . . . are still bound by Dillon's Rule." 1970 Illinois Constitution Annotated for Legislators (4th ed. updated 2005), at 63.[3] The substance of Dillon's Rule "is that such entities have no inherent powers, but only those powers either expressly granted by the legislature or necessarily incident thereto." *Buffalo, Dawson, Mechanicsburg Sewer Comm'n v. Boggs*, 128 Ill. App. 3d 688, 690 (4th Dist. 1984) (citing *Chi. Real Estate Bd. v. City of Chi*cago, 36 Ill. 2d 530, 537 (1967)). Under Dillon's Rule, any reasonable doubt about local governments' powers is resolved against the

---

[2] Only municipalities with populations over 25,000 or that elect by referendum to become home rule are granted home-rule status. The only counties deemed to be home-rule units of government are those with an elected CEO (such as Cook County). Ill. Const. art. VII, § 6.

[3] This annotation, by Illinois's Legislative Research Unit (the General Assembly's central research agency), is available at http://www.ilga.gov/commission/lru/ilconstitution.pdf.

existence of the power. *City of Des Plaines v. Metro. Sanitary Dist. of Greater Chi.*, 16 Ill. App. 3d 23, 25 (1st Dist. 1974) (citing Dillon, Municipal Corporations 448-50 (5th ed. 1911)), *rev'd on other grounds*, 59 Ill. 2d 29 (1974). *See also LaSalle Nat'l Bank v. Village of Brookfield*, 95 Ill. App. 3d 765, 769 (1st Dist. 1981).

Courts have expressly held that community college districts are units of local government under Illinois law. *See Swann v. William Rainey Harper Coll.,* No. 05 C 5919, 2008 WL 4681950, at *7 (N.D. Ill. May 20, 2008); *Bd. of Trs. of Cmty. Coll. Dist. No. 502 v. Dep't of Prof'l Regulation*, 363 Ill. App. 3d 190, 202 (2d Dist. 2006). "Units of local government are creatures of the legislature," and since their authority "is dependent upon the legislature," they cannot act "without a [legislative] grant of power." *Village of Woodridge v. Bd of Ed. of Cmty. High Sch. Dist. 99,* 403 Ill. App. 3d 559, 572 (2d Dist. 2010). Thus, a community college board's power is circumscribed by its governing statute, as parties who deal with the board are presumed to know. *See Ad-Ex, Inc. v. City of Chicago*, 207 Ill. App. 3d 163, 169 (1st Dist. 1990).

Contrary to Plaintiff's argument, Section 3-30 of the Act does not say anything different and certainly does not reverse Dillon's Rule — it simply provides that the Board may "exercise all other powers, *not inconsistent with this Act,* that may be requisite or proper for the maintenance, operation and development of [the college under its] jurisdiction."[4] 110 ILCS 805/3-30 (emphasis added). Thus, the Board's powers are limited to enumerated powers and powers consistent with the Act. As discussed below, the actions taken by the prior COD boards approving

---

[4] The law review article cited by Plaintiff is not persuasive. The article, which concerns school finance for public elementary and secondary schools, includes a footnote with the author's casual and unsupported musing that this section reverses Dillon's Rule for community college districts. Contrary to this musing, while the legislature can grant non-home-rule local government units specific powers, it cannot reverse the constitutionally-imposed Dillon's Rule (limiting the units' powers to those that the legislature has specifically granted). The author's comment misapprehends Dillon's Rule, misreads the Illinois Constitution and Section 3-30 of the Act, and fails to consider (much less distinguish) the extensive Illinois law on this topic.

the Employment Agreement were inconsistent with the Act and OMA. The Employment Agreement is therefore void: "[A] municipal contract which is legally prohibited or beyond the power of the municipality is absolutely void and cannot be ratified by later municipal action." *Ad-Ex,* 207 Ill. App. 3d at 170. Since the Employment Agreement is invalid and unenforceable for each of the three reasons discussed below, it "cannot conceivably give rise to a legitimate expectation of continued employment." *Schlay v. Montgomery,* 802 F.2d 918, 922 (7th Cir. 1986). Plaintiff's claim therefore fails.

