# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT L. BREUDER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No.: 1:15-cv-9323 |
| ) | |
| BOARD OF TRUSTEES OF COMMUNITY ) | Hon. Andrea R. Wood |
| COLLEGE DISTRICT NO. 502, DUPAGE ) | |
| COUNTY, ILLINOIS, an Illinois body politic ) | |
| and corporate, KATHY HAMILTON in her ) | |
| official and individual capacity, DEANNE ) | |
| MAZZOCHI in her official and individual ) | |
| capacity, FRANK NAPOLITANO in his official ) | |
| and individual capacity, and CHARLES ) | |
| BERNSTEIN in his official and individual capacity, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF DR. ROBERT L. BREUDER'S SUR-REPLY IN OPPOSITION
TO THE BOARD OF TRUSTEES' MOTION TO DISMISS**

On January 7, 2016, Defendant Board of Trustees of Community College District No. 502, DuPage County Illinois (the "Board"), filed a Motion to Dismiss Counts I, II, and IV of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 35 – 36.) On March 14, 2016, the Board filed a Reply in Support of its Motion (hereinafter, "Reply Brief"). (Dkt. No. 52.) The Reply Brief asserts new arguments and misconstrues important precedent such that a response is warranted. Accordingly, Plaintiff Robert L. Breuder ("Dr. Breuder"), through his attorneys, hereby submits the following Sur-Reply in Opposition to the Board's Motion to Dismiss.

I. **A COMMON LAW WRIT OF *CERTIORARI* WOULD NOT PROVIDE ADEQUATE DUE PROCESS UNDER THE CIRCUMSTANCES.**

As the Board acknowledges, "'[A] public employee dismissible only for cause [is] entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing.'" (Bd. Mtn., Dkt. No. 36, at 13 (citing *Gilbert v. Homar,* 520 U.S. 924, 929

(1997)).) Yet, despite this acknowledgment, the Board does not deny that it ignored Dr. Breuder's multiple requests for a pre-termination hearing and instead restricted Dr. Breuder's opportunity to "tell his side of the story" to a written response (which, under the circumstances, does not come close to what is required by the Fourteenth Amendment). The Board also does not deny that it would have rejected any request by Dr. Breuder for a "comprehensive post-termination hearing" under Board Policy No. 15-251—in fact, the Board is adamant that Dr. Breuder had no rights under Policy No. 15-251. It is clear from these concessions that there is no genuine dispute that the Board denied (or rendered utterly meaningless or non-existent) any form of pre- and post-termination process available to Dr. Breuder. Indeed, in a last-ditch effort to support its motion for dismissal, the Board argues that sufficient due process was available to Dr. Breuder through a common law writ of *certiorari*. (Reply Brief at 12 – 13.) That argument necessarily fails.

To pursue a due process claim pursuant to 42 U.S.C. § 1983, a plaintiff is not required to exhaust state remedies. *Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496, 516 (1982). Where state remedies are available but inadequate, a plaintiff may pursue a federal due process claim. *See Kasak v. Vill. of Bedford Park*, 552 F. Supp. 2d 787, 792 – 93 (N.D. Ill. 2008) (allowing § 1983 to proceed where state law post-deprivation remedies were inadequate). A state post-deprivation remedy is inadequate if it can "'be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment.'" *Id.* at 792 (N.D. Ill. 2008) (citing *Easter House v. Felder,* 910 F.2d 1387, 1406 (7th Cir. 1990)). Under the circumstances, a common law writ of *certiorari* is inadequate.

"The common law writ of *certiorari* provides an avenue whereby a party who has no means of direct review or appeal may obtain a limited review of an action by a court or other tribunal exercising quasi-judicial functions." *Id.* at 793 (citation omitted). "The purpose of a writ of *certiorari* is to have the entire record of an inferior tribunal brought before the court to determine, from the

2

record alone, whether the tribunal proceeded according to the applicable law." *Id.* (quotation and citation omitted). A common law writ of *certiorari* thus is limited to review of the record from the prior proceedings. *Id.* at 793. Accordingly, where no prior record exists upon which a court considering a writ of *certiorari* could rely, a writ of *certiorari* would be meaningless "'and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment.'" *Id.* at 792 (quoting *Easter House,* 910 F.2d at 1406). Since Dr. Breuder was denied any hearing that would precede a writ of *certiorari*, there is no record upon which a court could rely, and thus a common law writ of *certiorari* would be inadequate under the Fourteenth Amendment. *See id.* at 793. Dr. Breuder's failure to pursue a writ of *certiorari*, therefore, does not preclude his due process claim under § 1983.

## II. THE BOARD MISCONSTRUES PRECEDENT RELATING TO THE ILLINOIS PUBLIC COMMUNITY COLLEGES ACT.

The Board spends much time in its Reply Brief arguing that it is a "non-home rule" "unit of local government" that is subject to the common law principle known as "Dillon's Rule." (Reply Brief at 1 – 4.) The Board's emphasis on Dillon's Rule is pointless, as Dillon's Rule has no applicability to the Board's powers under Sections 3-26, 3-32, and 3-30 of the Illinois Public Community Colleges Act, 110 ILCS 805/1-101 *et seq.* (the "Act").

As the Board recognizes, Dillon's Rule does not apply to "powers either expressly granted by the legislature or necessarily incident thereto." (Reply Brief at 2 (citing *Buffalo, Dawson, Mechanicsburg Sewer Comm'n v. Boggs*, 128 Ill. App. 3d 688, 690 (4th Dist. 1984).) Section 3-32 of the Act expressly grants the Board the very powers that it urges this Court to hold it lacks (*i.e.,* "[t]o establish tenure policies for the employment of teachers and administrative personnel, and the cause for removal"). The Board offers no compelling argument that Section 3-32 does not give it the power to set a tenure policy by contract, including the power to allow tenure beyond the term of the contracting board, just as the Seventh Circuit held in *Hostrop v. Bd. of Jr. Coll. Dist. No. 515, Cook & Will Ctys. & State of Ill.*, 523 F.2d 569, 574-75 (7th Cir. 1975). Indeed, the arguments advanced by the

3

Board to overcome *Hostrop* (and the broad authority granted by Section 3-32) fail for many reasons.

