**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT L. BREUDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15-cv-09323 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| BOARD OF TRUSTEES OF | ) | |
| COMMUNITY COLLEGE DISTRICT | ) | |
| NO. 501, DUPAGE COUNTY, | ) | |
| ILLINOIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case concerns the unceremonious termination of Robert Breuder from his position as President of the College of DuPage. After his termination, Breuder sued the Board of Trustees of Community College District No. 501 ("Board") and individual Board members Kathy Hamilton, Deanne Mazzochi, Frank Napolitano, and Charles Bernstein ("Individual Defendants," and together with the Board, "Defendants"), pursuant to 42 U.S.C. § 1983 ("Section 1983"), for violating his rights under the Due Process Clause of the United States Constitution as well as for various state law violations. In particular, Breuder claims that, in suspending and terminating him without a proper hearing, the Defendants deprived him of his property interests in violation of his Due Process rights (Count I). He also claims that, in making defamatory and stigmatizing remarks about him, the Defendants deprived him of a liberty interest in violation of his Due Process rights (Count II). In addition, Breuder also brings a variety of state law claims against the Defendants. Specifically, he claims that the Board breached his employment contract (Count IV) and that the Individual Defendants tortuously interfered with his contract (Count V) and defamed him (Count

VI). Finally, Breuder asserts a claim for conspiracy against the Individual Defendants (Count III), apparently under both federal and state law.

In response, the Board and the Individual Defendants have moved to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). With respect to the Board's motion (Dkt. No. 35)—which addresses Counts I, II, and IV as asserted against it—the Court denies the motion *in toto*. With respect to the Individual Defendants' motion to dismiss (Dkt. No. 38)—which addresses Counts I, II, III, V, and VI asserted against them—the Court grants the motion in part and denies it in part.

## BACKGROUND

The following facts are drawn from Breuder's Complaint and accepted as true for purposes of the instant motions. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

From January 1, 2009 until his termination on October 20, 2015, Breuder served as President of the College of DuPage, located in Glen Ellyn, Illinois. (Compl. ¶ 11, Dkt. No. 1.) Breuder's initial employment contract was for the term from January 1, 2009 to June 30, 2012. (*Id.* ¶ 12.) That contract was extended at various times by approval from the Board and, on March 7, 2014, it was extended to June 30, 2019. (*Id.*) Then, in or around late 2014, the Board and Breuder began negotiating an earlier termination date for Breuder's contract. Ultimately, on January 28, 2015, the Board voted on and approved a Fourth Addendum to Breuder's employment contract that provided for early termination of Breuder's contract in exchange for certain retirement benefits. (*Id.* ¶¶ 25–27.) According to this Fourth Addendum, Breuder would continue as President until March 30, 2016, after which he would retire and receive a lump sum payment. (*Id.* ¶ 28.)

Also during this time period, Board member Hamilton was engaging in a campaign against Breuder, falsely claiming that he engaged in unprofessional and unethical conduct. (*Id.* ¶¶ 33–34.) Hamilton made claims about Breuder to multiple media outlets after she was elected to the Board in April 2013, which she repeated at a Board meeting on January 22, 2015. (*Id.* ¶¶ 40–46.) Hamilton then endorsed a new slate of candidates for the Board: Mazzochi, Napolitano, and Bernstein. (*Id.* ¶ 52.) On April 2, 2015, Mazzochi, Napolitano, and Bernstein were elected to the Board. As soon as they were elected, they released a joint statement that they were given "a clear mandate to clean up the College of DuPage . . . to finally stop the waste, fraud and abuse . . . ." (*Id.* ¶ 54.)

On April 28, 2015, the Individual Defendants sent Breuder a letter directing him to organize a special meeting of the Board to take place on April 30, 2015. (*Id.* ¶ 58.) At that meeting, the Board, through its Resolution No. 15-430-2, voted to place Breuder on administrative leave and appointed Dr. Joseph Collins to serve as acting interim President. (*Id.* ¶ 60.) At no time prior to Resolution No. 15-430-2 was Breuder afforded any opportunity to respond to the allegations underlying Resolution No. 15-430-2. (*Id.* ¶ 67.)

