# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **Robert L. Breuder,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 CV 9323 |
| | ) | |
| v. | ) | Hon. Andrea R. Wood |
| | ) | |
| **Board of Trustees of Community** | ) | Magistrate Judge Jeffrey Cummings |
| **College District No. 502, DuPage** | ) | |
| **County, Illinois,** *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Breuder, who served as the President of the College of DuPage from 2009 until October 20, 2015, brings this lawsuit against defendants alleging claims concerning due process violations, breach of contract, defamation, and civil conspiracy. Certain defendants have, in turn, filed counterclaims against plaintiff alleging breach of contract, breach of fiduciary duty, and conversion. At the July 18, 2019 hearing, this Court addressed a number of contested discovery matters including: (1) whether the Illinois Open Meetings Act (ILCS 120/2.06) and the attorney-client privilege bar plaintiff from obtaining in discovery the minutes and audio recordings from the closed executive meetings of defendant Board of Trustees of Community College District No. 502 (hereinafter, the "College"); (2) the nature of the College's legal duty with respect to obtaining responsive documents that are in possession of their outside legal counsel; (3) whether plaintiff is entitled to discovery of documents concerning the retention of the College's outside counsel; and (4) whether plaintiff is entitled to force the College to gather,

review, and produce responsive documents from nine individual custodians in addition to the over twenty custodians from whom the College has already agreed to produce documents.

The parties outlined their discovery disputes in their March 14 and May 31, 2019 joint discovery status reports, and they further discussed the matters during the June 6, 2019 status hearing. In its prior orders of June 6 and June 18, 2019, the Court directed the parties to provide the Court with submissions regarding, *inter alia,*[1] the four contested issues set forth above. The Court also invited the College's outside legal counsel - - the law firms of Rathje Woodward, LLC and Schuyler, Roche & Crisham, P.C. (hereinafter, the "Law Firms") - - to provide submissions with respect to the third issue. After reviewing the submissions from the parties and the Law Firms and discussing the matters at length with counsel during the July 18 hearing, the Court rules as follows on the contested issues.

I. **The Illinois Open Meetings Act does not shield the minutes and audio recordings from the College's closed executive meetings from discovery.**

Plaintiff seeks the production of minutes and audio recordings from the College's closed executive meetings because he believes that these materials will provide evidence regarding defendants' motives and reasons for terminating his employment contract. Specifically, plaintiff seeks discovery of the minutes and audio recordings from the College's closed meetings on May 14, June 11 and 25, July 16 and 30, August 13 and 20, September 17 and 28, and October 20 of 2015 during which he believes that the College's "internal investigation" regarding him was likely discussed. Plaintiff also seeks discovery of the audio recordings from the College's closed meetings on February 20, March 6, June 26, September 25, November 6 and 20, and December 18 of 2014, and January 22, 2015 during which he believes that his "duties, responsibilities and

---

[1] The parties, who have meet and conferred in good faith, resolved their disputes as to several other issues addressed by the Court's order of June 6.

2

conditions of employment," "performance and goals," and/or "contract" were discussed. Defense counsel indicated that these meetings typically lasted an hour, the meeting minutes are readily available, and that none of the audio recordings have been transcribed.

The College asserts that plaintiff's effort to seek discovery of the minutes and recordings is barred by the Illinois Open Meetings Act ("Act"), 5 ILCS 120/2.06. This Court disagrees, and it finds that a more nuanced analysis is required to balance the need to discover the truth against the policy sought to be furthered by the Act. The court's discussion in *Mulligan v. Village of Riverside,* No. 11 CV 8200, 2013 WL 1340581, at *2 (N.D.Ill. April 1, 2013), is instructive:

> Under the Illinois Open Meetings Act, subject to certain exceptions not applicable here, 'the verbatim record of a meeting closed to the public shall not be open for public inspection or subject to discovery in any administrative or judicial proceeding.' 5 Ill. Comp. Stat. §120/2.06(e). The open meetings privilege is a state law privilege not found in federal common law. *Kodish v. Oakbrook Terrace Fire Protec. Dist.,* 235 F.R.D. 447, 451-52 (N.D.Ill. 2006). When considering whether the federal common law should be expanded to include a state privilege, a 'strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at not substantial cost to federal substantive and procedural policy.' *Mem. Hosp. for McHenry Co. v. Shadur,* 664 F.2d 1058, 1061 (7th Cir. 1981). 'The court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.' *Id.,* at 1061-62 (internal citations and quotations omitted).

