IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT BREUDER, | ) |
| | ) |
|          **Plaintiff,** | ) |
| | )   **No. 15 CV 9323** |
|     v. | ) |
| | )   **Judge Andrea R. Wood** |
| **BOARD OF TRUSTEES OF** | ) |
| **COMMUNITY COLLEGE DISTRICT** | )   **Magistrate Judge Jeffrey I. Cummings** |
| **NO. 502, et al.** | ) |
| | ) |
|          **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Breuder, who served as the President of the College of DuPage (the "College") from 2009 until his termination in October 2015, brings this lawsuit against defendants, the Board of Trustees of the College (the "Board"), and individual Board members, alleging claims concerning due process violations, breach of contract, defamation, and civil conspiracy. Certain defendants have, in turn, filed counterclaims against plaintiff alleging breach of contract, breach of fiduciary duty, and conversion. Before the Court is plaintiff's motion to compel compliance with a subpoena to non-party The Claro Group ("Claro") (Dkt. 287). For the reasons that follow, plaintiff's motion to compel is granted.

**I. BACKGROUND[1]**

    **A. Retention of The Claro Group**

According to the Board, it learned in early 2015 that the DuPage County State's Attorney and the Department of Justice were conducting independent investigations into the College. (Dkt. 306 – Board's Resp. at 2.) In Spring of 2015, the College received subpoenas related to

---

[1] The Court presumes familiarity with the intricate facts of this case and includes only those facts relevant to the motion before the Court.

1

those investigations and concerns arose internally and in the press regarding governance at the College, particularly with respect to Dr. Breuder's activities as president. (*Id;* Dkt. 170 – Countercl. at ¶ 92.) As a result, on April 30, 2015, the Board determined it was necessary to hire outside counsel and voted to retain the law firms of Rathje & Woodward, LLC and Schuyler, Roche & Crisham, P.C. (the "Schuyler Firm"). *See* Board Packet for 4/30/15 Meeting at pp. 40-50, available at https://www.cod.edu/about/board_of_trustees/pdf/packets/2015apr30packet_spcl.pdf (last visited July 29, 2020). Specifically, the Board retained the Schuyler Firm to "conduct an internal investigation into the College's policies, practices, personnel and finances" with the "assistance of consulting experts, including forensic accountants, if necessary." (*Id.* at p. 52.) In turn, on May 1, 2015, the Schuyler Firm hired Claro to conduct a "privileged forensic accounting investigation of certain activities and transactions conducted at the [College], including but not limited to its Radio Station, Waterleaf Restaurant, $244-million Bond-related transactions and various vendor-related transactions during the last five years."[2] (Board's Resp. at Ex. 1.)

Claro began its investigation and, on June 11, 2015, provided the Schuyler Firm with a status report (the "Interim Status Report") setting forth its initial findings regarding the College's accounting practices, particularly with respect to the Waterleaf Restaurant. (Pl.'s Mot. at Ex. A.) According to Claro, the College's stated accounting practices were intentionally not being followed at Waterleaf. Claro based its findings on, among other things, its interviews with the Waterleaf general manager, the College's Vice President of Financial Affairs, and Treasurer, and its review of Waterleaf's financial documents. The Interim Status Report was later shared with

---

[2] The allegations levied against Breuder back then – and in the Board's counterclaim here – relate to Breuder's purported mismanagement of College funds. With respect to the Waterleaf Restaurant, which was initially touted as a "Culinary Institute," the Board contends Breuder used it as a place to wine and dine his friends and colleagues at the taxpayers' expense. (Countercl. at 56.)

the Board and with Breuder prior to his termination in October 2015. As plaintiff points out, the Board's resolution to terminate Breuder appears to include findings taken directly from Claro's Interim Status Report. (Compare Pl.'s Mot. at Ex. A with Ex. B at 3-4.)

