**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT BREUDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 15 CV 9323** |
| | ) | |
| **v.** | ) | **Judge Andrea R. Wood** |
| | ) | |
| **BOARD OF TRUSTEES OF** | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **COMMUNITY COLLEGE DISTRICT** | ) | |
| **NO. 502, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Breuder, who served as the President of the College of DuPage (the "College") from 2009 until his termination in October 2015, brings this lawsuit against defendants, the Board of Trustees of Community College District No. 502 (the "Board")[1], and individual Board members, alleging claims concerning §1983 due process violations, breach of contract, defamation, and civil conspiracy. Certain defendants have, in turn, filed counterclaims against Breuder alleging breach of contract, breach of fiduciary duty, and conversion.

Currently before the Court is the Board's motion to compel Breuder to produce documents improperly withheld as privileged under the attorney-client privilege, work product doctrine, and/or the common interest doctrine. Specifically, the Board seeks an order compelling Breuder to produce certain communications that he exchanged with former College employees Thomas Glaser and Lynn Sapyta, and former College attorney Kenneth Florey, arguing that

---

[1] Generally speaking, the Court refers to defendant as "the Board," but when describing individuals, events, and facts related to the College as an entity might refer "the College." At times, the two are used interchangeably.

those communications are not covered by any of the asserted privileges.[2]  Further, the Board

seeks an order directing Breuder to remove the attorney-client and work-product designations of

certain communications with his wife, Wendy Breuder.

For the reasons set forth below, defendant Board's motion to compel (Dckt. #358) is

denied in part and granted in part to the extent that the Court will review certain documents *in

camera* to confirm whether further production is required.  The Court addresses each category of

communications in turn.

## I.  DISCUSSION

### A.  The Court denies the Board's motion to compel the production of the communications and documents exchanged between Breuder and Glaser and/or Sapyta subject to an *in camera* review of the materials in question.

The Board seeks an order compelling Breuder to produce twenty-three communications

and documents exchanged between Breuder and former College employee Glaser[3] and one

communication exchanged between Breuder and former College employee Sapyta,[4] all of which

Breuder continues to withhold as privileged under the work product doctrine.[5]  Breuder further

---

[2] In its motion, the Board also seeks an order compelling the production of a previously withheld communication between Breuder and former College attorney Steve Ruffalo (Doc. No. CTRL00000465-66), which Breuder had not yet produced despite a prior agreement to do so.  (*See* Dckt. #359-2 at 4.)  Breuder confirmed in his response brief that he would produce the communication between Breuder and Ruffalo, along with other documents Breuder recently agreed to produce.  (Dckt. #381 at 11.)  The Court presumes that Breuder has already produced the documents that he has agreed to produce.  If he has not done so, he must do so within seven days of the entry of this order.

[3] The communications remaining at issue between Breuder and Glaser are identified on Breuder's privilege log as follows: CTRL00002709, CTRL00002710, CTRL00002712, CTRL00002714, Brueder000254 (listed twice); Brueder005718; CTRL00001035; CTRL00001768; CTRL00001796-97; CTRL00001889; CTRL00001890; CTRL00001891; CTRL00001892-93; CTRL00001935-37; CTRL00002345; CTRL00002349; CTRL00002404; CTRL00002727-28; CTRL00002729; CTRL00002916-17; and CTRL00007580.

[4] The communication between Breuder and Sapyta is identified as Brueder000887.  (Dckt. #359-4 at 156.)

[5] After the Board filed its motion, Breuder withdrew the attorney-client privilege designation he placed over five of the communications at issue in the Board's motion (CTRL00002709, CTRL00002710,

2

asserts that documents and communications exchanged between him, Glaser, and Sapyta are protected by the common interest privilege.

The Board declares that "[c]ommunications with non-lawyer third parties . . . are not privileged," period, and that consequently, neither the work product nor the common interest privilege doctrine applies to shield these documents and communications from production. (Dckt. #359 at 2.)  With respect to the work product doctrine, the Board asserts that Breuder lacks standing to interpose a work product privilege over the documents that were created by Glaser and Sapyta.  (*See* Dckt. #359 at 7 ("Because these records were written by Mr. Glaser, a third-party who is neither a lawyer nor an agent of Breuder's, Breuder does not have any viable work product claim over these records"), 11 (same with respect to Sapyta).)  The Board further asserts that Breuder waived any work product privilege he had over materials he created by sharing them with Glaser/Sapyta.  (*Id.*, at 7, 12.)  Finally, the Board argues that the common interest privilege does not apply because: (1) the materials in question are not work product and the common interest privilege does not shield documents from disclosure in and of itself; (2) Breuder lacks an identical legal interest with Glaser and Sapyta; and (3) the privilege does not apply because there were no attorneys involved in the communications between Breuder and Glaser/Sapyta.  (Dckt. #359 at 8-13.)

