IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT BREUDER, | ) |
| | ) |
| Plaintiff, | ) No. 15 CV 9323 |
| | ) |
| v. | ) Judge Andrea R. Wood |
| | ) |
| BOARD OF TRUSTEES OF | ) Magistrate Judge Jeffrey I. Cummings |
| COMMUNITY COLLEGE DISTRICT | ) |
| NO. 502, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Breuder, who served as the President of the College of DuPage (the "College") from 2009 until his termination in October 2015, brings this lawsuit against defendants, the Board of Trustees of Community College District No. 502 (the "Board")[1], and individual Board members, alleging claims concerning §1983 due process violations, breach of contract, defamation, and civil conspiracy. Certain defendants have, in turn, filed counterclaims against Breuder alleging breach of contract, breach of fiduciary duty, and conversion.

During the course of discovery, Breuder served the Board and individual defendants Deanne Mazzochi, Frank Napolitano, and Charles Bernstein (collectively, the "Individual Defendants") with requests for admission that were issued pursuant to Federal Rule of Civil Procedure 36. Currently before the Court are Breuder's motions to deem admitted certain of his requests for admission or, in the alternative, to compel the Board and the Individual Defendants to provide proper responses to these requests for admission. (*See* Dckt. #360 (motion regarding

---

[1] Generally speaking, the Court refers to defendant as "the Board," but when describing individuals, events, and facts related to the College as an entity might refer to "the College." At times, the two are used interchangeably.

1

the Board); Dckt. #362 (motion regarding the Individual Defendants)). Breuder asserts that defendants made a multitude of invalid objections to his requests for admission ("RFAs") and that their responses to many of the RFAs were otherwise insufficient for various reasons. For the reasons stated below, Breuder's motions are granted in part and denied in part.

I. DISCUSSION

    A. **Standards governing Breuder's motions to determine the sufficiency of defendants' responses to his RFAs**

"Requests to admit serve to narrow the issues at trial and can help parties limit the need for extensive discovery as to issues that can be addressed through Rule 36 admissions." *Loudermilk v. Best Pallet Co., LLC,* No. 08 C 06869, 2009 WL 3272429, at *1 (N.D.Ill. Oct. 8, 2009). If a party does not object to a RFA, it "must either admit the matter, deny the matter, or 'state in detail why [it] cannot truthfully admit or deny it.'" *Id., quoting* Fed.R.Civ.P. 36(a)(4). "If the requesting party believes the responding party to have answered insufficiently, it may move for the court to rule on the answer's sufficiency." *Id.,* at *2. Where, as here, there is a challenge to the sufficiency of a party's responses to the RFAs, "the party opposing the challenge has the burden of persuasion to show that the response to the request is sufficient." *Climco Coils Co. v. Siemens Energy & Automation, Inc.,* No. 04 C 50342, 2006 WL 850969, at *1 (N.D.Ill. Mar. 28, 2006). Courts, which have "significant discretion" when determining the sufficiency of RFA responses, may order that the matter be deemed admitted or that an amended response be served if an RFA response is insufficient. *Reitz v. Creighton,* No. 15 C 1854, 2019 WL 5798680, at *2 (N.D.Ill. Nov. 7, 2019); *United States Sec. & Exch. Comm'n v. Stifel,* No. 11-C-0755, 2016 WL4471859, at *2 (E.D.Wis. Aug. 24, 2016).

**B.     Breuder's challenges to the sufficiency of defendants' responses to his RFAs**

Breuder's challenges to the sufficiency of defendants' responses to his RFAs are two-pronged. First, Breuder asserts that defendants have interposed myriad invalid objections to sufficiently answering his RFAs. Specifically, that the RFAs: (1) are too numerous and are more like interrogatories than RFAs; (2) concern documents that are not attached and that "speak for themselves"; (3) have defective form; (4) are ambiguous; (5) demand that defendants make legal conclusions; (6) concern irrelevant issues; and (7) invade defendants' attorney-client privilege. Breuder further asserts that the Individual Defendants failed to make reasonable inquiries necessary to answer certain RFAs and that they improperly qualified some of their denials by stating that they lacked personal knowledge. Finally, Breuder asserts that all defendants included unnecessary and argumentative commentary in their responses to certain RFAs.[2]

The Court will address each of Breuder's challenges in turn.

