IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BREUDER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 CV 9323 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| BOARD OF TRUSTEES OF | ) | Magistrate Judge Jeffrey I. Cummings |
| COMMUNITY COLLEGE DISTRICT | ) | |
| NO. 502, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.      INTRODUCTION

Plaintiff Robert Breuder, who served as the President of the College of DuPage (the

"College") from 2009 until his termination in October 2015, brings this lawsuit against

defendants, the Board of Trustees of Community College District No. 502 (the "Board")[1], and

individual Board members, Kathy Hamilton, Deanne Mazzochi, Frank Napolitano, and Charles

Bernstein, alleging claims concerning §1983 due process violations, breach of contract,

defamation, and civil conspiracy.  Certain defendants have, in turn, filed counterclaims against

Breuder alleging breach of contract, breach of fiduciary duty, and conversion.

The dispute currently before the Court concerns approximately 260 audio recordings

(hereinafter, "Recordings") that defendant Kathy Hamilton made between January 2013 and

November 2015.  Many of these Recordings, according to a log prepared by Hamilton's counsel

---

[1] Generally speaking, the Court refers to defendant as "the Board," but when describing individuals, events, and facts related to the College as an entity might refer to "the College."  At times, the two are used interchangeably.

1

(the "Log"), contained conversations that Hamilton had with co-defendants Deanne Mazzochi, Frank Napolitano, and Charles Bernstein (collectively, the "Recorded Defendants"), third parties, and/or attorneys. (Dckt. #319-3.) Other Recordings reflect comments only of Hamilton herself. (*Id.*) The conversations and comments on the Recordings, according to the Log, concern a variety of topics including Breuder and matters relating to his performance as the College's President as well as a number of seemingly irrelevant matters. (*Id.*) Hamilton states – without elaboration – that she made the Recordings because she suffers from dyslexia. (Dckt. #311 at 1.)

Breuder learned of the existence of the Recordings from Hamilton's 2017 divorce trial, where Hamilton's ex-husband referenced them during his testimony. (Dckt. #319-6 at 14-15.) During discovery in this case, Breuder served an interrogatory and request to produce that required Hamilton to state whether she had obtained any statements contained in audiotapes that concerned the College, the Board, Breuder, and the allegations in this case and to produce such audiotapes. Breuder now demands that Hamilton produce approximately 200 of the Recordings that he believes are relevant to this case from a review of the Log. (Dckt. #319-1; Dckt. #319-3.)[2]

Defendants strenuously object to Breuder's demand for the production of the Recordings and they have filed three motions for the entry of protective orders to bar production of the Recordings. (*See* Dckt. #311 (Hamilton's motion for a protective order); Dckt. #308 (the Recorded Defendants' motion for a protective order); Dckt. #312 (the Board's motion for a protective order).) For the reasons set forth below, Hamilton's motion for a protective order

---

[2] By agreement of the parties (Dckt. #295), Hamilton has produced approximately 50 Recordings that include only her own comments. (Dckt. #319 at 7 n.1; Dckt. #319-3.) Approximately 7 other Recordings cannot presently be located by Hamilton. (*Id.*)

(Dckt. #311) is granted and the motions by the Board and the Recorded Defendants (Dckt. #312 & #308), which seek essentially the same relief as Hamilton, are denied as moot.

## I.   RELEVANT BACKGROUND

In November 2018, Breuder served his First Set of Interrogatories on defendant Hamilton, which included interrogatory No. 10 seeking, in relevant part:

> **Interrogatory No. 10**: State whether You, anyone acting on Your behalf, or anyone to Your knowledge has obtained any statement, including but not limited to statements contained in electronic mail, compact discs, *audiotapes,* videotapes, or any other electronic form, made with or without their knowledge, from any person concerning the College of DuPage, the Board of Trustees, Dr. Breuder, or any of the allegations contained in the Complaint.

(Dckt. #319-7 at 11) (emphasis added).  Hamilton initially objected to this interrogatory as cumulative and duplicative of other interrogatories, overly broad, factually burdensome, and improperly seeking privileged communications, among other boilerplate objections.  (Dckt. #319-7 at 11-12.)

Breuder's counsel clarified during the parties' subsequent meet and confer efforts that this interrogatory was targeted at any audio recordings of conversations in Hamilton's possession related to Breuder, the College, or any allegations of the complaint.  Breuder also served a request for production on Hamilton that expressly sought "[a]ll audio recordings made by You which refer or relate to the College of DuPage, the Board of Trustees, Breuder, or any of the allegations in the Complaint or Counterclaim."  (Dckt. 319-11 at 4.)  Hamilton objected to this request for several reasons including that "the production of these documents could or might be in violation of state statutes."  (*Id.*)  Despite continued meet and confer efforts, the parties were unable to reach an agreement regarding the production of the Recordings.