      **2.**      **The Employment Agreement Was Void *Ab Initio* for Three Reasons.**

            **a.**      **The Agreement Attempts to Deprive Future Boards of the Power to Hire and Fire Plaintiff.**

Plaintiff does not dispute the common-law principle that public boards cannot tie successor boards' hands by entering into agreements with high-level employees extending beyond the board's tenure. *See* DE 36 at 5-7 (citing, *inter alia, Millikin v. Edgar Cty.,* 142 Ill. 528, 533 (1892), *Cannizzo v. Berwyn Twp.,* 318 Ill. App. 3d 478, 482-83 (1st Dist. 2000), and *Grassini v. DuPage Twp.*, 279 Ill. App. 3d 614, 620 (3d Dist. 1996)). Plaintiff correctly notes that this common-law principle no longer applies to certain educational employment contracts, ***but acknowledges that abrogation of this principle occurs only when the statute so provides.*** *See* DE 49 at 5. Here, the Act does not abrogate this principle.

The cases Plaintiff cites — *Sloan v. Sch. Dirs. of Dist. No. 22,* 373 Ill. 511 (1940) and *Pack v. Sporleder*, 394 Ill. 130 (1946) — not only concern a different statute (the Illinois School Code), but prove the Board's point that, unless its statute provides otherwise, a local governmental board may not enter contracts extending beyond its own term. *Sloan* and *Sporleder* both stand for the unremarkable proposition that since 1927 the Illinois School Code has specifically authorized school boards to enter into contracts for up to three years. *Sloan* upheld the constitution-

ality of Illinois School Code's authorization of multiyear contracts for "teachers, principals and superintendents in the public schools." *Sloan*, 373 Ill. at 514-15. The Illinois Supreme Court held that the cases forbidding multiyear contracts no longer applied because the statute had changed. *Id.* at 514. *Sporleder* similarly stated that before the Illinois School Code was revised to permit multiyear contracts, school boards could not enter teacher contracts beyond their current term, and that such contracts could be "extended by operation of the statute" only if "the General Assembly employed language which gives such right." *Sporleder,* 394 Ill. at 139. In both *Sloan* and *Sporleder*, the Illinois Supreme Court found clear statutory authority authorizing the multiyear contracts at issue. *Sloan* and *Sporleder* therefore support the Board's position: absent explicit statutory authority, a board *cannot* execute a contract with a high-level executive beyond the board's term. The statutory authority for multi-year contracts in *Sloan* and *Sporleder* (the Illinois School Code) does not apply here, as Plaintiff admits. DE 49 at 5. No statutory authority permitted prior COD boards to enter multiyear agreements with Plaintiff. The Act first allowed such multiyear contracts in September 2015, after Plaintiff's Employment Agreement and its addenda. *See* 110 ILCS 805/3-65. Schools like COD are not governed by the Illinois School Code (which governs only school districts responsible for elementary and secondary education in the State of Illinois, 105 ILCS 5/1-1 *et seq*.) — they are governed by the Act. Yet Plaintiff invites this Court to apply case law construing the Illinois School Code instead of the Act.

Plaintiff also relies on *Hostrop v. Bd. of Junior Coll. Dist. No. 515,* 523 F.2d 569 (7th Cir. 1975), which is distinguishable and does not apply. In *Hostrop*, the Seventh Circuit, interpreting Illinois law, held that a junior college's board had authority to contract with its president for a period greater than one year. *Id.* at 575. The Seventh Circuit reasoned that the Illinois General Assembly "intended . . . to give the board authority to establish its own policies with respect