First, the Board's effort to avoid *Hostrop* by attempting to distinguish *Sloan v. Sch. Dirs. of Dist. No. 22,* 373 Ill. 511 (1940) and *Pack v. Sporleder*, 394 Ill. 130 (1946), cases which the *Hostrop* court relied upon in reaching its decision, entirely misses the point. At the time *Sloan* and *Sporleder* were decided, the statutory provisions at issue in those cases governed both Illinois public schools and Illinois junior colleges. As pointed out in Dr. Breuder's Opposition to the Board's Motion of Dismiss, the tenure statutes at issue in *Sloan* and *Sporleder* were expanded to junior colleges in 1937 when the General Assembly passed the first Junior Colleges Act, which provided for the development of the junior college system as a part of the public school system. (Opp., Dkt. No. 49, at 4 – 5 (citing Ill. Rev. Stat. 1937, ch. 122, § 99.1 *et seq.*).) Thus, the precedential value of *Sloan* and *Sporleder* applies equally to the Illinois School Code and the Act. That is exactly what the *Hostrop* court recognized when it held that the intent behind Sections 3-26 and 3-32 of the Act was "not to reinstate for junior colleges the rule of the *Stevenson* and *Davis* cases, but to give the board authority to establish its own policies with respect to tenure, which in its broadest sense includes the limited tenure afforded by a contract . . . ." *Hostrop,* 523 F.2d at 575.

Second, the Board's discussion of Article IIIB of the Act, which provides standardized tenure policies for "faculty members," is meaningless. The fact that the General Assembly codified specific tenure policies for "faculty members" after *Hostrop* does negate the Seventh Circuit's analysis in *Hostrop*. Article IIIB had no effect on a community college board's powers to establish tenure policies for all other non-"faculty member" teachers and administrators under Section 3-32. If the General Assembly intended to abrogate a community college board's powers under Section 3-32, as the Board now suggests, then the General Assembly would have explicitly done that when enacting Article IIIB. It did not. Thus, the Seventh Circuit's analysis in *Hostrop* is still valid as it applies to a presidential contract executed pursuant to Sections 3-26 and 3-32 of the Act.

Third, the Board is wrong that Section 3-30 does not clearly evince the General Assembly's intent to reverse Dillon's Rule as to the Board's powers under the Act (especially as to Section 3-32). Section 3-30 of the Act states: "This enumeration of powers **is not exclusive** but the **board may exercise all other powers,** not inconsistent with this Act, that may be requisite or proper for the maintenance, operation and development of any college or colleges under the jurisdiction of the board." 110 ILCS 805/3-30 (emphasis added). Section 3-30 thus authorizes a community college board to exercise any power—even if not expressly provided for in the Act—so long as it is "requisite and proper" and is not "inconsistent with this Act." This grant of authority not only is broad, *see Steinmetz v. Bd. of Trustees of Cmty. Coll. Dist. No. 529*, 385 N.E.2d 745, 748 (Ill. App. Ct. 1978), but explicitly overrides the limitation imposed by Dillon's Rule that a governmental entity is confined to "those powers either expressly granted by the legislature or necessarily incident thereto." *Boggs*, 128 Ill. App. 3d at 690.

Contrary to the Board's position, Dillon's Rule has no effect on the Board's powers under Sections 3-26 and 3-32 of the Act, and it does not control this Court's adjudication of the validity and enforceability of Dr. Breuder's Employment Contract. This Court should follow *Hostrop,* as it must do, *see Davis v. Jewish Vocational Serv.,* No. 07 C 4735, 2010 WL 1172537, at *6 (N.D. Ill. Mar. 17, 2010), and hold that Dr. Breuder's Employment Contract was a proper exercise of the Board's powers under Sections 3-26 and 3-32 of the Act. *Hostrop,* 523 F.2d at 575; *see also Bakalis v. Bd. Of Trustees of Cmty. Coll. Dist. No. 504, Cty. Of Cook, State of Illinois,* No. 93 C 0483, 1993 WL 528084, at *3 (N.D. Ill. Dec. 17, 1993), *aff'd sub nom Bakalis v. Golembeski*, 35 F.3d 318 (7th Cir. 1994); *Catanzaro v. Bd. of Trustees of Cmty. Coll. Dist. No. 504, Cty. of Cook, State of Illinois*, No. 90 C 2303, 1990 WL 77893, at *2 (N.D. Ill. May 21, 1990).

WHEREFORE, for the reasons discussed above and in the Opposition to the Board's Motion to Dismiss, Dr. Breuder requests that the Court deny the Board's Motion to Dismiss.

Dated: March 24, 2016

                                               Respectfully submitted,

/s/ Melissa N. Eubanks
James R. Figliulo
Melissa N. Eubanks
FIGLIULO & SILVERMAN, P.C.
10 S. LaSalle Street, Suite 3600
Chicago, IL 60603
(312) 251-4600
*Attorneys for Plaintiff*

Martin A. Dolan
DOLAN LAW, P.C.
10 S. LaSalle Street, Suite 3702
Chicago, Illinois 60603
Phone: 312-676-7600
*Attorney for Plaintiff*

Terry A. Ekl
EKL, WILLIAMS & PROVENZALE LLC
Two Arboretum Lakes
901 Warrenville Road, Suite 175
Lisle, IL 60532
*Attorney for Plaintiff*