On August 27, 2015, the Board sent Breuder a file of documents and a letter stating that the Board's attorneys were free to meet with him during the following week. (*Id.* ¶ 91.) Breuder sent a letter in response requesting the reason for the meeting and informing the Board that he was on medical leave and thus unavailable the following week. (*Id.* ¶ 92.) On September 11, 2015, the Board voted to declare Breuder's employment contract void *ab initio*. Then, on September 24, 2015, the Board sent Breuder a letter purporting to give him notice of the charges upon which the Board would decide whether to terminate him. (*Id.* ¶ 94.) Over the course of the following month, Breuder and the Board exchanged a number of letters to finalize the procedure for the termination

hearing. During that correspondence, the Board made clear that Breuder would not be allowed to attend the termination hearing but could respond through a written submission. (*Id.* ¶ 98.) Breuder objected to this procedure, stating that the Board's offer to consider his written response was not meaningful. (*Id.* ¶ 99.) Shortly thereafter, on October 20, 2015, the Board voted to terminate Breuder's employment. (*Id.* ¶ 101.) At no point prior to his termination was Breuder afforded a hearing to respond to the allegations underlying his termination. (*Id.* ¶ 103.)

## DISCUSSION

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, this short plain statement must overcome two hurdles. First, the complaint's factual allegations must be enough to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id.* This pleading standard does not necessarily require a complaint to contain "detailed factual allegations." *Id.* (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted above, Breuder asserts claims against the Board and the Individual Defendants pursuant to Section 1983 for depriving him of his property interests in violation of his Due Process rights (Count I) and for violating his Due Process liberty interests (Count II). Breuder also brings state law claims for breach of contract, against the Board (Count IV); for tortious

interference with contract, against the Individual Defendants (Count V); and for defamation, against the Individual Defendants (Count VI). Finally, Breuder brings a claim for conspiracy, under both federal and state law, against the Individual Defendants (Count III). The Court considers each in turn.

## I. Due Process Violation – Property Interest

Breuder claims that the Defendants violated his Due Process rights in suspending and terminating him without a proper hearing. In response, the Defendants first argue that this claim fails because Breuder has no property interest in which to ground his Due Process challenge. Specifically, the Defendants contend that Breuder's employment contract was void and thus Breuder was an at-will employee owed no process prior to his termination. The Defendants offer three arguments for the invalidity of the employment contract: first, the employment contract was beyond the ratifying Board's power as it extended beyond the Board's term; second, the employment contract's termination provisions contradict the Public Community College Act's ("PCCA") provisions on the Board's quorum and voting rules; and third, the employment contract violated the Open Meetings Act. The Defendants then argue that even if Breuder had a property interest to ground his Due Process claim, he was given sufficient process.[1] Finally, the Individual Defendants argue that, insofar as there was any violation, they cannot be held liable for such violation because of qualified immunity. All of these arguments fail.

---

[1] The Individual Defendants join all of the Board's arguments relating to Breuder's employment contract and the process afforded Breuder. (Memo. in. Supp. of Indiv. Defs.' Mot. to Dismiss at 2, Dkt. No. 39.)

### A. Validity of Breuder's Employment Contract

#### 1. Employment Contract's Duration Extends Beyond Board's Term

At the time of his termination on October 20, 2015, Breuder was serving as President pursuant to the Fourth Addendum to his employment contract, which was approved by the Board on January 28, 2015. As alleged in the Complaint, the new Board was elected on April 2, 2015. Thus, according to the Defendants' argument, as Breuder's employment contract extended beyond April 2, 2015, it was void *ab initio* under Illinois law. In support of their position, the Defendants cite the case of *Millikin v. Edgar Cnty.*, 32 N.E. 493 (1892), and its progeny, for the proposition that a governmental board whose members serve limited terms may not enter into a contract purporting to cover a term beyond that for which the board sits. *See also Trombetta v. Bd. of Educ., Proviso Twp. High Sch. Dist. No. 209*, 2003 WL 1193337, at *1 (N.D. Ill. Mar. 13, 2003) (finding that, under *Millikin*, a four-year employment contract for building management of a high school was void *ab initio* as the contract extended beyond the school board's term); *Grassini v. DuPage Twp.*, 665 N.E.2d 860, 864 (Ill. App. Ct. 1996) (holding that four-year employment contract for township administrator was void *ab initio* as contract went beyond township board's term); *Cannizzo v. Berwyn Twp. 708 Cmty. Mental Health Bd.*, 741 N.E.2d 1067, 1071 (Ill. App. Ct. 2000) (holding that executive director's employment contract was void *ab initio* as it went beyond township supervisor's term).