Several other courts from this District have applied a similar analysis when resolving discovery disputes that touch upon the scope of the Act's privileges. *See, e.g., Gibbons v. Village of Sauk Village,* No. 15 CV 4950, 2016 WL 7104255, at *2-3 (N.D.Ill. Dec. 6, 2016) (finding that plaintiff's "need to ascertain the motive and basis for the [defendant's] decision to terminate her outweighs any policy furthered by [Open Meetings Act]"); *Sandholm v. Dixon Public School Dist. No. 170,* No. 09 CV 50119, 2010 WL 899032, at *2 (N.D.Ill. Mar. 10, 2010) (holding that the court would apply the Act's privilege only "if the importance of the policy furthered by the privilege outweigh[ed] the need for truth"); *Sronkoski v. Schaumburg School*

3

*Dist., No. 54,* No. 08 CV 721, 2009 WL 1940779, at *3-4 (N.D.Ill. July 1, 2009) (ordering school district to turn over unredacted minutes and the audio recording of closed session board meetings after concluding that plaintiff's "need for the closed-session materials" outweighed the policy furthered by the Act); *Hall v. Sterling Park Dist.,* No. 08 CV 50116, 2011 WL 1748710, at *9 (N.D.Ill. May 4, 2011) (citing *Sronkoski* and ordering that the information concerning plaintiff's termination outweighed the policies furthered by the Act); *Kodish,* 235 F.R.D. at 452 (refusing to extend the federal common law to encompass the open meetings privilege where plaintiff had to "ascertain the motive and basis for the Fire District's decision to terminate him").[2]

To allow for an informed balancing of the interests of the parties, this Court finds that it is appropriate to conduct an *in camera* review of the meeting minutes and the audio recordings. *See, e.g., Hall,* 2011 WL 1748710, at *9. After its *in camera* review, consistent with the caselaw cited above, this Court will order the production of the minutes and the audio recordings to the extent that they provide evidence concerning plaintiff's work performance, the "internal

---

[2] This Court respectfully declines for two reasons to rely on the decisions (namely, *Tumas v. Bd. of Educ. of Lyons Twp. High Sch. Dist. No. 204,* No. 06 CV 1943, 2007 WL 2228695 (N.D.Ill. July 31, 2007) and *Sokn v. Fieldcrest Community Unit School Dist.*, No. 10 CV 1122, 2013 WL 84702 (C.D.Ill. Jan. 7, 2013)), that the College embraces. First, the courts in these cases simply declared that the state privilege provided by the Act should apply in federal litigation without "specifically discuss[ing] why that is so." *Sokn,* 2013 WL 84702, at *6 (citing to and following *Tumas*). However, as stated above, federal courts in this District are required by Circuit precedent to analyze the competing state and federal interests in the particular situation before applying a state privilege in federal litigation. *See Mulligan,* 2013 WL 1340581, at *2, *quoting Shadur,* 664 F.2d at 1061; *see also Sandholm,* 2010 WL 899032, at * 2 (finding that "the reasoning in *Tumas* offers little guidance"). Second, *Tumas* and *Sokn* are factually distinguishable because the plaintiffs sought discovery of discussions of how the governmental entities were responding to legal claims that had already been filed. *Tumas*, 2007 WL 2228695, at *2 ("[T]he Board's discussions concerned Plaintiff's legal claims and the Board's litigation strategy regarding those claims, including the possibility of settlement."); *Sokn,* 2013 WL 84702, at *6 ("Plaintiff is not entitled to minutes or recordings from closed or executive sessions following the date on which she filed this lawsuit."). In this case, plaintiff seeks the minutes and audio recordings from the closed executive meetings that *preceded* his termination.

4

investigation," and the motive and basis of plaintiff's termination and are not otherwise protected by the attorney-client privilege. If, on the other hand, any of the minutes and audio recordings "offer little, if anything, to further [p]laintiff's claims," this Court will be inclined to find that the importance of the policy underlying the Act's privilege outweighs plaintiff's need for the information contained within those particular minutes and recordings. *See Sandholm,* 2010 WL 899032, at *2.

To minimize the burden on the College and to facilitate this Court's *in camera* review, the Court directs the parties to meet and confer regarding the list of meetings identified by plaintiff's counsel to eliminate the meetings that relate to issues that are irrelevant to the subject matter of this lawsuit. (Defense counsel has expressed his belief that certain meetings identified by plaintiff concern non-pertinent issues.) The Court also encourages the parties to reach an agreement on a process for preparing transcripts for the audio recordings from the pertinent meetings and for sharing the transcription costs. The Court expects for the parties to be prepared to discuss these matters, the timetable for producing the meeting minutes and the transcripts, and any other logistical issues concerning the *in camera* review at the August 22, 2019 status hearing.