### B. Plaintiff's Subpoena to The Claro Group

In May 2019, Breuder issued a subpoena to produce documents to Claro seeking the following four categories of documents:

> a. Documents and communications referring or relating to the hiring, engagement, or retention of Claro by the College, or any of its employees, agents, representatives, or attorneys, from April 1 through December 31, 2015;
>
> b. Documents and communications referring or relating to any audits, investigations, or analyses performed by Claro concerning the College from April 1 through December 31, 2015;
>
> c. Documents and communications referring or relating to any of the College's Auxiliary Enterprises, including but not limited to the Waterleaf Restaurant, the Inn at Water's Edge, the McAnich Arts Center (MAC), or the WDCB Radio Station;
>
> d. Communications exchanged between Claro, or any of its employees, agents, representatives, including but not limited to Christopher Leisner, and Daniel Kinsella, Kathy Hamilton, Deanne Mazzochi, Frank Napolitano, or Charles Bernstein from April 1 through May 1, 2015, that refer or relate to the College.

(Pl.'s Mot. at Ex. C.) The Board quickly levied objections to plaintiff's subpoena, arguing that it was overbroad and sought duplicative and privileged information. (*Id*. at Ex. E.) For its part, Claro responded briefly in writing that it would not produce documents until the Board's objections were resolved and further asserted – without elaboration – that responding to the subpoena would cause it to suffer undue burden and expense. (*Id.* at Ex. D.) Claro did not raise any privilege-related objections to plaintiff's subpoena. (*Id.*)

Despite months of e-mails back and forth, plaintiff, the Board, and Claro were unable to resolve their disputes surrounding the subpoena to Claro. The instant motion to compel followed. The Board continues to object on the grounds that the subpoena seeks documents that

3

are: (1) duplicative of documents already requested from the Board; (2) outside the parties' agreed scope of discovery; and (3) protected by the attorney-client and work product privileges. The Court directed defense counsel to inform Claro of the deadline for filing a response to plaintiff's motion (Dkt. 291), but to date Claro has neither appeared in response to the motion nor filed its own written response or notification of joinder with the Board's objections. For the reasons that follow, the majority of those objections are overruled and plaintiff's motion to compel is granted in part as set forth below.

## II. DISCUSSION

### A. Plaintiff's Subpoena to Claro Seeks Relevant Information That Is Neither Duplicative of Information Already Received From The Board Nor Outside The Scope Of The Parties' Agreed Scope Of Discovery.

The Board argues that plaintiff's subpoena seeks documents that plaintiff already requested from the Board and, therefore, it must be quashed as duplicative. Indeed, generally speaking, non-parties are not required to produce documents that have or can be obtained from a party in discovery. *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *3 (N.D.Ill. Aug. 17, 2015) ("A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative."). However, the record here reveals that plaintiff has properly exhausted all attempts to obtain responsive Claro documents from the Board and, more importantly, that additional responsive documents exist that are in Claro's – not the Board's – possession.

First, the Board is correct that the requests to Claro mirror some of the plaintiff's prior requests to the Board. (Compare Resp. at 5-6 to Resp. at 7.) But, according to plaintiff, despite months of back and forth on the issue, the only documents the Board has produced regarding Claro are: (1) the Interim Status Report; (2) a redacted invoice of Claro's work through June 30,

4

2015; (3) a draft of a Board resolution to retain Claro; (4) an unsigned retention letter dated May 5, 2015, and (5) a few e-mails and outlook calendar entries which include a Claro employee. (Pl.'s Mot. at 6.) Although the Board's response to the motion reads as if further Claro documents might be forthcoming[3], at a recent status hearing, counsel for the Board stated affirmatively "that [the Board] has produced responsive non-privileged documents." (Dkt. 342 – Tr. of 7/23/20 Status Hr'g at 28.) Thus, as plaintiff points out, Claro undoubtedly has additional responsive documents regarding its investigation of the College such as "underlying work papers and analyses, materials reviewed and relied upon [for the Interim Status Report], and communications with the Board or the College." (Pl.'s Mot. at 7.) Such documents are not duplicative of documents already received from the Board and likely remain solely in Claro's possession. *See Guy Chem. Co. v. Romaco AG*, 243 F.R.D. 310, 312 (N.D.Ind. 2007) (finding good cause for relevant materials to be produced where "there is likely no other location where [defendant] could turn to acquire the requested discovery").