1. **The documents and communications in question are protected by the work product privilege subject to confirmation following an *in camera* review.**

The work product privilege, which is codified in Federal Rule of Civil Procedure 26(b)(3), protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed.R.Civ.P (26)(b)(3); *MSTG, Inc. v. AT*

---

CTRL00002712, CTRL00002714 & CTRL00002715), and withdrew the work product designation for two communications (CTRL00001835 & CTRL00002715).  (Dckt. #381 at 2-3.)

& T Mobility LLC, No. 08 C 7411, 2011 WL 221771, at *2 (N.D.Ill. Jan. 20, 2011). To be clear,
"'Rule 26 clearly protects party, and not just attorney, preparation' and the 'the fact that a
particular communication may not go to an attorney does not prevent its being work product.'"
Est. of Her v. Sadownikow, No. 17 C 1015, 2018 WL 3574888, at *3 (E.D.Wis. July 25, 2018)
(rejecting argument that document was not protected work product unless it was created at the
direction of an attorney), quoting In re Air Crash Disaster at Sioux City, 133 F.R.D. 515, 520
(N.D.Ill. 1990); Abbott Labs. v. Alpha Therapeutic Corp., 200 F.R.D. 401, 409 (N.D.Ill. 2001)
(same). Thus, the fact that the documents in question were prepared by Breuder, Glaser, and
Sapyta (all non-attorneys) does not, in itself, remove the documents from the scope of the work
product privilege.

"[T]he purpose of the work product doctrine is to protect a party's litigation strategies
from disclosure to the opposing party" and to prevent the "unfair advantage" that might
otherwise result. Pomerenke v. US Airways Grp., Inc., No. 08 C 989, 2009 WL 10696341, at *2
(N.D.Ill. Apr. 6, 2009) (citation omitted); Minnesota School Boards Ass'n Ins. Trust v.
Employers Ins. Co. of Wausau, 183 F.R.D. 627, 630 (N.D.Ill. 1999) (the work product privilege
"exists so that one party does not gain an unfair advantage over another party by learning the
other party's counsel's strategies and legal theories"); see also Mattenson v. Baxter Healthcare
Corp., 438 F.3d 763, 767-68 (7th Cir. 2006) ("The work-product doctrine shields materials that
are prepared in anticipation of litigation from the opposing party, on the theory that the opponent
shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on
that party's strategy."). The work-product doctrine "only prevents the disclosure of protected
documents or communications, however, not the underlying facts." MSTG, Inc., 2011 WL
221771, at *2 (citing Upjohn v. United States, 449 U.S. 383, 395-96 (1981)).

Breuder, as the party resisting discovery, has the burden of establishing that the work product privilege applies to the documents and communications that he exchanged with Glaser and Sapyta. *See, e.g., Coachman Indus. Inc. v. Kemlite,* No. 3:06-CV-160 CAN, 2007 WL 3256654, at *2 (N.D.Ind. Nov. 2, 2007). The "threshold determination in any case involving the assertion of the work product privilege . . . is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." *Blinks Mfg. Co. v. Nat'l Preso Indus., Inc.,* 709 F.2d 1109, 1118 (7th Cir. 1983). In other words, "in light of the nature of the document and the factual situation in the particular case," can the document "fairly be said to have been prepared or obtained *because* of the prospect of litigation." *Id.,* at 1119 (internal quotation marks omitted; emphasis in original). Work product includes "'[s]ubject matter that relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved, rather than to the underlying evidence.'" *In re Air Crash Disaster,* 133 F.R.D. at 519, *quoting* 4 Moore's Federal Practice, ¶26.64[1] at 26-349-350 (1989); 133 F.R.D. at 520 ("factual" work product "is everything other than the 'mental impressions, conclusions, opinions, or legal theories' of the attorneys").