**1.     Defendants' objections to the number and nature of the RFAs that Breuder served on them are untimely and unsupported**

Defendants object to both the number and nature of the RFAs that Breuder served on them. In particular, the Board asserts that Breuder's motion should be denied in its entirety because the 637 RFAs that Breuder served upon it and the hundreds of RFAs he served on the Individual Defendants are "vastly disproportionate to the scope of the issues in this case." (Dckt. #382 at 1-3 (citing to *McCurry v. Kenco Logistic Servs.,* No. 16-2273, 2017 WL 11489901, at *2

---

[2] Breuder also claims that the Board's responses to RFAs nos. 508, 516, 519, 523, 526, 535, 542, 545, 552, 555, 562, 565, 570, 574, and 578 contain "equivocal admissions and inappropriate qualifications." (Dckt. #361 at 15). However, since the Board affirmatively states that it has "admitted these requests" (Dckt. #382 at 12), the Court need not deem them admitted. The issue of whether the Board has made proper qualifications to these requests is addressed in Section B.10, below.

3

(C.D.Ill. Dec. 8, 2017));[3] *see also* Dckt. #379 at 1-2 (defendant Mazzochi's challenge to the 163 RFAs served upon her). For their part, defendants Napolitano and Bernstein assert that Breuder's motions should be denied because the RFAs served on them "read like thinly disguised interrogatories." (Dckt. #383 at 2-3). Defendants' arguments fail for three reasons.

First, the appropriate manner in which to assert an objection regarding the alleged excessive number of RFAs that have been served is by filing a motion for a protective order *before* the RFAs are due to be answered. *See, e.g., McCurry,* 2017 WL 11489901, at *1 (granting in part and denying defendant's motion for a protective order); *Tamas v. Family Video Movie Club, Inc.,* 301 F.R.D. 346, 346-48 (N.D.Ill. 2014) (granting plaintiffs' motion for a protective order to excuse them from answering the 29,440 RFAs issued by defendant). A party cannot choose to answer RFAs and then contend that too many RFAs were served upon it in the first place only after the adequacy of its responses to the RFAs has been challenged.

Second, while it is true that RFAs should not be excessive in number and should be tailored in a manner and scope so as to avoid harassment and improper motive,[4] it is equally true that "'[n]o presumptive limit has ever been set on the number of requests a party can propound.'" *Escobedo v. Ram Shirdi Inc.,* No. 10 C 6598, 2011 WL 13243990, at *2 (N.D.Ill. Mar. 16, 2011), *quoting BP Amoco Chemical Co. v. Flint Hills Resources, LLC,* No. 05 C 5661, 2008 WL 4542738, at *1 (N.D.Ill. June 11, 2008); *Bonner v. O'Toole,* No. 12 C 981, 2012 WL 6591720, at *4 (N.D.Ill. Dec. 18, 2012). Instead, whether the number of RFAs served in a particular case is appropriate depends upon the "complexity of the case" and whether or not the propounding party

---

[3] In *McCurry,* the court found that the 453 RFAs that plaintiff propounded were "unnecessary and unduly burdensome in a simple employment discrimination matter" and it instead limited plaintiff to no more than 25 RFAs. *McCurry,* 2017 WL 11489901, at *2.

[4] *See, e.g., Robinson v. Stanley,* No. 06 C 5158, 2009 WL 3233909, at *2 (N.D.Ill. Oct. 8, 2009).

4

is "truly seeking admissions" or is instead "seeking to circumvent the Federal Rules regarding discovery." *Bonner*, 2012 WL 6591720, at *4 (internal quotation marks omitted).

As Breuder points out, this is not "a simple employment discrimination matter." Indeed, as a review of the factual allegations underlying the multiple constitutional and common law claims asserted by Breuder and the counterclaims asserted by defendants, the Seventh Circuit's decision on the interlocutory appeal, the multi-year scope of the allegations in question, and the lengthy docket sheet would confirm, very little about this case is "simple." Moreover, defendants have offered no evidence to meet their burden of showing that any (or all) of them will suffer an *undue* burden if ordered to sufficiently answer Breuder's RFAs. *See BP Amoco*, 2008 WL 4542738, at *1 (recipient of RFAs bears the burden of establishing that answering them will be unduly burdensome); *Whole Woman's Health All. v. Hill,* No. 118CV01904SEBMJD, 2020 WL 1028040, at *6 (S.D.Ind. Mar. 2, 2020) (defendants failed to carry burden where they did not provide "affidavits or other evidence describing the costs and time that would be required to comply with Plaintiffs' requests"); *Al-Jundi v. Rockefeller,* 91 F.R.D. 590, 594 (W.D.N.Y. 1981) ("mere burdensomeness" is not enough; "the burden must be undue in light of all the circumstances").