Breuder first raised the dispute surrounding the Recordings with the Court in his February 2020 motion to compel against Hamilton.  (Dckt. #270 at 5-6.)  In this motion, Breuder

stated his belief – based on the testimony of Hamilton's ex-husband and his attorney's representation – that "Hamilton is in possession of recorded conversations that are highly relevant to Breuder's due process, conspiracy, and punitive damages claims, particularly in that the recordings may reveal the pretextual motive for Breuder's termination and facts concerning Hamilton's efforts to oust Breuder from his employment based on an intentionally misleading and false reporting about the College's administration."  (Dckt. #270 at 6.)

On February 11, 2020, the Court held a hearing on Breuder's motion and counsel for Hamilton raised a concern regarding whether production of the Recordings would violate the Illinois Eavesdropping Act, (the "Act"), 720 ILCS 5/14 *et seq.,* and the privacy interests of the recorded individuals.  In particular, Hamilton's counsel stated:

> Interrogatory No. 10 is a little bit more unusual because that deals with statements that would be in the form of recordings. And there are recordings, your Honor. It's an unusual circumstance that our client did record not only herself but other possible defendants.
>
> My understanding is that there are none with the plaintiff.  No recordings of Dr. Breuder.  And so there was an issue here regarding the eavesdropping statute, which I understand the statute of limitations has run on that; *but our office disseminates or produces or circulates these recordings, produces them, then we could possibly be violating the law because the people who allegedly Ms. Hamilton recorded, we don't have consent to produce that.*

(Dckt. #317 (2/11/20 Hearing Tr.) at 10 (emphasis added).)  To facilitate the process of resolving the parties' dispute, the Court ordered Hamilton's counsel to prepare and circulate to the other parties' attorneys by February 20, 2020 a log indicating the date of each recording, the parties to the recording, and the subject matter of the recording.  (*Id.*; Dckt. #278.)  To protect the privacy interests of individuals who may have been recorded without their knowledge, the Court further ordered that the Log be kept confidential on an attorneys' eyes-only basis.  (Dckt. #317 at 11-14; Dckt. #278.)

Hamilton's counsel timely produced the Log and also served upon Breuder a supplemental answer to interrogatory no. 10, which confirmed that the Recordings contained conversations with the other individual defendants in this case but not with Breuder and incorporated by reference a February 10, 2020 letter from defense counsel. (Dckt. #319-9 at 1-2.) Counsel's February 10 letter stated in part:

> It is my understanding that certain of the above recordings were made without the consent of the participating party to the conversation in possible violation of the Illinois Eavesdropping statute. *Importantly, the dissemination of the recording could result in criminal prosecution*, and the non-consenting party could seek civil damages from the disseminating person or entity. Also, the non-consenting party may want to object to the dissemination. I believe that before dissemination, each non-consenting party should be advised of the tape records.

(Dckt. #319-10 (emphasis added).)

The Court convened a follow-up hearing on March 3, 3020. At that hearing, the Court and counsel for Hamilton, Mr. Botti, had the following exchange on the record regarding the Recordings:

> **THE COURT:** Mr. Botti, I guess I would ask you, is it – my understanding is that all of these calls were recorded by Ms. Hamilton without the consent of the participants of the call; is that correct?

> **MR. BOTTI:** Yes, sir. I believe that is correct.

> **THE COURT:** Okay. All right. So based upon my understanding of the Illinois Eavesdropping Statute, in order to record calls or conversations, it requires the consent of all the parties to a call unless – there are certain exceptions which would not be applicable in this case.

> And so it would appear to me that at least without making any sort of ruling on this matter, but it would appear to me that these calls were made at least facially in violation of the Illinois Eavesdropping Statute which is the particular – which is 740 ILCS 5/14.

> **MR. BOTTI**: 720. I agree. This is Aldo Botti

> **THE COURT:** Yes, 720.

**MR. BOTTI:** -- and I agree. Yes, sir, I agree with that statement. Also for the Court's edification, I believe under the state statute, the statute of limitations has expired, the criminal action.

**THE COURT:** What is that statute of limitations, Mr. Botti, in your understanding?

**MR. BOTTI:** Three years.[3]

**THE COURT:** Three years?

**MR. BOTTI:** Three years, yes, sir.

**THE COURT:** Okay. So the question is – now, I know that the issue was raised at our prior status conference just in terms of there's a threshold issue about Ms. Hamilton's attorneys releasing these calls in the course of discovery in this case, and there is a concern that releasing the calls may at least potentially subject Mr. Botti and his co-counsel to, potentially anyway, some sort of a liability under the Illinois Eavesdropping Statute; is that right?

**MR. BOTTI:** Yes. Aldo Botti speaking.

Your Honor, the state statute, 720 [ILCS 5/14-2(a)(5)], says that any production or dissemination would be a violation of the eavesdropping statute in the state of Illinois. So my concern – again, the other parties, no party to this conversation has – listened to these recordings, only Aldo Botti's firm.