to tenure" because "[r]ather than determining the tenure policy for the junior colleges, as it had done for the public schools, the General Assembly provided that the board itself . . . should 'establish tenure policies for the employment of teachers and administrative personnel.'" *Id.* at 575 (quoting section 103-32 of the Public Junior College Act). The Seventh Circuit viewed an extended contract as "limited tenure," and concluded that the General Assembly, by not including specific tenure policies in the Public Junior College Act, intended to give junior college boards the authority to determine their own tenure policies. *Id.* Five years later, however, in 1980, the legislature amended the Act to include specific tenure policies. *See* 110 ILCS 805/3B-1, 3B-2. The amendment limits tenure to "faculty members," explicitly *excluding* administrators (like Dr. Breuder). *See* 110 ILCS 805/3B-1. This express rejection of tenure for administrators supersedes *Hostrop*'s conclusion that an administrator can be given "tenure" by contract under Illinois law. Accordingly, *Hostrop* does not apply.[5] Likewise, the decision in *Steinmetz v. Bd. of Trs. of Cmty. Coll. Dist. No. 529*, 68 Ill. App. 3d 83 (5th Dist. 1978), cited by Plaintiff for the proposition that community college boards have broad authority to establish tenure policies, preceded the 1980 amendment and no longer applies.

      Significantly, after *Hostrop* the Seventh Circuit has recognized that political units such as the Board remain subject to the common-law principle prohibiting contracts exceeding the board's term. In *Crull v. Sunderman,* 384 F.3d 453, 466 (7th Cir. 2004), the Seventh Circuit recognized that "Illinois courts have held that 'it is contrary to the effective administration of a po-

---

[5] Plaintiff also cites two more cases involving contracts for community college presidents, but those cases did not directly address whether the contracts extended beyond the term of the board and whether that made them void *ab initio. See Bakalis v. Bd. of Trs. of Cmty. Coll. Dist. No. 504,* No. 93 C 0483, 1993 WL 528084, at *3 (N.D. Ill. Dec. 17, 1993); *Catanzaro v. Bd. of Trs. of Cmty. Coll. Dist. No. 504,* No. 90 C 2303, 1990 WL 77893, at *2 (N.D. Ill. May 21, 1990). The authority relied on by the Board, including the *Crull* case discussed below, was decided after these two cases and addresses the multiyear contract issue head on. In any event, these two cases' reliance on *Hostrop* is misplaced, since it was superseded by the 1980 amendment to the Act.

litical subdivision to allow elected officials to tie the hands of their successors with respect to decisions regarding the welfare of the subdivision." *Id.* (quoting *Cannizzo,* 318 Ill. App. 3d at 482-83). As discussed above, COD is a political subdivision. Therefore, the decision in *Crull* is controlling, and puts to rest the notion that *Hostrop* has any continuing vitality.

Plaintiff suggests that the new amendment to the Act (110 ILCS 805/3-65) reflects the legislature's intent to *limit* the ability of a community college board to enter into multiyear contracts with administrators. This suggestion flies in the face of the Illinois Constitution, Dillon's Rule, the common law principles regarding multiyear contracts, and basic rules of statutory construction. Under Dillon's Rule, any fair and reasonable doubt about local governments' powers is resolved *against* the governmental unit. *LaSalle Nat'l Bank v. Village of Brookfield*, 95 Ill. App. 3d 765, 769 (1st Dist. 1981). Before Section 3-65 was added to the Act in 2015, community college boards had no specific statutory authority to enter multiyear contracts with administrators. Any possible doubt on that issue was resolved in 1980 when the General Assembly enacted legislation allowing tenure for faculty members, but specifically excluding administrators.[6]

For all of the reasons set forth above and in the Board's opening brief, the general principles of Illinois law regarding multiyear contracts govern the Employment Agreement. The prior boards' *ultra vires* attempt to bind the hands of successor boards by extending the Employment Agreement beyond the term of the prior board(s) renders the Agreement void *ab initio*.

---

[6] The Court should disregard Plaintiff's discussion of the legislative history of the 2015 amendment for several reasons. First, since the Act's provisions are clear and unambiguous, the Court may not look to the legislative history. *See Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003) ("Where the language is clear and unambiguous, [the court] must apply the statute without resort to further aids of statutory construction."). Even if this Court were able to look to legislative history, examining legislative history from 2015 adds nothing to consideration of legislation passed a full 35 years before.