But the Defendants' argument ignores the PCCA's statutory grant of authority to community college boards. The PCCA states that community college boards are granted the power "[t]o establish tenure policies for the employment of teachers and administrative personnel, and the cause for removal," as well as "[t]o employ such personnel as may be needed, to establish policies governing their employment and dismissal, and to fix the amount of their compensation."

110 ILCS 805/3-32, 805/3-42. As the Seventh Circuit has explained, these provisions were intended "to give the board authority to establish its own policies with respect to tenure" and therefore allow community college boards to make contracts that go beyond their terms. *Hostrop v. Bd. of Jr. Coll. Dist. No. 515, Cook & Will Ctys. & State of Ill.*, 523 F.2d 569, 575 (7th Cir. 1975) (holding that former community college president's contract was not void *ab initio*, despite the fact that his contract extended beyond board term).

The Defendants claim that *Hostrop* is no longer applicable because the Seventh Circuit there specifically highlighted that the PCCA did not affix a specific tenure policy into the statute but instead gave community college boards authority to design such policies. The Defendants further observe that five years after *Hostrop* was decided, the Illinois General Assembly amended the PCCA to include specific tenure policies for "faculty," which expressly excludes administrators. 110 ILCS 805/3B-1, 3B-2 (1980). Through these amendments, the Defendants argue, the Illinois General Assembly stripped community college boards of the authority to give tenure to administrators and, consequently, the *Millikin* rule still governs administrator employment contracts.

Yet as *Hostrop* recognized, in allowing community colleges to establish tenure and dismissal policies, the PCCA empowered community college boards to make contracts that extend beyond their terms. That is, after the passage of the PCCA, the *Millikin* rule no longer applied to the hiring of community college teachers and administrative personnel. Subsequently, the PCCA was amended to provide more structure to faculty tenure. 110 ILCS 805/3B-1, 3B-2. But nothing in these faculty tenure amendments, states that community college boards cannot confer tenure upon administrators. Indeed, even after the amendments, the PCCA continued explicitly to recognize that community college boards can "establish tenure policies for the employment of

teachers and **administrative personnel**." 110 ILCS 805/3-32 (emphasis added). If the General

Assembly wished to strip this power from community college boards, it could have done so. It did

not. Thus, the power of community college boards to establish tenure and dismissal policies for

administrative personnel remains broad—and, most relevantly, includes the power of a

community college board to make contracts with such personnel that go beyond its term.

Accordingly, the duration of Breuder's employment contract did not invalidate it *ab initio*.

    2.  *PCCA's Quorum and Voting Requirements*

    The Defendants observe that Breuder's employment contract gives him the right to appear

before all seven members of the Board and requires a supermajority vote of five of those seven

members to terminate his agreement for cause. The Defendants contend that these provisions

improperly conflict with the PCCA's quorum and voting provisions, which state that "[w]hen a

vote is taken upon any measure before the Board," a majority of full voting membership of the

Board establishes a quorum and a majority of the members voting on the measure shall determine

the outcome. 110 ILCS 805/3-9. In this case, as there were seven Board members, a quorum could

be established with four members and the outcome should be determined by the majority of the

voting members. But the PCCA explicitly alters the Board's decision procedures with respect to

terminations for cause of tenured faculty; for example, as a preliminary step, "a majority vote of

**all its members**" is required to proceed with the dismissal of a tenured faculty member for cause.

110 ILCS 805/3B-4 (emphasis added). In light of this provision and the fact that the PCCA grants

community college boards broad power to establish tenure and dismissal policies for

administrative personnel, the Court concludes that the Board was entitled to create a heightened

voting requirement for termination of administrative personnel, including the College President.