**II.     The Court will conduct an *in camera* review of the minutes and audio recordings from the College's closed executive meetings to determine whether any portions of the discussions are protected by the attorney-client privilege.**

As the Seventh Circuit has held, the attorney-client privilege applies "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection can be waived." *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997)

5

(internal quotation marks omitted). The College asserts that the attorney-client privilege protects the verbatim recordings and minutes from the College's closed executive meetings from disclosure because attorneys for the College were always present at these closed sessions. However, the presence of the College attorneys at these meetings does not - - in and of itself - - suffice to establish that all communications during these meetings are protected by the attorney-client privilege.

In *Kodish, supra,* for example, an attorney attended a closed session meeting of defendants' board where the decision to terminate plaintiff was discussed. 235 F.R.D. at 453. The court held that "the mere attendance of an attorney at [the] meeting d[id] not render everything said or done at the meeting privileged." *Id.* Indeed, the board's discussions regarding plaintiff's work history, the reasons for defendants' decision to terminate him, and defendants' expectations from an employee were *not* privileged and the court found that only the "conversations among the board members and their attorney about potential litigation risk and legal strategy" were privileged. *Id.,* at 453-54; *see also Smith v. Board of Education of the City of Chicago,* No 17 CV 7034, 2019 WL 2525890, at *2 (N.D.Ill. June 19, 2019) ("[D]ecisions concerning the discipline and termination of employees are business decisions and any legal advice sought or received is incidental to considerations of what is most prudent for the successful operation of the business.") (internal quotation marks omitted) (citing cases).

This Court cannot make the determination as to whether the attorney-client privilege extends to protect the minutes and audio recordings of the College's closed meetings without first conducting an *in camera* review of the minutes and the transcripts. The Court will conduct its *in camera* privilege review in conjunction with the review that it is undertaking to balance the parties' interests to address the potential applicability of the Act.

**III.    The College is fulfilling its obligation under Rule 34 with respect to obtaining responsive documents from the Law Firms to produce to plaintiff.**

Plaintiff has propounded document requests to the College which cover records that might be in possession of the Law Firms, the College's outside counsel.  The College has agreed to produce and will continue to produce any responsive, non-privileged communications, documents, and ESI exchanged between the College's employees and the Law Firms (with the sole exception of documents concerning the College's retention of the Law Firms).  For their part, the Law Firms represent that they will continue to work with the College to gather and produce documents in their possession that are responsive to plaintiff's discovery requests.  Notwithstanding this, plaintiff asserts that the College itself has an additional obligation to search for documents and ESI in possession of the Law Firms.

Under Federal Rule of Civil Procedure 34(a)(1), defendants are required to produce documents (including ESI) that are within their "possession, custody, or control even if the documents are not in their physical possession."  Indeed, if defendants have control over the documents, "[t]he location of the documents is irrelevant." *Dexia Credit Local v. Rogan,* 231 F.R.D. 538, 541 (N.D.Ill. 2004) *quoting In re Uranium Antitrust Litig.,* 480 F.Supp. 1138, 1144 (N.D.Ill. 1979).  "On the issue of control, it is well-settled that a party need not have actual possession of the documents to be deemed in control of them; rather, the test is whether the party has a legal right to obtain them." *Dexia,* 231 F.R.D. at 542 (internal quotations and citations omitted); *see also Thermal Design, Inc. v. Am. Soc'y of Housing, Refrigerating & Air-Conditioning Engineers, Inc.,* 755 F.3d 832, 838-39 (7th Cir. 2014) (citing test for control in *Dexia*).  "The fact that a party could obtain a document if it tried hard enough…does not mean that the document is in its 'possession, custody, or control;' rather, the party must be able to order the third party [here, the Law Firms] to surrender the documents." *Republic Techs. (NA),*

*LLC v. BBK Tobacco & Foods, LLP*, No. 16 CV 3401, 2017 WL 4287205, at *2 (N.D.Ill. Sept. 27, 2017), *quoting Chaveriat v. Williams Pipe Line, Co.,* 11 F.3d 1420, 1426-27 (7th Cir. 1993).