Second, the Board argues that even if Claro has additional documents, those documents are not relevant to the claims in this case because the Board did not have them in its possession when it decided to terminate Breuder. As an initial matter, "courts in this district have made clear [that] non-recipients do not have standing to quash subpoenas on relevance and proportionality grounds." *DeLeon-Reyes v. Guevara,* No. 1:18-CV-01028, 2020 WL 3050230, at *2 (N.D.Ill. June 8, 2020) (citing cases). Thus, the Board's lack of relevance argument fails for this reason standing alone.

In any event, the Board's contention is misplaced given the broad scope of relevancy under the Federal Rules. "The limits and breadth of discovery expressed in Rule 26 are

---

[3] For example, the Board states, "The Claro Group should not be required to produce documents that are duplicative of documents Plaintiff has already requested from the Board, and the Board *has already agreed to produce*." (Resp. at 6-7) (emphasis added).

applicable to non-party discovery under Rule 45." *Buonavolanto v. LG Chem, Ltd.*, No. 18 C 2802, 2019 WL 8301068, at *2 (N.D.Ill. Mar. 8, 2019), *quoting Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D.Ind. 2016). Rule 26(b)(1) provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P 26(b)(1); *see also Motorola Sols., Inc. v. Hytera Communications Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter"). Discoverable information is not limited to evidence admissible at trial. Instead, such information is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

      Here, at the heart of both the claims and counterclaims at issue is the Board's decision to terminate Breuder and the basis for that decision. As mentioned above, at a minimum, the Board's resolution to terminate Breuder includes findings from Claro's Interim Status Report related to the Waterleaf restaurant. (Compare Pl.'s Mot. at Ex. A with Ex. B at 3-4.) And, by defense counsel's own acknowledgement, the Board might rely on the Claro report in pursuing its claims against Breuder. (*See* Pl.'s Mot. at Ex. I – "While I don't believe the Claro Group's work will be a significant thrust of our presentation at trial, we don't think an absolute bar is workable."). Plaintiff is thus entitled to discovery into the underlying support for that report. Furthermore, although the Board claims it had "few interactions with the Claro Group," it does note in passing that it "briefly heard from one of Claro's accountants at a Board meeting." (Resp. at 4.) This also implies Claro likely has additional responsive and relevant documents regarding any presentation, however brief, that it made to the Board.

6

Lastly, citing prior communications between the parties, the Board contends that the parties already agreed to the scope of the Claro discovery. However, the parties' agreement – as the Court understands it – does not preclude plaintiff from pursuing his subpoena. A review of the parties' correspondence shows that the parties communicated frequently regarding the Board's production – or rather lack thereof – of the Claro documents. Ultimately, the Board agreed to produce responsive, relevant documents and plaintiff agreed to hold off on pursuing the subpoena to Claro until the Board's production was complete. (*See* Pl.'s Mot. at Ex. H.) Now that the Board has confirmed its production is complete, plaintiff is free to pursue the subpoena against Claro.

### B. Requiring Claro To Respond To The Subpoena Would Not Otherwise Cause Undue Burden or Expense.

The Board further argues that the subpoena should be quashed because Claro should not have to "incur the burden and expense of searching for responsive, non-privileged documents." (Resp. at 1.) Claro levied the same objection – without further detail – in a letter to plaintiff's counsel. (Pl.'s Mot. at Ex. D.) Even presuming that Claro had formally joined the Board's motion or participated in the litigation of this motion on its own accord, the undue burden argument fails.

Federal Rule of Civil Procedure 45 permits a party to issue a subpoena directing a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession." Fed.R.Civ.P. 45(a)(1)(A)(iii). The ability to use subpoenas to obtain information from non-parties is not unlimited, however; Rule 45 provides that the issuer of "a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(d)(1). Rule 45 also instructs courts that they "must

7

protect" non-parties "from significant expense resulting from compliance" with a subpoena. Fed.R.Civ.P. 45(d)(2)(B)(i)&(ii).