The factual circumstances surrounding the creating of the documents and communications in question are as follows. Prior to the fall of 2015, Breuder (who served as President of the College), Thomas Glaser (former Treasurer of the Board and Senior Vice President of Administrative Affairs) and Lynn Sapyta (former Assistant Vice President and Controller for Financial Affairs) held high level positions with the College. The three were fired from their respective positions by the Board on September 9, 2015 (Glaser and Sapyta) and on October 21, 2015 (Breuder). The Board based the decision to terminate Glaser, Sapyta, and Breuder on several common charges: namely, that they failed to discharge their duties by

violating the Board's investment policy, failed to implement appropriate internal controls and accounting procedures for the Waterleaf Restaurant and College radio station, and/or by using College funds for a December 2014 Community Pulse Survey. (Compare Dckt. #381-1 (Glaser Termination Letter), #381-2 (Sapyta Termination Letter) & #381-3 (Breuder Termination Resolution).)

Breuder filed this lawsuit against the Board and the other defendants on October 21, 2015. Roughly five weeks later, on December 1, 2015, Glaser and Sapyta jointly filed a federal lawsuit in this District against the College, Kathy Hamilton (who was also sued by Breuder), and Joseph Collins (the College's former interim President). (Dckt. #381-4 (Glaser/Sapyta Complaint).) Like Breuder, Glaser and Sapyta alleged claims for the violation of §1983, breach of employment contract, and civil conspiracy. The allegations asserted by Glaser and Sapyta in their lawsuit overlapped with those asserted by Breuder in many respects, particularly with respect to Hamilton's political conspiracy, the baselessness of the "causes for termination" asserted against the three, and the pretextual nature of the terminations. (*See* Dckt. #381 at 3 (comparing the respective complaints).)[6]

As a result, according to Breuder:

given the commonality and overlap in both legal and factual issues involved in the Breuder and Glaser/Sapyta lawsuits, for a period of time, specifically at the start of the two cases, Breuder, Glaser, and Sapyta collaborated to compile information to be shared with and used by their attorneys to prepare for and develop the claims and legal strategies to be pursued in each lawsuit.

---

[6] Glaser and Sapyta reached a settlement with the College and their case was dismissed in June 2017. Nonetheless, any work product protection that otherwise existed over the documents and communications in question "endures." *See, e.g., Webster Bank, N.A. v. Pierce & Assocs., P.C.,* No. 16 C 2522, 2018 WL 704693, at *4 (N.D.Ill. Feb. 5, 2018), *quoting Hobley v. Burge,* 433 F.3d 946, 949 (7th Cir. 2006) ("work product protection 'endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related'").

(Dckt. #381 at 3.)  That collaboration resulted in the creation of the documents that were exchanged between Breuder, Glaser and Sapyta from December 20, 2015 through November 16, 2016 over which Breuder continues to assert protection under the work product privilege.  (*See* Dckt. #359-4 (Breuder's privilege log) at 155-56, 165-67.)[7]  These documents, which Breuder describes at length in his brief (Dckt. #381 at 3-4), concern the "mental impressions" of the three individuals and were exchanged between them and shared with their respective attorneys "for the purpose of further developing legal theories and strategies for litigation."  (*Id.*)

If the documents are as represented, they are the type of materials that fits within the definition of factual work product, s*ee, e.g., In re Air Crash Disaster,* 133 F.R.D. at 519-20, and the disclosure of the documents to the Board could provide it with an "unfair advantage." *Minnesota School Boards,* 183 F.R.D. at 630.  To ensure that Breuder has met his burden of establishing that these documents are protected work product, the Court will order Breuder to submit the documents identified in footnotes three and four above for an *in camera* inspection within seven days of the entry of this order.  *See Blanchard of EdgeMark Fin. Corp.,* 192 F.R.D. 233, 238 (N.D.Ill. 2000) (ordering *in camera* inspection to confirm that documents are protected by the work product privilege).