Finally, Napolitano and Bernstein provide no specifics and identify no representative RFAs to support their contention that Breuder's RFAs are, in reality, "thinly designed interrogatories." The Court, after its own independent review of the RFAs served on the Individual Defendants (Dckt. #363-1), rejects defendants' contention and finds that they have failed to show that the RFAs constitute an abuse of the discovery process. *See Escobedo,* 2011 WL 13243990, at *2 ("a court should be reasonably certain of the existence of discovery abuse before it limits the number or scope of requests to admit with regard to any matter otherwise

5

discoverable") (internal quotation marks omitted); *BP Amoco,* 2008 WL 4542738, at *1 (same). Accordingly, the Court will not deny Breuder's motions on the ground that the number of RFAs that he has served upon defendants is excessive.

### 2. Defendants' refusal to fully answer RFAs concerning documents on the grounds that the documents are not attached and "speak for themselves" is unjustified

Defendants object to and deny various RFAs on the ground that the documents referenced by the RFAs are not attached and because the documents speak for themselves.[5] These objections are without merit. To begin, "[a] party need not attach copies of documents *referred* to in his requests, particularly when they are within defendant's possession . . . unless plaintiff is directly seeking admission as to the authenticity of the documents themselves." *Diederich v. Dep't of Army,* 132 F.R.D. 614, 617 (S.D.N.Y. 1990) (emphasis in original); *Whole Woman's Health*, 2020 WL 1028040, at *7 ("Defendants argue that they cannot respond to RFA No. 25 without 'being provided the document' under Rule 36(a)(2). . . . However, Rule 36(a)(2) applies only to '[a] request to admit the genuineness of a document.'").

Furthermore, courts have repeatedly and – to this Court's knowledge – unanimously held that defendants' "document speaks for itself" objection is unjustified. *See Flohr v. Comdisco, Inc.,* No. 01 C 3187, 2002 WL 598522, at *2 (N.D.Ill. Apr. 18, 2002); *United States v. Virkutis,* No. 83 C 1758, 1987 WL 7806, at *2 (N.D.Ill. Mar. 11, 1987); *Whole Woman's Health,* 2020 WL 1028040, at *7 n.4; *Miller v. Holzmann,* 240 F.R.D. 1, 4 (D.D.C. 2006). Consequently, "if the request for admission quotes a document[] and asks the other party to admit that the document contains the material quoted, it should be admitted if the quotation is accurate and denied if it is not." *Miller,* 240 F.R.D. at 4; *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.,*

---

[5] The Board's responses to RFAs nos. 16, 461, 462 and the Individual Defendants' responses to RFAs nos. 51-57 and 95-105 contain this objection. (Dckt. #361 at 5; Dckt. #363 at 7 n.3).

6

194 F.R.D. 76, 80 (W.D.N.Y. 2000) (same). Similarly, if "the request for admission paraphrases a document, the request should be admitted if the paraphrase is accurate and denied if it is not." *Miller,* 240 F.R.D. at 4. Accordingly, these objections are stricken and defendants must properly respond to the RFAs in question.[6]

### 3. The Board's Form Objections Are Baseless

The Board has objected "to the form" of four RFAs (nos. 152-155) and refused to otherwise respond to them. (Dckt. #361-1 at 1-2). It is well-settled that such boilerplate objections which are "not backed up with any reason or justification" are unfounded and should be stricken. *See, e.g., Hunt v. Nw. Suburban Cmty. Hosp., Inc.,* No. 03 C 50250, 2007 WL 1512580, at *3 (N.D.Ill. May 22, 2007). Accordingly, this Court strikes these objections and orders the Board to properly respond to these RFAs.

### 4. Defendants' vagueness/ambiguity objections are overruled

The Board and the Individual Defendants have objected to and refused to respond (in whole or in part) to certain RFAs on the ground the RFAs contain words or phrases that are vague and ambiguous. (Dckt. 361-1 at 10 (nos. 233-235); Dckt. #363-1 at 58-61 (nos. 136-138)). While "a responding party may object based on vagueness, *i.e.*, when the respondent cannot answer because the meaning of the request is uncertain," *Stifel,* , 2016 WL 4471859, at *2 (internal quotation marks omitted), "a party responding to a request for admission is required to use reason and common sense in interpreting phrases used in the request." *Whole Woman's Health,* 2020 WL 1028040, at *7. In this case, the supposedly vague phrases are either clear on

---

[6] Defendants' process of submitting proper responses should be facilitated by Breuder's identification of the documents referenced within the RFAs and his statement of where the documents can easily be obtained. (*See* Dckt. #363 at 6 n.2).