*And my understanding of the law is if I or my client was to disseminate or produce these documents, she could be in violation of Illinois statutes that prohibit it, and that's specifically set forth in the statute.*

(Dckt. #317 (3/3/20 Hearing Tr.) at 4-6 (emphasis added).) Hamilton's counsel also expressed his concern for the privacy rights of the persons whose conversations, unbeknownst to them, were captured on the Recordings and he indicated that Hamilton would file a motion for a protective order to block the production of the Recordings. (Dckt. #317 at 7-8.)

Ultimately, the Court and the parties agreed that the issues surrounding the Recordings should be briefed and the Court set a briefing schedule for the defendants to file their motions for a protective order. Breuder's counsel further agreed to provide the Court (and has since

---

[3] *See* 720 ILCS 5/3-5(b).

provided) a color coded, annotated version of the Log to identify the Recordings that he

continues to seek in discovery (hereinafter, "Annotated Log"). (Dckt. #319-3; *see also* Dckt.

#319-1; Dckt. #319 at 7, n.1.)[4] After a period of delay caused by the COVID-19 pandemic,

Hamilton, the Recorded Defendants collectively, and the Board filed their motions for a

protective order. Per the Court's direction (Dckt. #295), defendants coordinated their efforts and

their motions addressed distinct issues to minimize unnecessary duplication. Breuder filed a

consolidated response and defendants filed reply briefs in support of their respective motions.[5]

Defendants' motions for a protective order raise a number of questions that could require

resolution. In particular:

---

[4] The latest version of Breuder's Annotated Log is attached to Breuder's response brief as Exhibit C. (Dckt. #319-3.) In that version, Breuder has stricken out the Recordings that Hamilton already produced because they only included her voice and has highlighted in gray those Recordings that, according to Hamilton's counsel, can no longer be located. (Dckt. #319 at 7, n.1.)

[5] The parties jointly requested leave to file their motions for a protective order and related briefing under seal. Given the privacy interests involved, the Court granted the parties leave to do so. (Dckt. #296.) Nonetheless, the parties' agreement on this matter is not dispositive and this Court "has an 'obligation to determine whether good cause exists to seal documents or portions thereof, from the public record.'" *Hendick v. Kraft Heinz Co.,* No. 19-CV-1339, 2019 WL 4958238, at *13 (N.D.Ill. Oct. 8, 2019), *quoting Camilotes v. Resurrection Healthcare,* No. 10 C 366, 2012 WL 2192168, at *4 (N.D.Ill. June 14, 2012). Upon its review of the parties' submissions, the Court finds that the parties' motions and briefing should be unsealed except to the extent that the materials impact the privacy interests of those persons whose conversations were captured on the Recordings and who are innocent victims of Hamilton's violation of the Act. *See Hendick,* 2019 WL 4958238, at *13 (the "privacy interests" of litigants can override the public's interest in knowing everything about a judicial proceeding if the privacy interests predominate); *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.,* No. 3:13-CV-82-CRS-CHL, 2017 WL 3220470, at *6 (W.D.Ky. July 28, 2017), *quoting Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, at 308 (6th Cir. 2016) ("The Court should 'heavily' weigh the privacy interests of innocent third parties in balancing the public interest").

The Court finds at this time that the Log, the Annotated Log, correspondence concerning them, and any excerpts from the parties' briefs that discuss the content of the Logs should remain under seal. (*See, e.g.,* Dckt. #319-1; Dckt. #319-2; Dckt. #319-3; Dckt. #313-1; and Dckt. #334 at 4 (lines 2-4), 5-6, among other passages.) The parties are directed to meet and confer to determine whether any additional portions of their filings should remain sealed and they shall submit a joint position statement on this matter to the Court's Courtroom Deputy on or before April 14, 2021. The Court will thereafter order the parties to file publicly available versions of their motions and briefs that redact the properly sealed excerpts.

(1) whether Hamilton has waived any Fifth Amendment privilege that she might otherwise have regarding the production of the Recordings by failing to timely assert the privilege in response to Breuder's written discovery requests;

(2) whether Hamilton can rely on her Fifth Amendment privilege against self-incrimination to obtain a protective order that will preclude production of the Recordings;

(3) whether Hamilton's assertion of her Fifth Amendment privilege creates an adverse inference that can be drawn against her;

(4) whether Hamilton's assertion of her Fifth Amendment privilege creates an adverse inference that can be drawn against the Recorded Defendants if these defendants do not consent to the production of the Recordings that Hamilton secretly made of their conversations;

(5) whether the other defendants and their attorneys would be subject to civil or criminal liability if they make use of any Recordings that are produced by Hamilton;

(6) whether the production of the Recordings would violate the fundamental right to privacy of the Recorded Defendants and the other persons whose conversations, unbeknownst to them, were captured on the Recordings;

(7) whether the Recordings are relevant and discoverable under Rule 26 even if they would ultimately be inadmissible at trial;

(8) whether any of the Recordings should not be produced to Breuder because they concern conversations that are protected by the defendants' attorney-client privilege; and

(9) whether the defendants would be otherwise prejudiced in this litigation by production of the Recordings.