### b. The Agreement Attempts to Override the Public Community College Act.

The Act's requirements for taking official action on any measure before the Board are clear. "A majority of full voting membership of the Board shall constitute a quorum," and when a quorum is present to vote on "any measure before the Board, . . . a majority of the members voting on the measure shall determine the outcome thereof." 110 ILCS 805/3-9. The Employment Agreement conflicts with the quorum provision by giving Plaintiff the right to have all seven Board members present at a termination hearing — allowing a single trustee to veto Plaintiff's termination simply by not showing up. The Employment Agreement also conflicts with the Act (which empowers a majority of the quorum to take action on any measure) by requiring a "supermajority" of five of the seven trustees to terminate Plaintiff. *See* DE 36 at 7-9. The prior board had no authority to rewrite the Act.

Plaintiff insists that these provisions do not violate the Act because they fall within the board's power to "establish policies" governing the employment and dismissal of employees. 110 ILCS 805/3-32, 42. The board's power to establish policies, however, does not include the power to override the quorum and voting provisions of the Act. Those fundamental governance provisions are more than policies; they are law. Thus, although the board may determine as a matter of *policy* that an employee can be terminated only for "just cause," it cannot alter the *statutory* requirements for voting on such terminations. Here, the voting/quorum requirements set forth in Section 3-9 of the Act apply to all "measures before the board," and can be altered only through amendatory legislation.

Plaintiff next argues that, although the board's initial decision to enter into an employment contract is a "measure" that must be adopted in compliance with Section 3-9 of the Act, the voting provisions for termination are part of that initial measure, and subsequent votes taken pur-

- 8 -

suant to those provisions are not a "measure" as contemplated by the Act. Plaintiff's convoluted argument ignores the fact that *any* decision requiring board action, including the decision to terminate a contract, is necessarily a "measure before the board." 110 ILCS 805/3-9. A community college board cannot override Section 3-9 by including contrary provisions within an employment agreement; any change to those governance provisions requires action by the General Assembly. The attempt to rewrite the Act's voting/quorum provisions through the Employment Agreement was *ultra vires* and renders the Agreement void *ab initio*.

Plaintiff also argues that "[n]othing in the Act, including Section 3-9, prohibits a community college board from agreeing to provide the college president the right to meet with the full board prior to a termination hearing." DE 49 at 11. Plaintiff is wrong. Section 3-9 of the Act expressly provides that a quorum of the full membership of the Board — four of seven trustees — is authorized to conduct board business. 110 ILCS 805/3-9. Yet Section G.3 of the Employment Agreement allows Plaintiff to take away that authority by insisting that all seven members of the Board attend a termination hearing. This obliterates the right of four trustees to take action, in direct conflict with Section 3-9, rendering the Employment Agreement void *ab initio.*

Finally, Plaintiff's only response to the Board's argument that the Employment Agreement "grants a single trustee the power to prevent termination" (by not attending the full board meeting the Agreement mandates) is that Section 3-9 of the Act supposedly allows the same result, since any measure may pass or fail by a one-vote margin (*e.g.*, if there is a quorum of four and three votes are needed to pass). DE 49 at 11. But comparing the Employment Agreement's veto provision with a one-vote margin is absurd. The veto power exists only because of the Employment Agreement's "full attendance" mandate, which conflicts with Section 3-9 of the Act.

### c. The Agreement Attempts to Override the Open Meetings Act.

The Employment Agreement is also void because it allowed Plaintiff's employment to be

extended without any board action at all, and to be terminated in closed session. Contrary to Plaintiff's arguments (DE 49 at 9-10), these provisions violate the OMA, 5 ILCS 120/1 *et seq*.

Plaintiff does not deny that these provisions are unlawful, but argues that any action carried out in violation of the OMA is voidable rather than void. But the issue here is not whether a particular decision made by a prior board violated OMA. The issue is that the Employment Agreement purported to rewrite the OMA by providing that certain decisions required no board action whatsoever (contract extensions), and others could be taken in closed session (contract terminations). The Employment Agreement codifies the violation of OMA. This attempt to override the most fundamental OMA provisions governing the conduct of public business is beyond the authority of even home-rule units of government,[7] is antithetical to the letter and spirit of OMA, and cannot be ratified.[8] *See* 5 ILCS 120/1, 2(e).