Thus, Breuder's employment contract termination-for-cause provisions do not violate the PCCA and do not invalidate the employment contract.

### 3. Open Meetings Act

The Defendants also note that the employment contract allowed the Board Chairperson to extend Breuder's contract for a year without further Board involvement and in a non-public forum. Furthermore, the employment contract obligated the Board to vote on termination actions exclusively during closed sessions. The Defendants contend that these provisions violate the Open Meetings Act's ("OMA") prohibitions on closed-door decisions, thereby rendering the employment contract invalid. (Memo. in Supp. of. Bd. Mot. to Dismiss at 9, Dkt. No. 36 (citing 5 ILCS 120/1, 120/2).) However, the Defendants' argument overlooks the very first exception to the OMA: "A public body may hold closed meetings to consider . . . [t]he appointment, employment, compensation, discipline, performance, or dismissal of specific employees of the public body . . . ." 5 ILCS 120/2(c)(1). As the extension of Breuder's contract clearly involves a matter involving the "appointment, employment, [and] compensation" of a "specific employee[] of the public body," the employment contract's extension and termination procedure do not violate the OMA.

### B. Sufficiency of Process Offered to Breuder

In the event Breuder is found to have had a property interest in his continued employment, the Defendants argue that his claim still fails because he was provided sufficient process. "[A] public employee dismissable only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing." *Gilbert v. Homar*, 520 U.S. 924, 929 (1997) (citing *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 545–46 (1985)). When there is more robust post-termination process, "pretermination process need

only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." *Gilbert*, 520 U.S. at 929 (citing *Loudermill*, 470 U.S. at 546). When there is not adequate post-termination process, however, "the pre-termination hearing to which such an employee is entitled must fully satisfy the due process requirements of confrontation and cross-examination in addition to the minimal *Loudermill* requirements of notice and an opportunity to be heard." *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 692 (7th Cir. 2004).

The Defendants contend that, as Breuder did not avail himself of the provided appeal process in Board Policy No. 15-251, his claim of inadequate post-termination process fails. And given that Breuder was provided with sufficient post-termination process, the Defendants continue, Breuder was only entitled to the minimal pre-termination process set forth in *Loudermill*, which the exhibits to the Complaint demonstrate that he received. In response, Breuder argues that he had no adequate post-termination process; therefore, he was due a more robust pre-termination process, which he did not get.

Board Policy No. 15-251 reads in full:

An appeal process for matters of unpaid suspension and/or termination of employment will be provided for all administrators. The employee may request a review of the case by the Board if dissatisfied with the final decision of the College President.

(Ex. 4 to Memo. in Supp. of. Bd. Mot. to Dismiss at COD209, Dkt. No. 36-4.) It is not clear that Board Policy No. 15-251 even applies to the College President's "suspension and/or termination," as opposed to decisions made *by* the College President. Even if it does apply in the manner the Defendants suggest, the policy does not explain the required appeal process—perhaps, it allows for nothing more than a written submission. Nor does the policy specify any procedure to initiate an appeal. Nothing else in the Complaint or the attached exhibits suggests Breuder was provided

with any explanation of how he was to pursue his appeal or of what it would consist. As such, this Court cannot find at this early stage of the proceedings that Breuder was provided with adequate post-termination process. Moreover, if Breuder's post-termination process was constitutionally insufficient, then he would have been due more robust pre-termination process, as outlined in *Baird*. It appears that Breuder was not afforded such robust process, as he was only allowed to offer a written submission, without even the opportunity to attend his termination hearing. (Compl. ¶¶ 98, 99, 103, Dkt. No. 1.) But these are not conclusions that can be reached based on the pleadings.

### C. *Qualified Immunity for the Individual Defendants*

In addition, the Individual Defendants raise a qualified immunity defense. Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties. *See Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). Defeating qualified immunity requires (1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a "reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Importantly, this inquiry is an objective one and does not focus on the motive of the defendants. *Armstrong v. Daily*, 786 F.3d 529, 538 (7th Cir. 2015). Here, the Individual Defendants claim that, even if there was a violation, it was not clearly established. In particular, the Individual Defendants received a Board document, supported by legal analysis, concluding that Breuder's employment contract was void *ab initio*. As such, a reasonable official would not have known that the alleged conduct violated Breuder's rights, because without a valid employment contract, Breuder would not possess any property rights subject to due process.