The Court finds that the College's efforts to obtain responsive documents from the Law Firms fulfills its obligations under Rule 34,[3] and it rejects plaintiff's assertion that the College has an additional obligation to run its own searches through the Law Firms' files. The College does not have "control" over (i.e., the legal right to obtain) the Law Firms' files in general, and this Court has no authority to order the College to engage in the type of invasive searches sought by plaintiff. Nor can the Law Firms be deemed "custodians" of the College's documents in that *they* are compelled by Rule 34 to run searches through their files to find additional documents responsive to plaintiff's document requests.[4] Instead, it is well-settled that "[w]hen documents are sought from a nonparty, the usual method of obtaining production is via a subpoena under Fed.R.Civ.P. 45." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006); *DeGeer v. Gillis,* 755 F.Supp.2d 909, 917-18 (N.D.Ill. 2010) (noting that the acquisition of ESI from non-parties is covered under Federal Rule of Civil Procedure 45, which requires a subpoena for documents from a non-party). Plaintiff has not subpoenaed the Law Firms' files. When and if he does, the Court will resolve the Law Firms' objections at that time.

### IV.  Plaintiff is not entitled to discovery of documents and communications concerning the College's retention of the Law Firms.

Plaintiff has propounded upon the College requests for production (requests nos. 13-16) which seek discovery of documents and communications between the individual defendants and

---

[3] To the extent that the College is withholding the production of any responsive documents that it receives from the Law Firms on the grounds of privilege, the College must supplement its privilege log to include those documents.

[4] It is unclear that such searches would even be necessary. As stated during the July 18 hearing, this Court has no reason to believe that the Law Firms have been anything less than diligent with respect to the searches that they have already performed to find responsive documents as requested by the College.

the Law Firms regarding the College's retention of the Law Firms during the period of January 1, 2015 to April 30, 2015. Plaintiff asserts that the retention of the Law Firms is highly relevant to the issues in this lawsuit. In particular, plaintiff alleges that individual defendants Deanne Mazzochi, Frank Napolitano, and Charles Bernstein ran as a "clean slate" with the support of defendant Kathy Hamilton on a campaign focused on ending plaintiff's employment with the College. Plaintiff further alleges that the "clean slate" board's first acts of business were to place plaintiff on an administrative leave, replace the College's legal counsel with the Law Firms (defendants' hand-picked personal and political allies), and to conduct an "internal investigation" that ultimately supported the "clean slate" board's decision to fire plaintiff. Ultimately, plaintiff asserts that hiring of the defendant-connected Law Firms is relevant to whether the College's "internal investigation" was merely a rubber-stamp for a predetermined decision to fire him.

The College has produced the engagement letters for the Law Firms along with the College' resolutions that engaged them. The College otherwise objects to producing any further documentation in response to those document requests on the grounds of lack of relevance and attorney-client privilege. According to the College, the focal point of this lawsuit is plaintiff's performance as the President of the College. In essence: did plaintiff properly perform his job or did he instead breach his contract and his fiduciary duty by engaging in the misdeeds that defendants have accused him of engaging in? The reason the College hired the Law Firms has no bearing on plaintiff's job performance in defendants' view. The College further argues that the documents and communications that plaintiff seeks with these requests are protected by the attorney-client privilege.

The Court finds the College's objections to be persuasive. To begin, the attorney-client "privilege extends to confidential communications between client and attorney, made 'in order to

obtain legal assistance.' " *United States v. Leonard-Allen,* 739 F.3d 948, 952 (7th Cir. 2013) *quoting Fisher v. United States,* 425 U.S. 391, 403 (1976); *United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th Cir. 2007) (the privilege covers communications that are made for the purpose of eliciting the lawyer's professional advice or other legal assistance). Consequently, the documents that plaintiff seeks pursuant to the document requests in question are likely to be privileged.

Furthermore, even setting aside defendants' privilege claim, the Court is not convinced that the individual defendants' motives in engaging the Law Firms is "highly relevant" to the issues in this case as plaintiff asserts. Indeed, to the extent that the Law Firms' investigation was limited to addressing factual accusations against plaintiff that can be proven or disproven with objective evidence, the defendants' underlying motivations for retaining the Law Firms seemingly has little relevance. In that situation, the objective evidence of plaintiff's conduct would have been the focal point of the Law Firms' inquiry. If, however, the Law Firms' investigation extended beyond fact finding to drawing conclusions from the facts (for example, "based on our finding that Dr. Breuder did x, y, and z, we conclude that he breached his fiduciary duty"), evidence of the Law Firms' pre-existing relationships with the individual defendants and potential bias in their favor would be more relevant. In either event, plaintiff is not barred from discovery on this issue even he does not obtain responses to his written discovery requests. He will be free to question the individual defendants during their depositions regarding their rationale for selecting the Law Firms and their pre-existing connections and affiliations with the Law Firms.[5]

---

[5] The foregoing discussion should not be understood to reflect a view by this Court that the Law Firms have operated in anything less than a professional manner during their involvement with the matters that are the subject of this lawsuit.