Consequently, "the court should be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party." *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *2 (N.D.Ill. Apr. 22, 2020), *quoting Martin v. United States*, No. 13-CV-3130, 2015 WL 7783516, at *2 (C.D.Ill. Dec. 3, 2015) (internal quotation marks and citation omitted). Indeed, "[i]n keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Little*, 2020 WL 1939358, at *2, *quoting United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 02-C-6074, 2005 WL 3111972, at *4 (N.D.Ill. Oct. 21, 2005); *Parker v. Four Seasons Hotels, Ltd.,* 291 F.R.D. 181, 188 (N.D.Ill. 2013) (same).

In addition to the non-party status of the subpoenaed entity, courts consider a number of other factors when determining if the burden imposed by a subpoena is "undue." These factors include whether: (1) the information requested is relevant; (2) the party requesting the information has a substantial need for the documents; (3) the document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) whether compliance with the request would, in fact, impose a burden on the subpoenaed party. *Little*, 2020 WL 1939358, at *2, (citing *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 C 408, 2013 WL 1883204, at *2 (N.D.Ill. May 6, 2013)). Furthermore, a court may limit discovery pursuant to Rule 26(b)(2)(c) if it determines that the requested documents can be obtained from a more convenient or less burdensome source, the requesting party had an opportunity to obtain the information through the normal discovery process, or the information

8

sought is cumulative or duplicative of other discovery. *Little,* 2020 WL 1939358, at *2 (citing *Earthy, LLC v. BB&HC, LLC*, No. 16 C 4934, 2017 WL 4512761, at *3 (N.D.Ill. Oct. 10, 2017)). As the subpoena respondent, it is Claro's burden to show undue burden or expense, *Malibu Media, LLC v. John Does 1-14*, 287 F.R.D. 513, 516 (N.D.Ind. 2012), and that burden has not been met on this record.

First, as discussed above, plaintiff's subpoena to Claro seeks relevant, non-duplicative information that plaintiff has tried – but failed – to obtain directly from the Board. Plaintiff's requests are also properly limited in temporal scope, primarily from April 1, 2015 through December 31, 2015. *See Am. Soc. of Media Photographers,* 2013 WL 1883204, at *2 (noting that the reasonableness of the time frame of the requests is a factor courts may consider). The Court presumes that this time frame was reasonably extrapolated from plaintiff's familiarity with the Schuyler Firm's investigation into the College. Of course, to the extent that plaintiff's counsel and Claro's counsel can agree to further limit the temporal scope of the requests based on Claro's own records reflecting a shorter involvement in the overall investigation, they are encouraged to do so.

Second, there is no indication that Claro's file on the College would include an exorbitant amount of documents or communications that would support its generic claim of undue burden and expense. Instead, based on the Court's review of the Interim Status Report, Claro's file likely consists of financial documents, interview notes, employee notes, and communications regarding the investigation. Production of such a file – that includes relevant information and presumably remains in Claro's possession – would not cause significant expense to Claro. *See United States v. Cardinal Growth, L.P.,* No. 11 C 4071, 2015 WL 850230, at *2 (N.D.Ill. Feb. 23, 2015) ("When a third-party is ordered to produce documents pursuant to a subpoena, the

9

presumption is that the responding party must bear the expense of complying with discovery requests") (internal quotation omitted).

Lastly, the Board asserts that it would be "unduly burdensome" for the Board "to engage in a thorough review of [Claro's file] to determine whether any privileges apply…at this late stage of the process." (Resp. at 9-10.) However, the Board's attempt to insert its *own* assertion of burden into the equation is misplaced. It is well-settled that the "undue burden referred to by Rule 45 is the burden on the subpoenaed party." *TCYK, LLC v. Does 1-87*, No. 13 C 3845, 2013 WL 5567772, at *3 (N.D.Ill. Oct. 9, 2013) ("To the extent that the defendant might be suggesting that the [third-party] subpoena imposes an undue burden, the argument fails."); *Parker v. Four Seasons Hotels, Ltd.,* 291 F.R.D. 181, 187 (N.D.Ill. 2013) (noting that "burden" objections "fall to the subpoena's recipient to make"). More importantly, the parties' recent status report, (Dkt. 322), and status hearing with the Court revealed that the parties are still very much entrenched in written discovery and privilege review. The record before the Court provides no basis to conclude that the Board's review of the Claro file – given its likely volume – would significantly burden the Board or further delay the completion of written discovery.