### 2.    Breuder did not waive the work product privilege over the documents he created by exchanging them with Glaser.

Although it is beyond dispute that a party can waive its work product privilege over a document by sharing the document with a third party, it is equally well-settled that the disclosure to a third party does not automatically affect a waiver of the privilege.  *See, e.g., In re Dealer*

---

[7] Two of the documents in question are undated on Breuder's privilege log.  (Dckt. #359-4 at 164-65 (Brueder000887; Brueder005718).)  The Court presumes that these documents, which are described as the notes of Sapyta and Glaser "concerning issues related to COD's investigation and termination of Breuder prepared in anticipation of litigation," were generated and exchanged after Breuder's termination on October 21, 2015.  (*Id.*)

*Mgmt. Sys. Antitrust Litig.,* 335 F.R.D. 510, 521 (N.D.Ill. 2020).  Instead, a waiver of the work product privilege will occur only "when disclosure to a third party 'substantially increases the opportunity for potential adversaries to obtain the information.'"  *Id., quoting Miller UK Ltd. v. Caterpillar, Inc.,* 17 F.Supp.3d 711, 736 (N.D.Ill. 2014).  The party seeking discovery has the burden of showing that a waiver of the work product privilege has occurred.  *In re Dealer Mgmt.,* 335 F.R.D. at 521.

The Board argues that Breuder waived any work product privilege he otherwise would have enjoyed regarding the documents he created by disclosing the documents to Glaser, an important witness for both sides in this case.  (Dckt. #359 at 7-8.)  According to the Board, Breuder's disclosure of the documents to Glaser "substantially increased" the opportunity for the Board to obtain them because Glaser is "not under Breuder's control."  *Id.* (citing to *Cho v. DePaul Univ.,* No. 18 C 8012, 2020 WL 2526486, at *1 (N.D.Ill. May 17, 2020)).  The Court finds that *Cho,* where the person to whom the privileged document was disclosed was merely a witness, is distinguishable.  *Cho,* 2020 WL 2526486, at *1.  In this case, Breuder disclosed the privileged documents to Glaser, who was concurrently asserting the same kinds of legal claims based on many of the same allegations against some of the same defendants. Consequently, in this case – unlike in *Cho* – "[t]here was no intention or reasonable probability that providing documents to [Glaser] would somehow result in disclosure to Defendants."  *Woodard v. Victory Recs., Inc.,* No. 14 CV 1887, 2014 WL 2118799, at *9 (N.D.Ill. May 21, 2014); *Cf. Castelino v. Rose-Hulman Inst. of Tech,* No. 217CV00139WTLMJD, 2018 WL 3721391, at *2 (S.D.Ind. Aug. 6, 2018) (finding that an attorney waived work product protection over text messages by disclosing them to a witness who, *inter alia,* did not have a claim against defendant).

8

### 3. Breuder has standing to assert the work product privilege regarding documents created by Glaser and Sapyta under the common interest doctrine.

The parties dispute whether Breuder has standing to assert a work product privilege over documents that were created by Glaser and Sapyta. Breuder, who has the burden of establishing the existence of a privilege blocking discovery (*Coachman Indus.,* 2007 WL 3256654, at *2), asserts that he has the right to assert the work product privilege over the documents of Glaser and Sapyta under the common interest doctrine. The College disagrees and asserts that the common interest doctrine does not apply in this case for several reasons. As explained below, the Court finds in favor of Breuder on this issue.

Under the common interest doctrine, Breuder has the right to assert the work product privilege over the documents that Glaser and Sapyta created if Breuder can establish that he shared a "common interest" with Glaser and Sapyta at the time the documents were exchanged. *See, e.g., Coachman Indus.,* 2007 WL 3256654, at *3-5; *Terry v. Woller,* No. 08-4063, 2010 WL 11558011, at *1 (C.D.Ill. May 6, 2010 ("Third party may raise work product if it has a 'common interest' with the owner of the privilege and can show that the two parties intend to protect each other's work product") (citing *Coachman*); *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.,* No. CIV. A. 97 C 5827, 1999 WL 617842, at *4 (N.D.Ill. Aug. 12, 1999). To invoke the doctrine, the parties must share a "common legal interest" and the communication must be made to further that ongoing, common interest. *Miller,* 17 F.Supp.3d at 732 (citing cases).

Courts consider a number of factors in determining whether the common interest doctrine applies including:

> (1) whether the interest is actually a common legal interest, as opposed to a business or rooting interest;[8]

---

[8] The decision in *Miller*, cited by the Board, presents an example of where the common interest doctrine was not applied because the parties shared a business or "rooting" interest, and not a legal interest, in the

(2) whether the parties are or anticipate being engaged in litigation;

(3) against a common adversary;

(4) regarding the same or similar issues;

(5) whether the parties have expressed an intent to cooperate, such as by a written agreement;

(6) whether the parties have the same legal counsel; and

(7) whether it is in the interest of justice and fairness to preventing disclosure of the information.