7

their face (for example, has the Board ever "taken action against" the Foundation)[7] or consist of terminology and phrases taken directly from a Board policy (Board Policy No. 10-55) that was in effect while the Individual Defendants were serving as Board Trustees. (*See* Dckt. #361 at 12; Dckt. #363 at 14-15). The Court does not find that it is unreasonable to require the Board to respond to RFAs that call for it to address whether it "took action against" the Foundation or to require the Individual Defendants to respond to RFAs that incorporate terminology from a Board policy that they – as Board Trustees – were charged with knowing and applying. *See, e.g., James v. UMG Recordings, Inc.,* No. C 11-1613-SI (MEJ), 2013 WL 5402045, at *3 (N.D.Cal. Sept. 26, 2013) (a party has no basis to refuse to respond to RFA concerning a term within its own agreement); *see also Flohr*, 2002 WL 598522, at *1; *Thermapure, Inc. v. Giertsen Co. of Illinois,* No. 10 C 4724, 2013 WL 1222330, at *3 (N.D.Ill. Mar. 25, 2013). Accordingly, the Court overrules defendants' vagueness/ambiguity objections, and defendants must submit amended responses that properly address these RFAs.[8]

### 5. The RFAs do not call for defendants to admit legal conclusions

The Individual Defendants have objected to a number of RFAs that call upon them to make admissions regarding their knowledge of Breuder's "duties, responsibilities, or authority as [the College's] president, as set forth in his employment contract, Board policies, or the Foundation MOU and By-Laws" on the ground that the RFAs require them to make a legal conclusion. (Dckt. #363 at 14-15 (referencing the Individual Defendants' responses to RFAs nos. 51-57, 89-91)). The Board makes the same "legal conclusion" objection to RFAs which

---

[7] The "Foundation" refers to the College's Foundation.

[8] If, as they suggest (Dckt. #383 at 6-7), current Trustees Napolitano and Bernstein are in fact unaware of the meaning of the Board Policy 10-55, they have a duty to make a "reasonable inquiry" regarding the meaning of the policy and the terminology contained therein as specified below in Section B.9 prior to submitting their amended responses to these RFAs.

8

require it to admit that the allegations of Breuder's termination resolution amount to charges of spoliation or destruction of evidence or the violation of two provisions of Illinois statutory law and further require it to admit that Foundation funds do not constitute "public funds" or "State property or resources" under specified state statutes. (Dckt. #361 at 13-14 (referencing the Board's responses to RFAs nos. 156, 281, 282, 292, and 294)).

Defendants are correct that a party cannot be asked to admit a legal conclusion. *Whole Woman's Health,* 2020 WL 1028040, at *3; *Hanley v. Como Inn, Inc.,* No. 99 C 1486, 2003 WL 1989607, at *3 (N.D.Ill. Apr. 28, 2003) (party cannot be asked "to admit to a provision of ERISA"). Nonetheless, Rule 36(a)(1)(A) "permits requests for admissions as to facts, 'the application of law to fact, or opinions about either.'" *Whole Woman's Health,* 2020 WL 1028040, at *3, *quoting* Fed.R.Civ.P.36(a)(1)(A); *Hanley*, 2003 WL 1989607, at *1.

The Court finds that the RFAs directed towards the Individual Defendants properly call upon them to admit their understanding and opinions as to the scope and limits of Breuder's authority under his employment agreement and the other governing documents. *See, e.g., Scholz v. Norfolk S. Ry. Co.,* No. 07 C 378, 2007 WL 1875980, at *2 (N.D.Ill. June 26, 2007); *James,* 2013 WL 5402045, at *1 ("A request for admission that relates to the interpretation of a contract at issue in a case involves the application of law to the unique facts of that case, and is thus permissible under the amended Federal Rule of Civil Procedure 36."); *Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.,* No. 5:19-CV-381-TKW/MJF, 2020 WL 6122067, at *3 (N.D.Fla. Apr. 6, 2020) (same). The Court similarly finds that the RFAs which call upon the Board to admit its understanding and opinion as to how the specified statutes would apply to the Foundation's funds are appropriate under Rule 36. *Whole Woman's Health,* 2020 WL 1028040, at *3 (RFAs that do not require defendants to "interpret a statute, but instead ask them simply to

9

apply the law to the facts" are appropriate); *Phan v. Convergent Outsourcing, Inc.,* No. 3:14-CV-84-J-25JBT, 2014 WL 12623815, at *3 (M.D.Fla. July 16, 2014) (RFA that required defendant to admit that it used an "automatic dialing system" within the meaning of the TCPA was appropriate). Accordingly, defendants' "legal conclusion" objections are stricken.

6.  **The Court overrules defendants' relevancy objections**

A responding party may validly object to an RFA that exceeds the scope of discovery permitted under Rule 26(b)(1). *Stifel,* 2016 WL 4471859, at *2 (citing to *Lynn v. Monarch Recovery Mgmt., Inc.,* 285 F.R.D. 350, 363 (D.Md. 2012)). The Board objects to RFA no. 70, which seeks to have the Board admit that it did not provide written notice to Breuder that it would vote to declare his employment contract void *ab initio* on September 17, 2015, on the ground that the issue is irrelevant to this case. This objection is hard to square with the Seventh Circuit's decision which discussed "Breuder's constitutional opportunity for a hearing" and rejected the individual defendants' assertion that they are entitled to qualified immunity as to Breuder's claim that he was deprived of his constitutional right to due process when he was discharged without notice or a hearing. *See Breuder v. Board of Trustees of Community College District No. 502,* 888 F.3d 266 (7th Cir. 2018). Accordingly, this Court overrules the Board's relevancy objection and orders it to submit an amended response to RFA no. 70.