For the reasons set forth below, the Court finds that Hamilton has not waived her Fifth Amendment privilege and that she can properly assert the privilege to obtain a protective order to

block production of the Recordings. However, the Court further finds that Hamilton's assertion of her Fifth Amendment privilege will permit the jury to draw an adverse inference against her (but not against the Recorded Defendants). Given the Court's resolution of these questions, it need not address the remaining issues presented by the parties.

## III.    ANALYSIS

### A.    Hamilton has not waived her Fifth Amendment privilege

Breuder asserts that Hamilton has waived her Fifth Amendment privilege by failing to timely assert an objection based on the privilege in her initial and supplemental responses to his interrogatory no. 10 (which sought for her to identify the Recordings) and her response to his request for production (which sought for her to produce them). (Dckt. #319 at 17-21.) Breuder further asserts that Hamilton waived the privilege when her counsel "admitted several times in open court in this action that she possibly violated the Act in making the recordings." (*Id.* at 17, 22.) The Court disagrees with Breuder's argument that a finding of waiver is required for either of these reasons.

### 1.    The timing with which Hamilton asserted her Fifth Amendment privilege did not effectuate a waiver

Waiver is the voluntary and intentional relinquishment or abandonment of a known existing right or privilege. *See, e.g., King v. Evans,* No. 13-CV-1937, 2015 WL 5316773, at *3 (N.D.Ill. Sept. 11, 2015). Courts have the discretion to determine whether a claimant has waived her Fifth Amendment privilege, *In re DG Acquisition Corp.,* 151 F.3d 75, 81 (2d Cir. 1998), and the Supreme Court has made it clear that the waiver of such a fundamental constitutional guarantee as the Fifth Amendment privilege "is not to be lightly inferred" and that courts should "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Emspak v. United States,* 349 U.S. 190, 196, 198 (1955) (internal quotation marks omitted);

*United States v. A&P Arora, Ltd.,* 46 F.3d 1152, 1995 WL 18276, at *1 (10th Cir. 1995) (the

Fifth Amendment privilege "has a unique, constitutional grounding . . . which counsels caution

in the application of technical waiver principles").

For these reasons, courts have held that "even an unreasonable delay in asserting the Fifth

Amendment privilege does not result in its waiver as a matter of law." *In re Gorsoan, Ltd.,* No.

17-CV-5912 (RJS), 2020 WL 3172777, at *6 (S.D.N.Y. June 15, 2020); *In re DG,* 151 F.3d at 81

("some courts suggest that untimeliness, without more, can never justify a finding of waiver of

the Fifth Amendment privilege"); *Hernandez v. Hankook Tire A. Corp.,* No. 2:12-CV-03618-

WMA, 2014 WL 3052545, at *4 (N.D.Ala. July 3, 2014) (plaintiffs did not waive their Fifth

Amendment privilege "solely for missing the discovery deadlines set forth in the scheduling

order and Rule 33"); *SPV-LS, LLS v. Herbst,* No. 16-MC-197, 2016 WL 8711738, at *2

(S.D.N.Y. June 3, 2016) (finding no waiver even where "Defendant egregiously ignored his

discovery obligations by failing to object or otherwise respond to the subpoena").[6]

Instead, courts in their discretion consider a number of factors including whether waiver

would result from inaction rather than action, whether the delay in asserting the privilege was

intentional and done for tactical gain, and whether the opposing party would suffer any

prejudice. *See, e.g., In re DG,* 151 F.3d at 81 (courts are reluctant to find waiver due to

inaction); *Herbst,* 2016 WL 8711738, at *2 (finding no waiver where defendant took no

"affirmative step to waive his Fifth Amendment privilege" and there was no "suggestion of

---

[6] The cases cited by Breuder are distinguishable.  In both cases, the courts found waiver because the parties *never* actually asserted their Fifth Amendment privilege.  *See United Auto Ins. v. Veluchamy,* No. 09 C 5487, 2010 WL 749980, at *1 (N.D.Ill. Mar. 4, 2010) ("[s]ignificantly, the defendant did *not* assert the Fifth Amendment, he only alluded to a 'potential' Fifth Amendment objection") (emphasis added); *Jaffe v. Grant,* 793 F.2d 1182, 1190 n.6 (11th Cir. 1986) (affirming district court's finding of waiver where plaintiffs' argument with respect to the Fifth Amendment privilege was "obscure" and offered in support of a due process claim, and plaintiffs failed to assert their privilege in response to defendant's discovery or even prior to the hearing on all pending discovery motions).

gamesmanship or prejudice to Plaintiff"); *In re Gorsoan, Ltd.*, 2020 WL 3172777, at *6 (a "tardy assertion" of privilege may result in its loss if intentionally done for tactical gain).