Plaintiff's further argument that "action by inaction" is not "final action" within the meaning of OMA (DE 49 at 13) is disingenuous and unpersuasive. The continued employment or termination of the President of a community college district is a matter that requires board action. That decision must be made in compliance with the provisions of OMA, not behind closed doors or by inaction. The Employment Agreement flies in the face of the transparency required by OMA for these critical employment decisions, and is void *ab initio.*

### 3. If the Underlying Employment Agreement Is Void, the January 2015 Agreement Is also Void.

Plaintiff argues that the Employment Agreement (defined in the Complaint as the original

---

[7] Section 6 of OMA states: "The provisions of this Act constitute minimum requirements for home rule units; any home rule unit may enact an ordinance prescribing more stringent requirements binding upon itself which would serve to give further notice to the public and facilitate public access to meetings." 5 ILCS 120/6.

[8] Even if an action to extend or terminate a contract was improperly taken by a board in the first instance but subsequently ratified in open session, ratification does not solve the problem of the underlying contract providing for any decisions to be made in violation of OMA, as here.

agreement plus the first three addenda) and the January 2015 Agreement should be treated as separate agreements. *See* DE 49 at 2 n.1, 12. Plaintiff implies that the fatal problems the Board has identified in the underlying contracts do not apply to the January 2015 Agreement. The Complaint and exhibits refute Plaintiff's argument.

The January 2015 Agreement is entitled "***Fourth Addendum*** to President's Employment Contract" (DE 1, Ex. B), and the Complaint alleges that "the Board voted on and approved . . . the ***fourth addendum*** to the Employment Contract." DE 1, ¶ 27, Ex. B. Thus, it is clear on the face of the January 2015 Agreement that it and the preceding agreements are part of the same contract. Indeed, the January 2015 Agreement provides that "the terms and conditions of the Employment Contract shall remain in effect through the retirement date unless such term or condition is expressly superseded by this Fourth Addendum." DE 1, Ex. B.

Accordingly, if the underlying contract and its addenda are void *ab initio*, the fourth addendum — which is predicated upon and incorporates the underlying contracts — is also necessarily void. Even if the retirement date and separation terms of the earlier agreement were "expressly superseded" by the January 2015 Agreement, the illegal voting/quorum/multiyear provisions were not. In any event, the 2015 Agreement was approved for a term beyond that of the board sitting in January 2015, and therefore violated the "beyond term" contract rule (even if treated as a separate agreement).

**B.    The Board's Policies and Procedures Do Not Create a Property Interest.**

As discussed in the Board's opening brief, Administrative Policy No. 15-275 applies only to administrators under the general supervision of the President — it does not apply to the President, and therefore creates no property interest in his continued employment. Plaintiff does not directly dispute that this Policy is inapplicable to the President. Instead, he argues that the Board's *conduct* indicated that it applies to the President, or at least presents a factual question.

DE 49 at 14. But only formal Board action, and not Board *conduct*, can alter the Board's written policies. Here, the Board's policies, including Policy No. 15-275, were adopted on March 19, 2009, and updated on February 24, 2015.[9] The Board may have offered Plaintiff more process than he was due, but this does not establish a property interest to which he was entitled.

Even if this Policy were applicable to Plaintiff, he does not dispute that he rebuffed available post-termination process by failing to file an administrative appeal. This is fatal to his claim: employees cannot show the existence of a due process case or controversy unless they participated in the proceedings offered. *Fern v. Thorp Pub. Sch.* 532 F.2d 1120, 1134 (7th Cir. 1976) (plaintiff waived due process claim by not participating in post-termination hearing).