The Court concludes that, at this stage of the litigation, the claims cannot be dismissed on the basis of qualified immunity. The Individual Defendants' argued basis for qualified immunity leads the Court to focus on whether a reasonable official would have understood that Breuder's employment contract was valid and not void. If the allegations in the Complaint (and the documents referenced therein) are accepted as true, it is plausible that a reasonable official would have. As discussed above, the Defendants' arguments regarding why Breuder's employment contract was void or invalid are contradicted by the plain text of the PCCA and the OMA. Moreover, the Individual Defendants' reliance on the Board document is unavailing. First, insofar as the Individual Defendants hope to convince the Court that they genuinely believed that they were not violating Breuder's rights, the objective nature of the qualified immunity inquiry precludes such consideration. *Armstrong*, 786 F.3d at 538. Second, the substantive arguments in the Board document mirror those proffered before this Court—which the Court has already found are gainsaid by the plain statutory text. To be clear, the Court's ruling is only that, on the slim record at this stage of the proceedings, qualified immunity does not require dismissal of the claims. The Court has not disposed of the defense, and so the parties may raise the merits of the qualified-immunity defense again at summary judgment or trial.

## II. Due Process Violation – Liberty Interest

The Defendants argue that Breuder's Due Process liberty interest claim fails because the allegedly defamatory speech was about a public figure, and therefore, according to the Supreme Court decision *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), that speech was protected by the First Amendment. The Defendants also argue that they are entitled to absolute immunity, qualified immunity, and immunity under the Local Governmental and Governmental Employees Tort Immunity Act ("ILTIA"), 745 ILCS 12/2-201.

The Defendants' first argument invoking *New York Times Co.* fails for two separate reasons. First, *New York Times Co.* does not apply to liberty interest Due Process claims. *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1032 (7th Cir. 1992) (citing *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)). Second, even if *New York Times Co.* applied to this cause of action, it would not serve as a complete bar to the claim. Rather, if Breuder was a public official, he would have to show that the Defendants acted with actual malice in order to prevail. But Breuder has adequately alleged in his Complaint that the Defendants acted maliciously. (*See, e.g.*, Compl. ¶¶ 32, 48, 61, 65, 82, 83, 89, Dkt. No. 1.) Thus, *New York Times Co.* does not require dismissal of Breuder's Due Process liberty interest claim against the Defendants.

With respect to the Board, the absolute and qualified immunities simply do not apply. Those immunities do not insulate governmental units from liability in Section 1983 actions. *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006). Additionally, the Defendants' appeal to the ILTIA is without merit as this state defense does not apply to Section 1983 claims. *Expressway Salvage, Inc. v. Vill. of Markham*, 2002 WL 1610993, at *2 (N.D. Ill. July 22, 2002) ("[I]mmunity on federal claims is a matter of federal law.") (citing *Payne v. Churchich*, 161 F.3d 1030, 1038 (7th Cir. 1998)).

The Individual Defendants also argue that qualified immunity bars suit against them because a reasonable person would not have known that the statements at issue were defamatory. This argument is not appropriate for resolution at the motion to dismiss stage, however. The Complaint alleges facts sufficient to allege plausibly that the Individual Defendants acted with malice in making defamatory statements about Breuder and thus they should have known that they were making defamatory statements against him. (*See, e.g.*, Compl. ¶¶ 32, 48, 61, 65, 82, 83, 89, Dkt. No. 1.)

### III. Breach of Contract

The Defendants' argument that Breuder's claim for breach of contract fails is predicated on the very same reasoning as their argument that Breuder has no property interest to ground his Due Process challenge. Because the Court has rejected these arguments that Breuder's contract was void *ab initio* or otherwise invalid, the Court also rejects the Defendants' arguments against Breuder's breach of contract claims.