For these reasons, the Court will sustain defendants' objections to producing any further documents in response to plaintiff's document requests nos. 13-16. However, as noted during the July 18 hearing, this ruling is subject to reconsideration if defendants intend to rely upon the "advice of counsel" as a justification for their decision to terminate plaintiff. Where "a party asserts as an essential element of his defense reliance upon the advice of counsel, . . . the party waives the attorney-client privilege with respect to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought." *Panter v. Marshall Field & Co.,* 80 F.R.D. 718, 721 (N.D.Ill. 1978) (citing cases); *Wilstein v. San Tropai Condominium Master Association,* 189 F.R.D. 371, 380 n.1 (N.D.Ill. 1999) (same); *GSI Group, Inc. v. Sukup Mfg. Co.,* No. 05 CV 3011, 2006 WL 6651778, at *3 (C.D.Ill. 2006) (advice of counsel defense waives attorney-client privilege with respect to the attorney opinion communications that were communicated and relied upon; all communications between the defendant's representatives and its attorneys related to the subject matter of the opinions; all documents provided by the defendant to its attorneys that relate to the subject matter of the opinions; and all documents that were communicated to defendant, or its representatives, that refer to the opinions); *see also In re Fresh & Process Potatoes Antitrust Litig.*, No. 4:10-MD-02186-BLW, 2014 WL 1413676, at *5–6 (D. Idaho Apr. 11, 2014).[6]

Thus, defendants' assertion of an "advice of counsel" defense would likely effect a waiver of their attorney-client privilege with respect to documents that plaintiff seeks pursuant to the document requests in question. Furthermore, evidence of the individual defendants' rationale

---

[6] Although the Seventh Circuit referenced the individual defendants' effort to assert an "advice of counsel" defense during the course of the interlocutory appeal, *Breuder v. Board of Trustees of Community College District No. 502,* 888 F.3d 266, 271 (7th Cir. 2018), counsel for the College stated that he did not know whether defendants intended to rely on such a defense at the present time.

11

for retaining the Law Firms would become more relevant if defendants intended to defend the case by asserting that they terminated plaintiff based on the advice of their outside counsel. Plaintiff would be entitled to discover evidence to further support his theory that the Law Firms were not, in fact, "independent" and that their "internal investigation" was created as a pretext for defendants' pre-existing desire to terminate him.

V.      **The College is ordered to include Catherine Brod as an additional custodian for its ESI discovery and production.**

The parties agree that "[t]he selection of custodians [for ESI discovery] must be designed to respond fully to document requests and to produce responsive, nonduplicative documents during the relevant time period." *Kleen Products LLC v. Packaging Corp. of Am.,* No. 10 CV 5711, 2012 WL 4498465, at *15 (N.D.Ill. Sept. 28, 2012), *objections overruled,* No. 10 CV 5711, 2013 WL 120240 (N.D.Ill. Jan. 9, 2013). After the parties met and conferred, the College agreed to produce responsive documents from 24 custodians (including plaintiff, the four individual defendants, all Trustees from January 1, 2009 through April 2015, and multiple members of the College's senior management team). During the July 18 hearing, defense counsel reported that the College has produced approximately 260,000 pages of documents thus far, there are an additional 160,000 documents to be reviewed, and that the College expects to complete the production of the remaining responsive, non-privileged documents by January 31, 2020.

The parties dispute whether the College should be required to produce responsive documents from an additional nine prospective custodians (namely, John Wandalowski, Bruce Schmeidl, Donna Stewart, Mary Ann Millush, Monica Miller, Dave Lesniak, Glen Hanson, Richard Jarmon, and Catherine Brod). Plaintiff asserts that these nine individuals should be added as additional custodians because they are College employees who had oversight and

12

responsibility for matters that form the basis of certain allegations against plaintiff and they are likely to possess important and relevant information. For its part, the College asserts that adding these additional custodians will be unlikely to produce a significant number of relevant and unique documents because all correspondence between the proposed additional custodians and the current custodians will be produced even if no new custodians are added. The College further asserts that the burden that adding these additional custodians would impose on it far outweighs any possible benefit that searching through their documents would produce.