### C.  The Court Is Without Sufficient Information to Assess The Board's Privilege Claims.

Lastly, the Board seeks to quash plaintiff's subpoena because it seeks information protected by the attorney-client and work product privileges as those privileges apply to third-party consultants such as Claro. As noted above, Claro has declined to participate in these proceedings despite receiving notice and its general counsel's letter to plaintiff's counsel regarding the subpoena raised no privilege-related concerns. (Pl.'s Mot. at Ex. D.) For his part, plaintiff vehemently contests the claim that the Claro documents are protected by any privilege.

10

(Pl.'s Mot. at 8-11.) Unfortunately, on this record and at this stage of the dispute, the Court is unable to properly assess the Board's claims of privilege.

The Board is correct that a court must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies, Fed.R.Civ.P. 45(d)(3)(A), and the facts surrounding Claro's retention by the Schuyler Firm could in theory implicate those privileges. *See e.g., Heriot v. Byrne*, 257 F.R.D. 645, 665 (N.D.Ill. 2009) (explaining that the work-product doctrine and the attorney-client privilege "appl[y] to third parties who are agents of either the lawyer of the client."). Nonetheless, a person or entity withholding subpoenaed information under a claim that it is privileged or subjected to protection as trial-preparation material must expressly make the claim and describe the nature of the withheld documents and communications in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. Fed.R.Civ.P 45(e)(2); *DeLeon-Reyes*, 2020 WL 3050230, at *3, *quoting Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 796 (N.D.Ill. 2015) (It is "well-accepted that a party seeking to withhold material from discovery based on the attorney/client or work-product privileges carries the burden 'to demonstrate by competent evidence and with particularity' that a privilege applies to each document that is claimed to be privileged.").

Neither the Board nor Claro has met the burden of establishing that the documents plaintiff seeks from Claro are privileged. Instead, the Board has essentially made a blanket assertion of the attorney-client and work product privileges over the entire Claro investigation file simply because the Schuyler Firm retained Claro. (Board's Resp. at 14-15.) Such blanket assertions of privilege are generally "unacceptable." *DeLeon-Reyes*, 2020 WL 3050230, at *3, *quoting Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D.Ill. 2012); *see also Urban 8 Fox Lake*

11

*Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D.Ill. 2020) ("Blanket claims of privilege are impermissible in all contexts.").

Moreover, neither the Board nor Claro has provided a privilege log as required under the Rules of Civil Procedure of both parties and non-parties who assert claims of privilege. *See Parvati Corp. v. City of Oak Forest*, No. 08 C 702, 2010 WL 4792649, at *2 (N.D.Ill. Nov. 18, 2010) ("Rule 26(b)(5) requires parties asserting privilege to complete a privilege log and Rule 45(d)(2)(A)(ii) imposes the same obligation on nonparties responding to subpoenas.") (internal quotations omitted). Absent such a privilege log, plaintiff is unable to properly contest the Board's claims of privilege, and the Court is unable to decide those claims. *See DeLeon-Reyes*, 2020 WL 3050230, at *4 ("At this stage, equipped only with Defendants' blanket privilege assertions, the Court does not have enough information to make the privilege call."). Accordingly, the Board's request to quash the subpoena on the basis of the attorney-client and/or work product privileges is denied. If necessary and warranted by the circumstances, the Court can revisit this issue at a later date.

## CONCLUSION

In sum: after careful consideration of the factors enumerated above, the Court concludes that plaintiff's subpoena to Claro seeks relevant, non-duplicative information and is narrowly tailored to minimize burden to non-party Claro. Accordingly, plaintiff's motion to compel (Dkt 287) is granted. Within 21 days of the entry of this order (by September 2, 2020), Claro shall produce all responsive documents to plaintiff along with a privilege log regarding the otherwise responsive documents (if any) that it believes are protected by a privilege. Counsel for plaintiff is directed to provide a copy of this Memorandum Opinion and Order along with the Court's related minute order to counsel for Claro.

                                          **ENTERED**

                                          _____

                                        **Jeffrey I. Cummings**
                                        **United States Magistrate Judge**

**Dated:   August 12, 2020**