*Coachman Indus.,* 2007 WL 3256654, at *4; *In re Dealer Mgmt. Sys. Antitrust Litig.,* No. 18 C 864, 2020 WL 7865912, at *3 (N.D.Ill. June 29, 2020), *clarified on reconsideration,* 2020 WL 7865913 (N.D.Ill. Oct. 13, 2020). The party seeking to apply the common interest doctrine need not establish the existence of every one of the above factors. *See, e.g., Chamberlain Mfg. Corp. v. Maremont Corp.,* No. 90 C 7127, 1993 WL 625511, at *4 (N.D.Ill. July 21, 1993) (a written common interest agreement is not required to invoke the common interest doctrine).

In this case, Breuder, Glaser, and Sapyta shared their documents for the purpose of cooperating in their common legal interest of challenging their terminations from the Board's employ. As noted above in Section A.1, the three executives were terminated by the Board within a short period of time based upon several of the same reasons, and they sued the Board and one other common defendant (Hamilton) under common theories of liability based on the

---

outcome of the litigation. *See Miller,* 17 F.Supp.3d at 732-34; *Sanchez Ritchie v. Sempra Energy,* No. 10 CV1513-CAB(KSC), 2015 WL 12912316, at *4 n.2 (S.D.Cal. Apr. 6, 2015) (citing *Miller* as a case where "a party to litigation shares privileged materials with a third party who has no other interest in the case but to provide funding in exchange for a percentage of proceeds if the party prevails"). Another case cited by the Board, *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 152 F.R.D. 132 (N.D.Ill. 1993), is likewise distinguishable. The common interest doctrine did not apply in *Allendale* because the materials in question were not privileged in the first place and, further, because the parties exchanged their communications "in the ordinary course of business" rather than in pursuit of a "common interest aris[ing] as a result of impending or anticipated litigation." *Id.,* at 140-41.

same core facts. Where, as here, the "parties are essentially allies in litigation, disclosure of the mental impressions or legal conclusions of either party to a common adversary would grant that adversary an unfair advantage." *Coachman Indus.,* 2007 WL 3256654, at *3.

In light of the above factors, the fact that the claims asserted by Breuder and by Glaser/Sapyta are not identical,[9] or that Breuder and Glaser/Sapyta pursued their claims against defendants in separate lawsuits[10] does not defeat the application of the common interest doctrine. Nor is the fact that the three executives exchanged their work product without the direct instruction from their counsel dispositive despite the Board's insistence that the doctrine does not apply unless attorneys are involved in the communications. (Dckt. #359 at 9.)[11] To the contrary, courts have applied the common interest doctrine "despite the fact that the aggrieved persons were not represented by counsel nor . . . parties to the lawsuits in question." *People ex rel. Madigan v. Illinois High Sch. Ass'n,* No. 12-CV-3748, 2014 WL 517969, at *2 (N.D.Ill. Feb. 10, 2014) (citing to *United States v. Gumbaytay,* 276 F.R.D. 671, 674-76 (M.D.Ala. 2011)).

In sum: the Court finds that Breuder has standing to assert the work product privilege over the documents in question that were shared with him by Glaser and Sapyta.

---

[9] *See, e.g., Whitney v. Tallgrass Beef Co. LLC,* No. 13 C 7322, 2015 WL 3819373, at *5 (N.D.Ill. June 18, 2015) ("The Court disagrees with Defendants that identical claims between parties are required in order for them to share a common legal interest").

[10] *See, e.g., Dexia Credit Loc. v. Rogan,* 231 F.R.D. 268, 274 (N.D.Ill. 2004) (rejecting argument that the common interest doctrine does not apply because parties were "bringing two sets of claims in two separate courts of law"); *Coachman Indus.,* 2007 WL 3256654, at *4 (same).

[11] The Board relies on the decision in *McCullough v. Fraternal Ord. of Police, Chicago Lodge 7,* 304 F.R.D. 232 (N.D.Ill. 2014), to support its assertion that communications must be funneled through the parties' attorneys to be entitled to protection under the common interest doctrine. However, *McCullough* dealt with the application of the doctrine to documents that were protected by the attorney-client privilege. *Id.,* at 139-41. This level of attorney involvement is not required where work product is at issue because parties do not need an attorney to create work product under Rule 26(b)(3) or to exchange that work product with another party with whom they share a common legal interest. The Board also relies on the decision in A*llendale Mut. Ins. Co. v. Bull Data Sys., Inc., supra,* but that decision is inapplicable for the reasons stated above in footnote 8.