One or more of the Individual Defendants object on relevance grounds to a series of RFAs (nos. 101-105, 136-138, 141-142, 144-154) that concern: (a) whether defendants were aware that the Board failed to provide Breuder with notice and an opportunity to be heard prior to declaring his employment void *ab initio* (nos. 6-7); (b) whether defendants were aware that the College claimed and received tax benefits for expenses that defendants allege Breuder wrongfully incurred (nos. 72-88); (c) whether defendants wrongfully terminated Breuder in

reliance on the fact that services were provided by a business (Unicom Arc) that the Board was aware of and approved (nos. 101-105); (d) whether defendants were aware of Board policies concerning the investment of College funds, which relate to the Board's breach of fiduciary duty claim against Breuder (nos. 136-38); and (e) whether defendants knew that documents were submitted to the Board in 2014 concerning the College's investments revealed that the investments were out of compliance, which also relate to the Board's breach of fiduciary duty claim (nos. 141-142, 144-154). (*See* Dckt. #363 at 11-13). The Court in its discretion finds that these RFAs are sufficiently related to the claims or defenses of the parties to be relevant within the meaning of Rule 26(b)(1).

Finally, the Individual Defendants – in reliance on the decision in *U.S. S.E.C. v. Nutmeg Grp.,* 285 F.R.D. 403 (N.D.Ill. 2012) – assert that many of the RFAs are irrelevant because they seek to have the defendants admit to the state of their knowledge at the times that certain events at issue in this case occurred. *See* Dckt. #383 at 4, *quoting Nutmeg*, 285 F.R.D. at 405 ("knowledge of or awareness of facts on a certain date [is] irrelevant because '[t]he asserted facts at the core of this case either are true or not; the SEC's current state of knowledge is not relevant to or probative of anything'"); Dckt. #379 at 3 (also quoting *Nutmeg*). The *Nutmeg* decision is distinguishable. Breuder is not using his RFAs to have the Individual Defendants make admissions about their "current state of knowledge." Instead, the RFAs call for defendants to admit to their knowledge at certain pertinent times – such as, for example, their knowledge on September 17, 2015, the date that the Board voted to declare Breuder's employment contract void *ab initio*. (*See, e.g.,* Dckt. #363-1 at 1-5 (RFA nos. 3-7)). Accordingly, for the above reasons, the Individual Defendants' relevance objections are overruled and they must submit amended responses to these RFAs.

11

### 7. The Board's attorney-client privilege objection is overruled

In RFA no. 456, Breuder asks the Board to admit that during Breuder's tenure as President, the College's legal counsel advised the College that construction management services were commonly considered as professional services exempt from a formal bidding process under the applicable Illinois statute. The Board objects to responding to this RFA on the ground that the College's counsel's advice to the College is protected by the attorney-client privilege. Breuder agrees that the advice was privileged but asserts that the College waived its privilege by disclosing its counsel's advice to the Illinois Auditor General, a constitutional officer of the State of Illinois. *See, e.g., Vardon Golf Co. v. Karsten Mfg. Corp.,* 213 F.R.D. 528, 532 (N.D.Ill. 2003) (voluntary disclosure to a third party by the holder of an attorney-client privilege is inconsistent with the attorney-client confidential relationship and waives the privilege). The College, in turn, asserts that it did not waive its privilege because disclosure to an auditor does not affect a waiver. (Dckt. #382 at 13 (citing to *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* 237 F.R.D. 176, 183-84 (N.D.Ill. 2006)).

The Court finds that *Jaffe* is distinguishable and that the College did waive its attorney-client privilege by disclosing its counsel's advice to the Illinois Auditor General. In *Jaffee*, the defendant disclosed its work product material to a private auditor and the court found that no waiver occurred because disclosure to the auditor did "not substantially increase the opportunity for potential adversaries to obtain the information." *Jaffe,* 237 F.R.D. at 183. Here, by contrast, the College disclosed its counsel's advice to a public official without any assurance or agreement that the advice would remain confidential.[9] Such a disclosure did substantially increase the

---

[9] In a later decision, the *Jaffe* court found that the defendant did not waive its work product privilege by disclosing the privileged material to the Securities and Exchange Commission only after first insisting on the execution of a confidentiality agreement. *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* 244 F.R.D. 412, 433 (N.D.Ill. 2006).

opportunity for potential adversaries to obtain the information and, indeed, at least one adversary (Breuder) has in fact obtained the information. Because the College waived its attorney-client privilege by disclosing its counsel's advice to the Illinois Auditor General, its privilege objection is stricken and it must submit an amended answer to RFA no. 456.