In this case, Hamilton did not affirmatively waive her Fifth Amendment privilege with respect to any future disclosure of the Recordings to Breuder. Moreover, even though she did not explicitly raise the privilege in her objections to Breuder's interrogatory no. 10 and request for production, she did object to producing the Recordings on the ground that doing so "could or might be in violation of state statutes." In other words, Hamilton was refusing to produce the Recordings because she was concerned that she might violate state law if she did so. This objection is consistent with her assertion of her Fifth Amendment privilege and inconsistent with waiver. Moreover, there is no evidence that Hamilton was engaged in gamesmanship or seeking a tactical advantage by waiting until she filed her motion for a protective order to explicitly assert her Fifth Amendment rights. Finally, Breuder has not articulated how he suffered any prejudice by virtue of Hamilton's belated assertion of her privilege. Under these circumstances, the Court finds in its discretion that Hamilton's delay in asserting her Fifth Amendment privilege did not cause her to waive it.

> **2. The admission by Hamilton's counsel that she violated the Act with respect to the creation of the Recordings did not effectuate a waiver of her Fifth Amendment privilege with respect to the future disclosure of the Recordings**

The Illinois Eavesdropping Act provides for liability under two analytically distinct provisions that are relevant to this case. First, under its "recording" provision, the Act states that "[a] person commits eavesdropping when he or she knowingly and intentionally…Uses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation." 720 ILCS 5/14-2(a)(2). Second,

under its "uses or discloses" provision, the Act provides that "[a] person commits eavesdropping when he or she knowingly and intentionally...*Uses or discloses* any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties." 720 ILCS 5/14-2(a)(5) (emphasis added);[7] *see also Carroll v. Lynch*, 698 F.3d 561, 568 (7th Cir. 2012) (quoting the text of the Act's "uses or discloses" provision).

As explained above in Section I, Hamilton's counsel admitted in open court that Hamilton's conduct in making the Recordings facially violated the "recording" provision of the Act. However, counsel's comments did not waive Hamilton's Fifth Amendment privilege with respect to her creation of the Recordings between 2014 and 2015. This is so because Hamilton had no Fifth Amendment privilege concerning her creation of the Recordings at the time her counsel made his comments in 2020 because the three year statute of limitations had run and she was therefore no longer in any possible legal jeopardy under the "recording" provision of the Act. *See, e.g., Hillman v. City of Chicago,* 918 F.Supp.2d 775, 778 (N.D.Ill. 2013) (the Fifth Amendment privilege requires the "possibility" of prosecution, which can be "foreclosed only by the existence of an absolute bar to prosecution as indicated by a statute of limitations, immunity, or double jeopardy").

Nor did counsel's comments waive Hamilton's Fifth Amendment privilege with respect to the "uses or discloses" provision of the Act. To the contrary, counsel made it clear that Hamilton was refusing to disclose the Recordings and was going to move for a protective order

---

[7] During the March 3, 2020 hearing on this matter, the Court expressed the view that Hamilton would be at liberty to discuss the conversations that she included in the Recordings during her deposition. (Dckt. #317 at 8-11.) Upon reflection, it appears that the viewpoint expressed by the Court is inconsistent with the text of the Act's "uses or discloses" provision, which prevents the use or disclosure of "any information" which was obtained from a private conversation in violation of the Act.

precisely because if counsel or his "client was to disseminate or produce these documents [the Recordings], she could be in violation of Illinois statutes that prohibit it."  (Dckt. #317 at 6.)  Thus, although counsel did not use the words "Fifth Amendment privilege," the Court finds that he was clearly asserting Hamilton's right to refuse to "disclose" the Recordings on the ground that doing so would incriminate her.  This was not a waiver.

> ### B.     Hamilton's Fifth Amendment privilege against self-incrimination protects her against being compelled to disclose the Recordings to Breuder

The Fifth Amendment provides that "[n]o person … shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Fifth Amendment may be "asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal proceeding or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972).  The Fifth Amendment privilege protects persons against incrimination under both federal and state law.  *See, e.g., Coushatta Tribe of Louisiana v. Abramoff,* No. CIV.A 07-1886, 2009 WL 2406303, at *2 (W.D.La. July 31, 2009), *aff'd,* No. CIV.A 07-1886, 2009 WL 3068189 (W.D.La. Sept. 21, 2009) (citing to *Mallory v. Hogan,* 378 U.S. 1, 11 (1964)).

The burden of establishing entitlement to invoke the Fifth Amendment rests with Hamilton, who must establish that there is a reasonable possibility that her own actions or testimony will incriminate her.  *Textron Fin. Corp. v. Eddy's Trailer Sales Inc.,* No. CV082289 JFB AKT, 2010 WL 1270182, at *4 (E.D.N.Y. Mar. 31, 2010) (citing cases).  The Fifth Amendment privilege will apply so long as there "is any basis for a prosecution" even if the risk of prosecution is "remote."  *Hillmann*, 918 F. Supp. 2d at 778, *quoting In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1152 (7th Cir. 1981), *aff'd sub nom. Pillsbury Co. v.*

*Conboy*, 459 U.S. 248 (1983); *United States v. D'Apice,* 664 F.2d 75, 76 (5th Cir. 1981). When exercising its discretion to consider whether Hamilton has met her burden, the Court must bear in mind that the Fifth Amendment privilege is liberally construed and that any doubt regarding the validity of Hamilton's claim of privilege must be resolved in her favor. *Hoffman v. United States,* 341 U.S. 479, 486 (1951); *Hillman,* 918 F.Supp.2d at 777-78; *Rothstein v. Steinberg,* No. 5:08CV0673, 2008 WL 5716526, at *2 (N.D.Ohio Dec. 23, 2008).