Plaintiff's contention that an appeal under Policy No. 15-251 would have been "fruitless" because the Board was not impartial (DE 1, ¶ 112) does not excuse his refusal to pursue post-termination process. He was required to use available procedures and to presume that the board members act in the public interest. *See Hortonville Joint Sch. Dist. No. 1. v. Hortonville Educ. Ass'n,* 426 U.S. 482, 495-97 (1976) (board members' involvement in events preceding decision to terminate did not overcome presumption of their honesty and integrity); *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 689 (7th Cir. 2004).

Moreover, when state law affords further avenues for review of a termination beyond a hearing before an allegedly biased board, and the plaintiff does not pursue such review, the employee cannot claim denial of procedural due process. *See Michalowicz v. Village of Bedford Park,* 528 F.3d 530, 534-38 (7th Cir. 2008) (affirming dismissal of complaint). In *Michalowicz,* a discharged employee complained that he was denied due process because the municipal defendant offered a hearing before its board of trustees, which was allegedly biased. *Id.* at 534-35. The

---

[9] *See* https://www.cod.edu/about/board_of_trustees /pdf/ board_policies.pdf.

Seventh Circuit rejected this claim because the plaintiff failed to pursue further review afforded by Illinois law (there, under the Administrative Review Law). *Id.* at 536. Here, if Plaintiff believed the Board was biased, he could have pursued a common-law writ of certiorari to obtain review, but did not.[10] As in *Michalowitz,* "because state law provides adequate remedies for the procedural violations [he] alleges, he has failed to state a due-process claim." *Id.* at 538. *See also Edelstein v. Cook Cty.*, No. 05 C 3563, 2006 WL 83444, *2 (N.D. Ill. 2006) (writ of certiorari is adequate state law process), citing *Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996).

## II. Count II Fails to Allege a Due-Process-Protected Liberty Interest.

Plaintiff concedes that a federal liberty-interest claim requires "'the employee to show that a public official made defamatory statements about him' that were 'false assertions of fact.'" DE 49 at 14-15. He argues that this "does not somehow make a federal liberty interest claim and state law defamation claim one and the same." *Id.* at 15. The Board does not assert that the two claims are identical — a due process liberty-interest claim requires not only (1) defamation, but also (2) that it made the plaintiff virtually unemployable in his field. *Paul v. Davis,* 424 U.S. 693, 710-12 (1976); *Bishop v. Wood*, 426 U.S. 341, 349-50 (1976); *Strasburger v. Bd. of Educ., Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998); *Townsend v. Vallas*, 256 F.3d 661, 671-72 (7th Cir. 2001). But whether Plaintiff has alleged the second element is not at issue in this motion. The question is whether he has adequately pled the defamation element, and

---

[10] Review of decisions of administrative agencies such as COD's Board (*see* 735 ILCS 5/3-101) is provided by the Administrative Review Law when it is expressly adopted by the act in question, and otherwise by a common-law writ of certiorari. *See Smith v. Dep't of Pub. Aid*, 67 Ill. 2d 529, 540-41 (1977) ("if the statute creating or conferring power on an administrative agency does not contain an express reference to the Administrative Review Act, . . . then common-law certiorari is a general method for reviewing the action of agencies and tribunals exercising administrative functions"). Since the Illinois Public Community College Act does not adopt the Administrative Review Law as the avenue for review of decisions by a community college board, common-law certiorari provides the avenue of review.

in this regard the two claims are effectively the same.[11] Accordingly, his argument raises a distinction without a difference. The critical point is that he has not sufficiently alleged defamation.[12] *See Stevens v. Tillman,* 855 F.2d 394, 403 (7th Cir. 1988) (sharply critical speech about school governance by school's principal was "legitimate public debate").