### IV. Tortious Interference with Contract

Breuder's tortious interference with contract claim against the Individual Defendants is predicated on their actions as Board members—specifically, deliberating on and voting to terminate Breuder's employment contract. As alleged in the Complaint, Breuder's claim against the Individual Defendants for tortious interference with contract fails as they are immune for such conduct.

The ILTIA states in relevant part:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. The ILTIA "immunizes public employees from liability where the injury claimed is the result of a discretionary policy determination." *Collins v. Bd. of Educ. of N. Chicago Cmty. Unit Sch. Dist. 187*, 792 F. Supp. 2d 992, 999 (N.D. Ill. 2011) (internal citations and quotations omitted). Importantly, "Section 2–201 immunizes an individual defendant only to the extent that the action he is being sued for involves both the making of a policy choice and the exercise of discretion." *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 285 (Ill. 2003). But when an official makes such a discretionary policy determination, "Section 2-201 immunity protects against both negligent and willful and wanton conduct." *Collins*, 792 F. Supp. 2d at 999

(internal citations and quotations omitted). "[D]ecisions requiring a governmental entity to balance competing interests and to make a judgment call as to what solution will best serve those interests are 'policy decisions' within the meaning of section 2–201." *Van Meter*, 799 N.E.2d at 285. "The Seventh Circuit, following the lead of Illinois appellate courts, has held that decisions regarding 'the hiring and firing of employees is inherently discretionary, within the meaning of § 2-201 of the Tort Immunity Act.'" *Collins*, 792 F. Supp. 2d at 999 (citing *Mann v. City of Chicago*, 182 F.3d 922 (Table), 1999 WL 510748, at *2 (7th Cir. July 14, 1999)).

It is clear that the alleged conduct in this case constitutes a "discretionary policy determination." The Individual Defendants deliberated and voted as Board members to terminate Breuder as an employee of the College—an "inherently discretionary" act. *Id.* Furthermore, the Individual Defendants' decision to terminate Breuder was pellucidly a matter of policy. Indeed, the Complaint itself alleges that this was part of the Individual Defendants' "Clean Slate" platform that sought to end corruption, which the Individual Defendants associated with Breuder. (Compl. ¶¶ 52, 53, 56, Dkt. No. 1.) The Individual Defendants' actions were taken to implement a policy—*i.e.*, to clean the College of "waste, fraud[,] and abuse"—and in so doing the Individual Defendants exercised their discretion to terminate Breuder's employment with the College. (*Id.* ¶ 54.)

Breuder cites *Valentino v. Village of South Chicago Heights*, 575 F.3d 664 (7th Cir. 2009), for the proposition that the decision to terminate him was not a policy decision at all but rather just a decision to terminate one person. *Valentino* involved a mayor's decision to fire his secretary, which the secretary alleged was due to her exposing corruption in the mayor's office. *Id.* at 668. The secretary sued for, *inter alia*, wrongful retaliation under Illinois state law. *Id.* The district court granted summary judgment on the claim, finding that the mayor was immune from

liability under the ILTIA. *Id.* at 669. The Seventh Circuit reversed the district court's decision, reasoning that the ILTIA did not apply as the mayor's decision to fire this one employee did not amount to a policy decision. *Id.* at 679. In so concluding, the Seventh Circuit noted that the mayor exercised no judgment between competing interests and did not act pursuant to any standing policy. *Id.* at 679–80.

*Valentino* is distinguishable from this case. Here, as alleged in the Complaint, the Individual Defendants—in politicking, campaigning, and actually voting to terminate Breuder— were acting pursuant to a policy platform with the stated aim to eliminate waste, fraud, and abuse at the College. Moreover, Breuder was not a ministerial employee like the secretary in *Valentino*; he was President and Chief Executive Officer of the College, tasked with execution and formulation of high-level policies of the College.[2] (Ex. A to Compl., Dkt. No. 1-1 at 4 of 121 (outlining College President's duties).) That is squarely within the ambit of ILTIA's Section 2-201. And so the Individual Defendants are immune from liability for tortious interference with contract.