In determining whether the College should be required to search through the ESI of the nine proposed additional custodians to find responsive documents, this Court considers the "importance of the discovery in resolving issues in the case and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Homeland Ins. Co. of New York v. Health Care Serv. Corp.*, 330 F.R.D. 180, 182 (N.D.Ill. 2019) (internal quotations omitted); *Kleen Products,* 2012 WL 4498465, at *9. The Court finds - - with one exception - - that adding the proposed new custodians would be unlikely to produce a significant number of relevant and unique documents. None of the proposed new custodians were decisionmakers with respect to the decisions that impacted plaintiff and all of them (except Catherine Brod)[7] reported to individuals who are already custodians. As a result, any relevant documents that eight of the nine proposed custodians prepared most likely would have been - - or will be - - produced because they would have been transmitted to current custodians in the ordinary course of

---

[7] As defense counsel acknowledged at the July 18 hearing, Ms. Brod stands apart from the other proposed custodians because she was considered to be a member of senior management and she was uniquely situated in the sense that she was the executive director of the College of DuPage Foundation.

business.[8]  Furthermore, plaintiff will be free to explore what - - if any - - pertinent information and documents the proposed custodians communicated to the individual defendants during the depositions.

The Court also finds that the burden of searching the ESI of all the additional proposed custodians would be substantial.  The College has documented this burden by stating in its submission that applying the relevant search terms to Bruce Schmiedl's ESI would produce over 16,000 additional documents and require over 130 hours of additional reviewing time for the College.  *See Heraeus Kluzer, GmbH v. Biomet, Inc.,* 633 F.3d 591, 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery.").  Although the College does not provide similar estimates for the remaining proposed custodians, it is reasonable to presume that the burden of searching the ESI of all nine proposed custodians would be exponentially greater than what has been indicated for Mr. Schmiedl alone.

For these reasons, the Court finds that the burden of requiring the College to search the ESI of eight of the nine proposed custodians (namely, John Wandalowski, Bruce Schmiedl, Donna Stewart, Mary Ann Millush, Monica Miller, Dave Lesniak, Glen Hanson, and Richard Jarmon) for additional responsive documents significantly outweighs the likely benefits that these searches would produce.  Consequently, the Court will sustain the College's objection to adding these proposed custodians.[9]  The result is different with respect to Ms. Brod.  The Court finds that a search of her ESI has a reasonable prospect of producing unique and relevant

---

[8] Any document prepared by a proposed custodian but never shared with one of the current custodians (whose ranks include the decisionmakers) would be of little, if any, relevance because such a document could have had no impact on the decisions that plaintiff is challenging.

[9] The Court is open to reexamining this decision if plaintiff uncovers evidence that there are additional relevant and unique documents from one or more of these proposed custodians that were not previously produced through discovery related to other custodians.

documents.  Moreover, plaintiff has minimized the burden that the College will experience by adding Ms. Brod as a custodian by limiting the scope of the search of her ESI to documents that are responsive to his requests nos. 24 through 26.  Accordingly, the Court will order the College to add Ms. Brod as a custodian consistent with the limitations that plaintiff has proposed.

## **CONCLUSION**

For the reasons stated above, the Court will conduct an *in camera* review of the minutes and transcripts from the audio recordings of the College's closed executive session meetings to determine what portion of these materials should be produced to plaintiff consistent with the standards set forth above in Sections I and II of this memorandum opinion and order.  The logistics of the *in camera* review will be discussed at the status hearing scheduled for August 22, 2019 at 11:00 a.m.  The Court denies plaintiff's request for an order requiring the College to search for documents and ESI in possession of its outside counsel (the law firms of Rathje Woodward, LLC and Schuyler, Roche & Crisham, P.C.).  The Court also denies plaintiff's request for discovery of documents and communications concerning the College's retention of its outside counsel.  Finally, for the reasons stated in Section V above, the Court grants plaintiff's request to order the College to add Ms. Catherine Brod as an additional ESI custodian for purposes of plaintiff's requests for production nos. 24-26 and the Court denies plaintiff's request to order the College to add John Wandalowski, Bruce Schmeidl, Donna Stewart, Mary Ann Millush, Monica Miller, Dave Lesniak, Glen Hanson, and Richard Jarmon as additional ESI custodians.

**Dated:  July 26, 2019**

_____
**Magistrate Judge Jeffrey Cummings**