**B.** **Breuder has met his burden to show that the communication between himself and former College attorney Kenneth Florey is protected by the attorney-client privilege.**

The Board seeks to compel the production of a September 26, 2015 communication between Breuder and former College of DuPage attorney Kenneth Florey that Breuder withheld under the attorney-client privilege. According to the privilege log, the communication (No. CTRL00005781) was authored by Breuder, sent to Florey, and was a "[c]ommunication exchanged for purpose of seeking legal advice and in anticipation of litigation re: issues related to COD's termination of Breuder." (Dckt. #359-4 at 95.) Although it is unclear exactly when Florey stopped serving as counsel for the College as the Board states only that he "acted in that capacity until 2015" (Dckt. #359 at 2), the Court presumes that he was no longer serving as counsel for the College at the time Breuder made the communication at issue.

The Board argues that because "Breuder's interests are clearly adverse to and in conflict with the College's," Florey could not have ethically provided legal advice to Breuder absent a waiver from the Board, which was not provided here. (Dckt. #359 at 13-14 (citing Ill. Code of Prof. Conduct, Rule 1.9).) As such, the Board asserts that Florey could not have "maintained a confidential, attorney-client relationship with Breuder such that their communications would be shielded under the attorney-client privilege or work product doctrine." (Dckt. #359 at 14.) Respectfully, the Court disagrees.

The attorney-client privilege applies:

(1) Where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at [the client's] instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be waived.

*United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983); *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992); *Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7528, 2013 WL

2637936, at *2 (N.D.Ill. June 12, 2013). The party asserting the attorney-client privilege, has the burden of establishing all essential elements of the privilege. *Lawless*, 109 F.2d at 487.

The sole question at issue here is whether Breuder's communication to Florey was protected by the attorney-client privilege despite the fact that Breuder did not retain Florey as his counsel. The answer is yes. As Breuder explains in his response, the "Seventh Circuit has held that the existence of an attorney-client relationship is not dependent upon the payment of fees or upon the execution of a formal contract." *Vodak v. City of Chicago*, No. 03 C 2463, 2004 WL 783051, at *2 (N.D.Ill. Jan. 16, 2004) (citing *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir.1978)); *In re Dealer Mgmt. Sys. Antitrust Litig.,* 335 F.R.D. at 519 (same). Instead, "[t]he professional relationship for purposes of the privilege for attorney-client communications 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.'" *Westinghouse,* 580 F.2d at 1319, *quoting* McCormick on Evidence (2d ed.1972), §88, p. 179.

Thus, the question is not whether Florey *could* have ethically provided legal advice or ultimately represented Breuder against the Board, but rather, whether Breuder had a reasonable belief that he was consulting Florey in his capacity as a lawyer and intended to seek legal advice at the time the communication occurred. *See Westinghouse,* 580 F.2d at 1320 n.14 ("The deciding factor is what the prospective client thought when he made the disclosure, not what the lawyer thought.") (internal quotation marks omitted); *Lucus v. Gold Standard Baking, Inc.,* No. 13 CV 1524, 2017 WL 1436863, at *2-3 (N.D.Ill. Apr. 24, 2017) (same). If Breuder had such a reasonable belief when he consulted Florey, Florey would have a duty to maintain Breuder's confidences even if the attorney-client relationship did not come to fruition because Florey had a conflict of interest created by his past work as the College's counsel. *See Monco v. Zoltek Corp.,*

13

No. 17 C 6882, 2018 WL 4917817, at *2 (N.D.Ill. Oct. 10, 2018) ("it would make little sense . . . if, as plaintiffs suggest, they need not maintain the confidences of clients until they were actually retained or if they could divulge those confidences if they later determined they had a conflict of interest and could not take on the client").

Here, given the timing of the communication – just prior to Breuder's formal termination – the Court has no reason to doubt Breuder's representation that he reached out to Florey in confidence to seek legal advice regarding his termination proceedings.  Further, it is not unreasonable to assume that Breuder, a non-lawyer, was unaware that Florey had an ethical obligation to the Board that could prevent him from providing legal advice or otherwise representing him.  As such, the communication between Breuder and Florey is protected from disclosure by the attorney-client privilege and the Board's motion to compel that communication is denied.  *See Vodak*, 2004 WL 783051, at *3.