        **8.**        **Breuder's RFAs do not invade the attorney-client privilege of the Individual Defendants**

One or more of the Individual Defendants objected to a number of RFAs (specifically, nos. 3-7, 11, 16, 17, 21-25, 28, 39, 72-89, and 141-154) on the ground that responding to the RFAs would require them to divulge the subject matter of communications with the College's counsel. (*See* Dckt. #379 at 5-6). Breuder asserts that his RFAs seek the admission of facts and are not directed towards communications that the Individual Defendants have had with their counsel.

The distinction between facts on the one hand and the actual communications with counsel on the other hand, is fundamental. This is so because "[t]he 'attorney-client privilege protects *communications* between a client and its lawyer, not the facts which the client communicates to the attorney. . . . And the privilege does not protect facts that an attorney obtains from independent sources and conveys to his client.'" *ChampionsWorld, LLC v. U.S. Soccer Fed'n,* 276 F.R.D. 577, 589 (N.D.Ill. 2011), *quoting Standard Chartered Bank PLC v. Ayala Int'l Holdings, Inc.,* 111 F.R.D. 76, 80 (S.D.N.Y. 1986) (citation omitted; emphasis in original); *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.,* No. 14-CV-748-WMC, 2015 WL 8492771, at *4 (W.D.Wis. Dec. 10, 2015) (same). In this instance, each of the RFAs in question request that the Individual Defendants admit their knowledge of specified facts and they do not

13

seek to have the defendants disclose what they said or did not say to their counsel.[10] Accordingly, the Court finds the Individual Defendants have failed to "meet their burden of demonstrating that answering the disputed requests would reveal anything more than underlying facts", *Itex,* 2011 WL 1224920, at *2, and their privilege objections are overruled.

### 9. The Individual Defendants have failed to show that they engaged in the "reasonable inquiry" required by Rule 36 prior to stating their lack of knowledge to respond to certain RFAs

One or more of the Individual Defendants objected to a number of RFAs (specifically, nos. 3-7, 11, 16, 17, 21-28, 51-57, 72-91, 95-105, 136-138, 139, 141-142, and 144-154) on the ground that they lacked the recollection and knowledge to unconditionally admit the RFAs.[11] Breuder asserts that defendants' responses to the RFAs are insufficient because defendants have failed to make the "reasonable inquiry" required by Rule 36 prior to asserting their lack of knowledge to respond to the RFAs. In particular, Breuder states that the Individual Defendants "fail to articulate why the information known and available to them is insufficient to answer" and that their "acknowledgement that their lack of 'recollection could be refreshed . . . at [their] deposition or otherwise' shows that they could (and should) have tried to refresh their recollection by reviewing available materials before answering but did not." (Dckt. #363 at 6).

Under Rule 36(a)(4), a party responding to RFAs "may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made

---

[10] The cases cited by the Individual Defendants are distinguishable because the RFAs in those case "were looking specifically for what the responding party said or did not say to its attorneys." *Itex, Inc. v. Workrite Unif. Co. Inc.,* No. 08 C 1224, 2011 WL 1224920, at *2 (N.D.Ill. Mar. 31, 2011) (citing to *Bergstrom, Inc. v. Glacier Bay, Inc.,* No. 08 C 50078, 2010 WL 257253, at *3 (N.D.Ill. Jan. 22, 2010)); *Mattel, Inc. v. MGA Ent., Inc.,* No. CV 04-9049 DOC RNBX, 2010 WL 3705907, at *6 (C.D.Cal. Sept. 20, 2010); *Matter of Interco Inc.,* 137 B.R. 1008, 1010 (Bankr.E.D.Mo. 1992).

[11] The Individual Defendants also objected to these RFAs on multiple other grounds that have already been addressed in the preceding sections.

reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed.R.Civ.P. 36(a)(4). Rule 36 requires a responding party to demonstrate that a reasonable inquiry has been made and to describe in detail "the specific reasons why, after its reasonable inquiry, the party still lack[s] knowledge sufficient to admit or deny the matter." *Loudermilk*, 2009 WL 3272429, at *1; *Whole Woman's Health,* 2020 WL 1028040, at *7 n.3; *Stifel,* 2016 WL 4471859, at *2 n.2; *Lambert v. Owens,* No. 99 C 50076, 2002 WL 1838163, at *1 (N.D.Ill. Aug. 9, 2002). A responding party must include its statement about its reasonable inquiry in the RFA response itself. *Braun v. Vill. of Palantine,* No. 18 C 4850, 2020 WL 1888914, at *2 (N.D.Ill. Apr. 16, 2020) ("While Defendants now state in their response brief that they have made a reasonable inquiry with their client, an answer in a response brief does not qualify as compliance with Rule 36.").