In this case, Hamilton asserts that she faces the risk of prosecution for violation of the Act's "uses or discloses" provision if she produces the Recordings to Breuder without obtaining the consent of each person whose conversations were captured on the Recordings. This Court agrees. It is well-settled that parties can invoke the Fifth Amendment privilege "during the discovery process to avoid . . . produc[ing] documents," *Davis-Lynch, Inc. v. Moreno,* 667 F.3d 539, 547 (5th Cir. 2012), and "the Fifth Amendment prevents a court from compelling document production where the mere act of production would itself be incriminating." *In re Gorsoan, Ltd.*, 2020 WL 3172777, at *6; *In re Grand Jury Subpoena Dated Feb. 2, 2012,* 741 F.3d 339, 343 (2d Cir. 2013); *In re DG,* 151 F.3d at 79; *Knopf v. Esposito,* No. 17CV5833(DLC), 2021 WL 414670, at *1 (S.D.N.Y. Feb. 5, 2021). Here, the mere act of producing the Recordings to Breuder would be a "disclosure" in violation of the "uses or discloses" provision of the Act.

The fact that Hamilton would be disclosing the Recordings to Breuder only by virtue of a court order compelling her to do so does not remove the possibility of prosecution or defeat the application of the Fifth Amendment privilege. As Hamilton has pointed out (Dckt. #333 at 5), the local State's Attorney – as a representative of the People of the State of Illinois – has the "exclusive discretion" to initiate criminal prosecutions for violations of Illinois law. *See People v. Pankey,* 445 N.E.2d 284, 287 (Ill.App. 1983). Consequently, any order by this Court to force

Hamilton to disclose the Recordings to Breuder would not foreclose the possibility of Hamilton's prosecution for violation of the Act's "uses or discloses" provision. *Hillman,* 918 F.Supp.2d at 778 ("possibility" of prosecution is "foreclosed only by the existence of an absolute bar to prosecution as indicated by a statute of limitations, immunity, or double jeopardy").

Under analogous circumstances, the Illinois Appellate Court upheld the Fifth Amendment privilege of a party by reversing a trial court ruling that had required him to produce tape recordings of telephone conversations that he made in violation of the Illinois Eavesdropping Act. *See In re Marriage of Roney,* 773 N.E.2d 213, 213-16 (Ill.App. 2002). In *Roney,* a divorce action, the trial court – perhaps influenced by an assistant state's attorney's testimony that a criminal prosecution would be unlikely – rejected the respondent husband's argument that his act in turning over the tape records was testimonial and would incriminate him under the Act in derogation of his Fifth Amendment privilege. *Id.* at 214-15. The trial court held respondent in indirect civil contempt and sent him to jail until he complied with its order.

The Illinois Appellate Court stated the nature of respondent's appeal as follows:

> The sole issue before us is whether the act of turning over tape-recorded telephone conversations, which were obtained by eavesdropping in violation of criminal law, constitutes an incriminating testimonial communication protected by the fifth amendment privilege. We conclude that it does.

*Id.* at 215, 216. The federal district court for the District of Columbia reached the same conclusion in a case involving Maryland's Wiretapping and Electronic Surveillance Act, which like the Illinois Act, requires all parties' consent for recording conversations. *See Parker v. Baltimore & Ohio R. Co.,* 555 F.Supp. 1177, 1179-80 (D.D.C. 1983) (holding that plaintiff was entitled to assert his Fifth Amendment privilege to avoid the compelled disclosure of tape recorded conversations made in violation of Maryland's law).

Breuder does not address *Roney*. Instead, he relies on a quartet of decisions to support his assertion that "Defendants' beliefs that they will not be shielded from civil or criminal liability resulting from their use of the Hamilton Recordings are unfounded." *See* Dckt. #319 at 10, 11 (citing to *Scheib v. Grant,* 22 F.3d 149 (7th Cir. 1994); *Steffes v. Stephan Co.,* No. 96 C 8225, 1997 WL 305306 (N.D.Ill. May 30, 1987), *aff'd,* 144 F.3d 1070 (7th Cir. 1998); *Washburn v. Brown,* No. 79 C 4767, 1986 WL 6946 (N.D.Ill. June 12, 1986); *Scarpelli v. McDermott Will & Emery LLP,* 117 N.E.3d 238 (Ill.App. 2018)).