Plaintiff also argues that the "public figure" defense does not apply here, because a public figure need not prove malice in a constitutional liberty-interest claim. Plaintiff, however, pled that the individual defendants acted "maliciously" and with "reckless disregard for the truth." *See, e.g.,* DE 1, ¶¶ 32, 34, 48, 65, 67, 82, 83, 89. In other words, Plaintiff attempted to plead the elements required for a public figure to state a defamation claim under *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964) and *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342-45 (1974). As set forth in the Board's brief, Plaintiff has not successfully pled actual malice. Moreover, even if Plaintiff is not required to plead malice to state a due process liberty-interest claim, the alleged statements about Plaintiff's professional failings are non-actionable opinion statements. *See* the Individual Defendants' January 11, 2016 Motion to Dismiss (DE 38) and Memorandum

---

[11] The elements of an Illinois defamation claim are a false statement by the defendant about the plaintiff, the defendant's unprivileged publication of the defamatory statement to a third party, and damage. *See Myers v. The Telegraph*, 332 Ill. App. 3d 917, 922 (5th Dist. 2002). In a federal occupational liberty claim, plaintiff must likewise show that the defendant made false assertions of fact about the plaintiff, that the false statements were publicly disclosed, and that as a result the plaintiff suffered a tangible loss to his occupational liberty. *See Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010); *Strasburger*, 143 F.3d at 356. *See also Olivieri v. Rodriguez,* 122 F.3d 406, 408 (7th Cir. 1997) (defamation is part of "infringement of liberty of occupation" due process claim).

[12] To plead a claim for deprivation of occupational liberty, a plaintiff must first "show that a public official made defamatory statements about him" that were "false assertions of fact." *Strasburger,* 143 F.3d at 356. "True but stigmatizing statements that preclude further government employment do not support this type of claim. Nor do statements of opinion, even stigmatizing ones, if they do not imply false facts." *Id. Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 518 (1st Dist. 1998), held that a statement that someone was "'fired because of incompetence' is nonactionable opinion."

(DE 39) and March 14, 2016 Reply Memorandum, incorporated here by reference.[13]

## III. Even if Plaintiff Has a Property or Liberty Interest, He Received Sufficient Process.

As discussed in Section I.B above, Plaintiff waived his right to a comprehensive post-termination hearing by refusing to follow the appeals procedures available to him under state law. All of Plaintiff's many allegations regarding the supposed inadequacy of the process offered to him are irrelevant in light of the undisputed fact that Plaintiff deliberately failed to avail himself of the processes offered to him by the Board and available to him under state law. Plaintiff's decision to file this lawsuit immediately rather than availing himself of the processes available to him is fatal to his claim in Count II.

## IV. Plaintiff's Breach of Contract Claim Fails Because the Contract Is Void.

Count IV, Plaintiff's breach of contract claim, fails because the Employment Agreement is not a valid and enforceable contract. Since the existence of a valid and enforceable contract is an essential element of a breach of contract claim, Count IV should be dismissed.

## Conclusion

For the reasons set forth above, Counts I, II, and IV should be dismissed.

Dated: March 14, 2016	Respectfully submitted,

BOARD OF TRUSTEES OF COMMUNITY
COLLEGE DISTRICT NO. 502, DUPAGE
COUNTY, ILLINOIS

/s/ John O'Malley	/s/ Andrew C. Porter

John P. O'Malley	Andrew C. Porter
Clare J. Quish	Kaitlin G. Klamann
Peggy J. Osterman	SCHIFF HARDIN LLP

---

[13] The Board withdraws its arguments based on the common law and immunities and privileges applicable to the individual defendants, and also withdraws its argument based on the Local Governmental and Governmental Employees Tort Immunity Act.

| | |
|---|---|
| SCHUYLER, ROCHE & CRISHAM, P.C. | 233 S. Wacker Drive |
| 180 North Stetson Avenue | Suite 6600 |
| Suite 3700 | Chicago, IL 60606 |
| Chicago, IL 60601 | (312) 258-5500 |
| (312) 565-2400 | aporter@schiffhardin.com |
| jomalley@SRCattorneys.com | kklamann@schiffhardin.com |
| cquish@SRCattorneys.com | |
| posterman@SRCattorneys.com | |

*Attorneys for Defendant Board of Trustees*

- 16 -

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2016, I caused copies of the foregoing REPLY BRIEF IN SUPPORT OF BOARD OF TRUSTEES' MOTION TO DISMISS COUNTS I, II, AND IV to be served on all counsel of record by filing electronic copies with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users.

/s/ Kaitlin G. Klamann