## V.   Defamation

Breuder's claim for defamation is based on remarks that the Individual Defendants made at Board meetings and to media outlets. (*See, e.g.*, Compl. ¶¶ 38, 43, 44, 45, 46, 52, 54, 55, Dkt. No. 1.) Insofar as Breuder's claim is directed to the Individual Defendants' allegedly defamatory statements before the Board, then the Individual Defendants are immune from suit based on such conduct. First, as such statements would be "act[s] . . . in determining policy when acting in the

---

[2] Breuder's citations to *Weiler v. Village of Oak Lawn*, 86 F. Supp. 3d 874 (N.D. Ill. 2015), and *Bello v. Village of Skokie*, 151 F. Supp. 3d 849 (N.D. Ill. 2015), are similarly unavailing. In both *Weiler* and *Bello*, the court determined that the ILTIA did not bar claims for retaliation because there were factual disputes as to whether the retaliatory conduct was a policy decision. *Weiler*, 86 F. Supp. 3d at 885–86; *Bello*, 151 F. Supp. 3d at 866. But here, the allegations in Breuder's own Complaint make plain that the Individual Defendants were acting pursuant to their "Clean Slate" campaign. (Compl. ¶¶ 52, 53, 56, Dkt. No. 1.)

exercise of [] discretion," they are covered by Section 2-201 of the ILTIA. 745 ILCS 10/2-201. Furthermore, the Individual Defendants, acting as Board members, are "absolutely immune from liability for defamation if the statements were made while acting within the scope of [their] official duties." *Marchioni v. Bd. of Educ. of City of Chicago*, 2003 WL 21418238, at *2 (N.D. Ill. June 18, 2003) (citing *Blair v. Walker*, 349 N.E.2d 385, 389 (Ill. 1976); *Morton v. Hartigan*, 495 N.E.2d 1159, 1163–65 (Ill. App. Ct. 1986)). As the alleged statements at Board meetings made by the Individual Defendants are firmly within the scope of their duties as Board members, the Individual Defendants are absolutely immune for defamation relating to these statements.

Insofar as Breuder's defamation claim is directed to the Individual Defendants' allegedly defamatory statements to the general public through media outlets, however, that portion of Breuder's claim survives. Nothing in the Complaint suggests that such alleged conduct on the part of the Individual Defendants would be covered by the ILTIA, as making statements to media outlets is not clearly an "act . . . in determining policy when acting in the exercise of [] discretion." 745 ILCS 10/2-201. This conclusion is not meant to preclude the Individual Defendants from developing through discovery evidence that their roles on the Board encompassed such media interfacing activities and thereby arguing at the summary judgment stage or at trial that their activities were, in fact, within the scope of the immunity offered by the ILTIA. But at the pleadings stage the Court must draw all reasonable inferences in favor of Breuder.

The Individual Defendants also claim that Breuder's defamation claim is barred by *New York Times Co.* and by Illinois state law qualified immunity. Both of these arguments fail. As discussed above, even under *New York Times Co.*, a defendant can be liable for defamatory statements against a public figure if the defendant acted in malice. Similarly, under state law

qualified-immunity doctrine, a plaintiff who can prove that a defendant "intentionally published material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness" will prevail on his defamation claim. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993). Here, the Complaint plausibly alleges that the Individual Defendants defamed him maliciously, and therefore these arguments fail at this stage of the proceedings. (Compl. ¶¶ 32, 48, 61, 65, 82, 83, 89, Dkt. No. 1.)

Finally, the Individual Defendants claim that some of the alleged statements occurred prior to the statute of limitations period and are not actionable. Breuder concedes this. (Pl. Opp. to Indiv. Mot. to Dismiss at 17–18, Dkt. No. 50.) But there appear to be allegations that some defamatory statements were made within the limitations period . (*See* Compl. ¶ 54, Dkt. No. 1 (referencing Individual Defendants' statement from April 2, 2015)), and so this will not bar Breuder's defamation claim either—at least not as to statements made within the statutory period.