### C. The Court will not direct Breuder to remove the attorney-client and work product designations over the communications with his wife.

Lastly, the Board seeks an order compelling Breuder to withdraw the attorney-client privilege and/or work product designations he asserted over approximately 60 communications he had with his wife, over which he *also* asserted the marital privilege.[12]  At this time, the Board

---

[12] The Board identifies those documents in its brief to include the following: ~~CTRL00005185;~~ ~~CTRL00005192;~~ CTRL00005197; CTRL00005198; ~~CTRL00005200;~~ CTRL00005201; CTRL00000067, 68, 70, 72; CTRL00000074; CTRL00000075, 76, 78; ~~CTRL00000122-23;~~ ~~CTRL00000129;~~ CTRL00000181; CTRL00005469-70; CTRL00005549; CTRL00005551; CTRL00000290; CTRL00005554; CTRL00000293; CTRL00000295; CTRL00005556; CTRL00000299; CTRL00005559; CTRL00000300; CTRL00005560; CTRL00005564; CTRL00005566; CTRL00005650; CTRL00005670; CTRL00005693; CTRL00000436; CTRL00000437; CTRL00000438-39; CTRL00000441-42; CTRL00000458-59; ~~CTRL00000485-86;~~ ~~CTRL00005770-71;~~ CTRL00005790; CTRL00005792; CTRL00005801; CTRL00005802-03; CTRL00005825; CTRL00005826; CTRL00000537; CTRL00005836; CTRL00005865-66; CTRL00005891; CTRL00005895; CTRL00005958; ~~CTRL00005959;~~ CTRL00005978; CTRL00000739; CTRL00006034-35; CTRL00006040; CTRL00006058, 62.  (Dckt. #359-4.)  Breuder has since withdrawn the attorney-client and/or work product designations for the stricken documents, but continues to assert the marital privilege.

is not challenging Breuder's marital privilege over these communications. Instead, the Board argues that, based on Breuder's privilege log, "it is difficult to discern how communications between Breuder and his wife, on which no lawyers are copied or otherwise involved, could be primarily concerned with legal assistance," and thus warrant protection of the attorney-client and work product privileges. (Dckt. #359 at 14-15, *quoting Loctite Corp. v. Fel–Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981).)

In his response, Breuder provided an expanded and more persuasive explanation for his claims of privilege. (Dckt. #381 at 12-15.) For example, Breuder explains that twenty-two of the communications with his wife "are drafts of communications Breuder sent to his counsel for the purpose of seeking legal advice" and he provides additional detail for each of those communications.[13] (*Id*. at 13.) Such draft communications are protected work product. *See, e.g., SmithKline Beecham Corp. v. Pentech Pharm., Inc.,* No. 00 C 2855, 2001 WL 1397876, at *4 (N.D.Ill. Nov. 6, 2001). Breuder further explains that another batch of communications with his wife are "forwards of attorney-client communications or work product discussions resulting from attorney-client communications," many of which were separately logged as privileged communications. (*Id*. at 14-15.) Yet another set constitutes Breuder's own work product shared with his wife. As Breuder correctly points out, his disclosure of these otherwise privileged communications to his wife does not constitute waiver. *See Murray v. Bd. of Educ. of City of New York,* 199 F.R.D. 154, 155-56 (S.D.N.Y. 2001) "[D]isclosure of communications protected by the attorney-client privilege within the context of another privilege does not constitute waiver of the attorney-client privilege.").

---

[13] Although Breuder states that his wife Wendy Breuder is in fact a licensed attorney in Pennsylvania, he does not contend that these communications are privileged as a result of her status as an attorney.

On this record and given that the Board has not challenged Breuder's marital privilege over any of these communications, the Court will not compel Breuder to remove the attorney-client or work product designations at this time.

## CONCLUSION

For the foregoing reasons, the Board's motion is granted in part and denied in part. Within seven days (or by March 19, 2021), to the extent he has not already done so, Breuder shall produce to the Board the communication between Breuder and former College attorney Ruffalo, and any additional documents it previously agreed to produce. Breuder shall also submit by March 19, 2021 the communications and any attachments thereto between Breuder, Glaser, and Sapyta that are identified above in footnotes three and four to the Court's proposed order e-mail address (proposed_order_cummings@ilnd.uscourts.gov) for an *in camera* review.

**Dated: March 12, 2021**

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**