What qualifies as a "reasonable inquiry" depends on the facts of the case. *Loudermilk*, 2009 WL 3272429, at *1; *Whole Woman's Health,* 2020 WL 1028040, at *1. While "[g]enerally, a 'reasonable inquiry is limited to review and inquiry of those persons and documents that are within the responding party's control. . . . under certain circumstances, parties may be required to inquire of third parties to properly respond to requests for admissions.'" *Hopfinger v. City of Nashville, Illinois,* No. 3:18-CV-1523-NJR, 2020 WL 1169342, at *2 (S.D.Ill. Mar. 11, 2020), *quoting Whole Woman's Health,* 2020 WL 1028040, at *5; *Stifel,* 2016 WL 4471859, at *2. In particular, courts have

> found that a party *must* make inquiry of a third party when there is some identity of interest manifested, such as both being parties to the litigation, a present or prior relationship of mutual concerns, or active cooperation in litigation, and when there is no manifest or potential conflict between the party and the person of whom inquiry will be made.

15

*Stifel,* 2016 WL 4471859, at *2 (emphasis added); *Ross v. Gossett,* No. 3:15-CV-309-SMY-MAB, 2021 WL 632963, at *8 n.10 (S.D.Ill. Feb. 18, 2021) (same, citing cases); *Al-Jundi,* 91 F.R.D. at 594-95 (defendant must consult with co-defendants and their counsel where such efforts do not require extraordinary expense or effort).

In this case, the Individual Defendants failed to make the reasonable inquiry required by Rule 36. Their current responses often state that they lack sufficient recollection to respond but that their recollection could be refreshed at their depositions. There are two problems with this assertion. First, a party may not merely rely on his or her lack of personal knowledge when answering RFAs. *See, e.g., Loudermilk*, 2009 WL 3272429, at *1; *Gevas v. Dunlop,* No. 18 C 6556, 2020 WL 814875, at *4 (N.D.Ill. Feb. 19, 2020). Second, the fact that the Individual Defendants believe that their recollection can be refreshed indicates that there are materials or persons who can refresh their recollection. The Court finds that the Individual Defendants have a duty to reasonably inquire of those materials or persons to refresh their recollections *before* submitting their amended responses to the RFAs. Moreover, given the degree of cooperation between defendants,[12] the united front that they have put up against Breuder, and the lack of conflicts between them, the Court further finds that the Individual Defendants are required to consult with the co-defendants and their counsel as part of their reasonable inquiry to fill any gaps in their knowledge.

Accordingly, the Individual Defendants are required to submit amended responses to the RFAs in question. If defendants continue to lack sufficient knowledge or information to admit or deny any of the RFAs after engaging in the reasonable inquiry specified above, they are required to state in detail in their response the reasonable inquiry that they have engaged in.

---

[12] For example, defendants have freely incorporated and adopted portions of their co-defendants' briefs in responding to Breuder's motion here and in the context of other discovery motions.

16

**10.   Defendants' responses to certain RFAs contain improper and argumentative commentary**

Breuder asserts that defendants have included improper and argumentative commentary in response to his RFAs.[13] Defendants, on the other hand, assert that their responses contain appropriate qualifications to prevent the creation of improper inferences. Defendants are correct that a responding party is permitted to qualify its response to an RFA "where improper inferences may be drawn from the admission." *Loudermilk*, 2009 WL 3272429, at *2; *Stifel*, 2016 WL 4471859, at *1 (citing cases). Nonetheless, qualifications must be made in good faith (*Id.*), and a responding party is prohibited from adding qualifications that "articulate[] its *defense* to the underlying cause of action"[14] or otherwise "add unnecessary facts or argument." *Stifel*, 2016 WL 4471859, at *6.

Unfortunately, defendants' qualifications in their responses to many of these RFAs contain their defenses and/or unnecessary and argumentative commentary. For example, RFA no. 193 and the Board's response is as follows:

> 193.   Admit that the documents attached as Exhibit JJ reflect a payment of $2,000 made by COD on July 20, 2011, toward Breuder's Max McGraw dues for FY 2012.

ANSWER:

Admit. Stating further, Exhibit JJ is further evidence of Plaintiff's breach of his fiduciary duties.

(Dckt. #361-1 at 4). Clearly, the portion of the Board's response after "admit" is not necessary to qualify the RFA and serves only to advance the Board's defense to Breuder's claim.