However, all of these cases are distinguishable. None of them involved the consideration and rejection of a party's effort to assert his or her Fifth Amendment privilege. Instead, the courts in three of the cases applied the absolute litigation privilege to shield *attorneys* from liability in *civil* cases. For example, in *Scheib*, the Seventh Circuit stated its holding as follows:

> The defendants . . . contend that the longstanding common law protection afforded to attorneys' statements and conduct closely associated with judicial proceedings required  the district court to grant the defendants nothing less than absolute immunity. We conclude that the district court did not err in holding the defendants absolutely immune from damages liability under the Illinois Eavesdropping Statute for using or divulging the tape recorded conversations in a manner intimately associated with the state court removal proceeding.

*Scheib,* 22 F.3d at 155-56; *Steffes,*1997 WL 305306 at *3-4 (applying the absolute litigation privilege to shield an attorney's agent from civil liability and dismiss the retaliation claims against him); *Scarpelli,* 117 N.E.3d at 241, 243-52 (applying the attorney litigation privilege to shield law firm from civil liability under intrusion upon seclusion claims).

None of these cases held that the attorney litigation privilege would extend to a non-attorney party like Hamilton. Moreover, none of them held that the absolute litigation privilege would provide immunity in a *criminal* action.[8] To the contrary, the Illinois Appellate Court has

---

[8] Breuder also relies on the Seventh Circuit's statement in *Scheib* that: "We believe that the Illinois Court would conclude that the truth-seeking process of a judicial proceeding will be most securely advanced if

clearly warned that "[w]hile absolute privilege provides complete immunity from civil action . . . it does *not* preclude criminal prosecution for perjury . . . or subornation of perjury." *Bushell v. Caterpillar, Inc.,* 683 N.E.2d 1286, 1289 (Ill.App. 1997) (citations omitted and emphasis added); *Jurgensen v. Haslinger,* 692 N.E.2d 347, 350 n.1 (Ill.App. 1998) (same). The Seventh Circuit has similarly recognized that "[c]riminal sanctions can coexist peacefully with the absence of civil liability." *Golden v. Helen Sigman &Assocs., Ltd.,* 611 F.3d 356, 364 (7th Cir. 2010). In sum:  civil immunity does not invariably lead to criminal immunity.

The fourth case relied on by Breuder involved the court's resolution of a motion to compel a third party (Arenberg) to produce a tape/transcript that he had withheld from production on the ground that the Act's "uses or discloses" provision prohibited him from divulging on the pain of a felony conviction. *Washburn,* 1986 WL 6946, at *1. This is a more similar fact pattern to this case but there is one major difference:  Arenberg pointedly did *not* assert his Fifth Amendment privilege and he objected to the case being characterized as concerning a Fifth Amendment issue. *Id.* at *1, 3 ("Arenberg asserts *no* privilege, and stresses the fact that he is *not* yet asserting the Fifth Amendment right against self-incrimination."). Instead, "Arenberg simply argue[d] that the court cannot order him to commit a crime." *Id.* at *3. The *Washburn* court disagreed and held that Arenberg would not violate the Act by producing his tape pursuant to the court's order because he would be acting involuntarily and the Act requires a "voluntary act" for proof of a violation. *Id.* at *3. The court also took note of the

attorneys do not fear civil or criminal liability as the consequence of misjudging the legality of disclosing particular information." *Scheib,* 22 F.3d at 156. This statement, however, is not a holding and is instead a projection of what the Illinois Supreme Court might – but has not yet – conclude with respect to the liability of *attorneys* if it were presented with this issue for a ruling. Such dicta from the Seventh Circuit would not "foreclose" the possibility of prosecution for a non-attorney like Hamilton if she produced the Recordings to Breuder.

fact that the State of Illinois was the party plaintiff and was advocating for the position that the court adopted. *Id.*[9]

The question of whether the *Washburn* court's order that Arenberg produce his tape would constitute a violation of the Act is fundamentally different from the question here, which is whether Hamilton would face the "possibility" – however remote – of prosecution under the Act's "uses and discloses" provision if this Court ordered her to produce the Recordings. As stated above, the local State's Attorney would make the decision whether to prosecute Hamilton if she disclosed the Recordings and no order from this Court could divest the State's Attorney of its authority in that regard. Thus, even if this Court were to adopt the reasoning in *Washburn* (and this Court does find it persuasive), that would not provide Hamilton with immunity and foreclose the possibility of prosecution. Accordingly, Hamilton's right to assert her Fifth Amendment privilege remains viable.

### C. Hamilton's Assertion of her Fifth Amendment privilege provides good cause for the entry of a protective order

Under Rule 26(c), the Court may, in its discretion, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c); *Gonzalez v. Scaletta,* No. 17 C 7080, 2018 WL 6573227, at *3 (N.D.Ill. Dec. 12, 2018). The party seeking the protective order bears the burden of demonstrating why the order should

---

[9] The *Washburn* court noted that:

> Arenberg would be complying with a federal court order issued in furtherance of the substantial public interest of seeking the truth to resolve a controversy before the court. Particularly, is this so where here the State of Illinois, as plaintiff, is pursuing the publicly constructive purpose of determining whether defendants knowingly injured the public by not reporting certain matters to the Director of Insurance of the State of Illinois. Under these circumstances, a litigant should not be able to use a state criminal statute to thwart federal civil discovery.