## VI.     Conspiracy

Breuder also brings a conspiracy claim against the Individual Defendants. He does not identify whether his conspiracy claim is brought under federal or state law. Under federal law, the claim is predicated on the Section 1983 Due Process claims. The Individual Defendants argue that such a claim should be dismissed because it is duplicative of the Section 1983 Due Process claims against the Individual Defendants (Counts I and II). But even if they are duplicative, such circumstance does not merit dismissal. *See Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1077 (N.D. Ill. 2014) (denying motion to dismiss Section 1983 conspiracy claim against state actors, despite the fact that the claim "adds nothing to the underlying claim"). Thus, as a Section 1983 conspiracy claim under federal law, Breuder's conspiracy claim survives.

Breuder's Complaint also suggests that his conspiracy claim is brought under state law, for conspiracy to commit tortious interference with contract and conspiracy to commit defamation. Insofar as Breuder's conspiracy claim is attached to his claim for tortious interference with contract, the claim fails. The Court has determined that the Individual Defendants are immune under the ILTIA for any tortious interference with contract, and thus they are similarly immune for conspiracy to commit tortious interference with contract.

Breuder's conspiracy to commit defamation claim is similarly dismissed as it relates to any allegedly defamatory statements made by the Individual Defendants during Board meetings. But the Individual Defendants also argue that this claim must fail because under the Illinois law doctrine that a civil conspiracy cannot exist between an entity's own officers or employees. For this rule to apply to bar Breuder's surviving defamation claim, the Individual Defendants must have been acting as agents of the Board when they were defaming Breuder. *See Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571 (1998) ("We first note that, because the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent."). As discussed above, however, it is not clear based on the allegations in the Complaint that the Individual Defendants were acting as agents of the Board when making defamatory statements about Breuder to the media. It could be that the Individual Defendants— motivated solely by their own interests and in their individual capacities—agreed to defame Breuder. If so, they were not acting as agents of the Board and the intra-corporate conspiracy doctrine would not apply. Thus, this claim cannot be decided at the motion to dismiss stage.

## VII. Punitive Damages

Finally, the Individual Defendants claim that the prayer for punitive damages against them is improper because punitive damages may not be recovered in Section 1983 claims against agents acting in their official capacities and because the ILTIA bars punitive damages. Both of these arguments are inapposite. First, though it is true that Breuder may not recover punitive damages against the Individual Defendants in their official capacities, Breuder has brought Section 1983 claims against the Individual Defendants in their individual capacities, and punitive damages may be sought for such claims. *Johnson v. Chicago Transit Auth.*, 2015 WL 5016482, at *4 (N.D. Ill. Aug. 24, 2015) (citing *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991)). Next, the Court's ruling on Breuder's defamation and conspiracy to defame claim against the Individual Defendants—the surviving state law claims against the Individual Defendants—was predicated on the fact that the Individual Defendants may not have been acting in the scope of their duties when allegedly making some of the defamatory statements about Breuder, and thus may not have been immunized by the ILTIA for those statements. If some of the Individual Defendants' statements are not immunized by the ILTIA, then the ILTIA also cannot preclude punitive damages for those statements.

## CONCLUSION

For the foregoing reasons, the Court denies the Board's motion to dismiss (Dkt. No. 35) and grants in part and denied in part the Individual Defendants' motion to dismiss (Dkt. No. 38). With respect to the Individual Defendant's motion, Breuder's claim for tortious interference with contract (Count V) is dismissed with prejudice. Breuder's claim for defamation stemming from statements made by Individual Defendants at Board meetings (in Count VI) and Breuder's conspiracy claim stemming from Individual Defendants' involvement in tortious interference with

contract and defamation relating to statements made at Board meetings (in Count III) are also

dismissed with prejudice. The motion is denied with respect to Breuder's Due Process claims

(Counts I and II), his defamation claims stemming from statements made by the Individual

Defendants to media outlets (in Count VI), his state law conspiracy claim stemming from the

Individual Defendants' involvement in such alleged defamation (in Count III), his federal law

conspiracy claims stemming from the Individual Defendants' alleged involvement in violating his

Due Process rights (in Count III), and his prayer for relief seeking punitive damages against the

Individual Defendants.

ENTERED:

Dated: March 3, 2017

_____
Andrea R. Wood
United States District Judge