---

[13] In particular, Breuder asserts that the Board's responses to RFA nos. 187-191, 193, 197, 201, 204, 205, 207, 210, 212, 216, and 223-229, Mazzochi's responses to RFA nos. 3-7, 11, 17, 21-25, 27, 28, 38, 39, 51-57, 60, 62, 72-91, 95-105, 137-139, and 141-156, and Napolitano's and Bernstein's responses to RFA nos. 136-38, 144-151, and 156 contain improper and argumentative commentary.

[14] *Meyer v. S. Pac. Lines,* 199 F.R.D. 610, 615 (N.D.Ill. 2001) (emphasis in original).

Mazzochi's response to RFA no. 4 is similarly problematic. In this RFA, Breuder asked the Individual Defendants to:

> [a]dmit that as of September 17, 2015, you were aware that the DuPage Count State's Attorney has opined that the 'Board's violation of the Open Meeting Act in July 2011 does not impact the validity of the third addendum to Dr. Breuder's contract.'

(Dckt. #363-1 at 2). This request can easily be answer with a simple "admit" or "deny." Instead, Mazzochi interposed a number of objections that are invalid for the reasons discussed above and concluded with the following unnecessary and argumentative "qualification":

> Mazzochi affirmative states that she recalls being aware in at least the 2015 time frame that the State's Attorney may not have issued an unbiased opinion given his associations with Terry Ekl, who was counsel for Dr. Breuder.

(*Id.*).[15]

Finally, though fewer of their responses were problematic for this reason, Napolitano and Bernstein also included inappropriate qualifications. One example is illustrated by RFA no. 156 and the response of Napolitano and Bernstein:

> 156. Admit that as of October 20, 2015, You were aware that on July 28, 2015, the *Daily Herald* reported that the recording of the December 2014 closed Board session concerning the Fourth Addendum to Breuder's Employment Contract was leaked to the *Daily Herald* on July 28, 2015.
>
> ANSWER:
>
> Admit. Stating further, Defendant believes that until on or around May 21, 2015, the President of the College had responsibility to 'promulgate such procedures as may be necessary to maintain the confidentiality of [closed session] recordings and minutes.'

(Dckt. #363-1 at 83). Thus, rather than simply admitting to their knowledge of the fact that a recording was leaked to a newspaper and moving forward – as Rule 36 required them to do –

---

[15] The Court is aware, as Mazzochi has pointed out (Dckt. #379 at 8-9), that Breuder himself has included long-winded qualifications in response to some of the Board's RFAs. The sufficiency of those responses, however, is not presently before the Court and it is possible that Breuder would have amended his responses if Mazzochi had meet and conferred with him as required by Local Rule 37.2. To be clear, the Court does not condone the violation of the Rules by any party in this case.

18

defendants went on to suggest that the Breuder (the President of the College) was responsible for the leak. This type of "qualification" is not permitted by Rule 36.

Other examples abound. The Court does not find it necessary to expend the additional time going through each of the contested RFA responses to explain why they do not conform to the rules stated above except to generally state its agreement that the portions of the responses outlined by Breuder are problematic. *See, e.g., Meyer,* 199 F.R.D. at 616. Since defendants are ordered to submit amended responses to the RFAs identified in this section for the other reasons stated above, defendants are ordered to carefully review their amended responses to remove any improper qualifications.

## II. REMEDY

Under Rule 36(a)(6), when a court finds that a party has submitted an insufficient response to an RFA it "may order either that the matter is admitted or that an amended answer be served." Fed.R.Civ.P. 36(a)(6). Breuder seeks to have the RFAs to which defendants submitted defective responses deemed admitted. The Court, however, does not believe that that remedy is warranted at this time. For one thing, where – as here – a party has failed to make a reasonable inquiry before issuing a denial or stating that it lacks information to answer an RFA, typically "the harshest remedy is to allow the responding party to amend its answers to conform with the Rule." *Reitz v. Creighton*, 2019 WL 5798680, at *2 (citing cases). The Court also finds it appropriate to allow defendants an opportunity to come into compliance before a stronger remedy is imposed. However, if one or more of the defendants choose not to take advantage of this opportunity and Breuder is forced to file another motion, this Court will not hesitate to deem any non-conforming responses to be admitted. *See Scholz,* 2007 WL 1875980, at *3.

## CONCLUSION

For the foregoing reasons, Breuder's motions (Dckt. #360 & #362) are granted in part and denied in part. The Board and the Individual Defendants are ordered to provide amended responses to the RFAs specified above by April 30, 2021.

**Dated: March 25, 2021**

**Jeffrey I. Cummings**
**United States Magistrate Judge**