*Id.* at *3.

be entered. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F.Supp.3d 1079, 1084 (N.D.Ill. 2015). To do so, the moving party must show "good cause" and explain why it will be subjected to "annoyance, embarrassment, oppression, or undue burden or expense" if a protective order is not entered. Fed.R.Civ.P. 26(c)(1); *see also Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 944 (7th Cir. 1999). "Good cause is established by showing that the disclosure will cause a clearly defined and serious injury." *Hobley v. Chicago Police Commander Burge,* 225 F.R.D. 221, 224 (N.D.Ill. 2004); *Gonzalez*, 2018 WL 6573227, at *3.

The Fifth Amendment privilege "serve[s] as a shield to any party who fear[s] that complying with discovery would expose him to a risk of self-incrimination." *Wehling v. Columbia Broad Sys.,* 608 F.2d 1084, 1086 (5th Cir. 1979); *Aim Recycling of Fla., LLC v. Metals USA, Inc.,* No. 18-CV-60292, 2020 WL 209860, at *7 (S.D.Fla. Jan. 13, 2020) (same). Filing a motion for a protective order, as Hamilton did here, is an appropriate way to present "sufficient information to enable the judge to determine whether an invocation of the Fifth Amendment would otherwise be proper." *Veluchamy,* 2010 WL 749980, at *4. Where a party has shown that their assertion of the Fifth Amendment privilege is appropriate, the party has likewise established good cause to support the entry of a protective order. *See, e.g., Hobley,* 225 F.R.D. at 226. Because Hamilton has shown that her assertion of the Fifth Amendment privilege is proper, she has established good cause to support the entry of a protective order barring the production of the Recordings identified in the Annotated Log.

### D. Hamilton's Assertion of her Fifth Amendment privilege will allow the jury to draw an adverse inference against her regarding the Recordings

Breuder argues, in the alternative, that the Court should find that an adverse inference may be drawn against Hamilton by the jury regarding any non-privileged Recordings that are not

produced on account of Hamilton's assertion of her Fifth Amendment privilege.  The Court agrees that such a finding is warranted.

Although "'constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process is far from costless.'"  *Aim Recycling*, 2020 WL 209860, at *8, *quoting United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave.,* 55 F.3d 78, 82 (2d Cir. 1995).  As the Seventh Circuit has acknowledged, "[t]he rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own."  *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995) (citing cases); *Daniels v. Pipefitters' Ass'n Loc. Union No. 597,* 993 F.2d 800, 802 (7th Cir. 1993) ("the inference against a witness that may be drawn from the invocation of the Fifth Amendment is permissive"); *see also Veluchamy,* 2010 WL 749980, at *2 (rejecting "defendant's tendentious view that he ought not be placed between the Scylla of taking the Fifth Amendment and potentially suffering adverse inferences, and the Charybdis of avoiding those inferences by waiving the Fifth Amendment and possibly having the information available to authorities").

Breuder further argues that the Recorded Defendants should have an adverse inference drawn against them.  According to Breuder, the Recorded Defendants are equally responsible for Hamilton's failure to produce the Recordings which contain conversations that she had with them because they could consent to have Hamilton produce them.  (Dckt. #319 at 30 n.12.) "That they refuse to do so should be viewed as an admission that the recordings contain harmful evidence, as surely [they] would consent if the recordings were harmful or otherwise supportive of their defenses in this lawsuit."  (*Id.*)  The Court does not agree.  The conversations between the Recorded Defendants and Hamilton were surreptitiously recorded by Hamilton anywhere

20

from six to eight years ago. While it is possible that each of the Recorded Defendants remembers every conversation that they have had with Hamilton, it is also possible that they do not precisely remember the details of the particular conversations with her that made their way into the Recordings. There is no way to know based on the record before the Court. Accordingly, the Court declines to punish the Recorded Defendants for their understandable reluctance to consent to the disclosure of the illicit Recordings that concern them.[10]

## CONCLUSION

For the foregoing reasons, defendant Hamilton's motion for a protective order (Dckt. #311) is granted and the motions for a protective order filed by the Recorded Defendants Mazzochi, Napolitano, and Bernstein's (Dckt. #308) and by defendant Board (Dckt. #312) are denied as moot.


**Dated:  March 31, 2021**




**Jeffrey I. Cummings**
**United States Magistrate Judge**

---

[10] The decision in *Doe By and Through G.S. v. Johnson,* 52 F.3d 1448 (7th Cir. 1995), which Breuder cites, does not require a different result.  In that case, the plaintiffs actually had possession of the tapes in question and there was an evidentiary basis to find that "there was no reason to believe that plaintiffs would not produce the tapes except that they were detrimental to their case."  *Id.* at 1460-61.