**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT BREUDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 15 CV 9323** |
| | ) | |
| **v.** | ) | **Judge Andrea R. Wood** |
| | ) | |
| **BOARD OF TRUSTEES OF** | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **COMMUNITY COLLEGE DISTRICT** | ) | |
| **NO. 502, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff Robert Breuder's motion to compel defendant Board of

Trustees to produce withheld documents (Dckt. #420). For the reasons set forth below,

Breuder's motion is granted in part and denied without prejudice in part.

**I.      BACKGROUND**

Plaintiff Robert Breuder, who served as the President of the College of DuPage (the

"College") from 2009 until his termination in October 2015, brings this lawsuit against

defendants, the Board of Trustees of Community College District No. 502 (the "Board")[1], and

former individual Board members, Kathy Hamilton, Deanne Mazzochi, Frank Napolitano, and

Charles Bernstein, alleging claims concerning §1983 due process violations, breach of contract,

defamation, and civil conspiracy. Certain defendants have, in turn, filed counterclaims against

Breuder alleging breach of contract, breach of fiduciary duty, and conversion.

---

[1] Generally speaking, the Court refers to defendant as "the Board," but when describing individuals, events, and facts related to the College as an entity might refer to "the College." At times, the two are used interchangeably.

The parties are nearing the end of an arduous written discovery process, and presently before the Court is one of the last motions related to that process. In the instant motion to compel, plaintiff seeks an order compelling the Board to produce a wide range of documents that he believes the Board improperly withheld under the attorney-client privilege and/or the work product doctrine. Specifically, Breuder seeks documents in the following categories: (1) documents related to business advice and other non-privileged matters, including planning and preparing for board meetings, developing board policies, personnel matters, public relations, and political strategy; (2) communications with third-parties to which the attorney-client privilege does not extend; and (3) documents improperly withheld under the work-product doctrine that were not prepared in anticipation of litigation.[2]

In response, the Board acknowledges its privilege log is extensive – including 1,700 records and more than 2,300 entries – but contends that the landscape at the College at the time of the communications in 2014-2016 undoubtedly led to a multitude of privileged communications. By the Board's description, that landscape included:

- a federal investigation by the DOJ and a state investigation by the DuPage State's Attorney, and multiple grand jury subpoenas;

- a performance audit by the Illinois Auditor General, pursuant to House Resolution No. 55, which was passed in 2015;

- an investigation by the Higher Learning Commission, the College's accreditor;

- numerous FOIA requests and FOIA challenges from the media, as well as multiple lawsuits involving the media;

- questions regarding the legality of certain no-bid contracts the College had entered;

---

[2] Breuder has compiled the Board's privilege log entries for the documents he seeks to compel in Exhibits A-F to his motion. Exhibits A-D (Dckt. #424-427) list the entries purportedly related to non-privileged matters; Exhibit E (Dckt. #428) lists the entries involving third-parties; and Exhibit F (Dckt. #429) lists the entries withheld on work product grounds.

• potential fraud at the College's radio station and an investigation into the Waterleaf restaurant's finances;

• litigation related to the College's investment in the Illinois Metropolitan Investment Fund and efforts to recover the College's investment;

• communications with the Illinois Attorney General related to whether the College had violated the Open Meetings Act; and

• numerous employment disputes, including Breuder's.

(Dckt. #450 at 3-4.) The Board maintains that it has conducted multiple good-faith privilege reviews following the parties' Local Rule 37.2 conferences and stands firm that all of the documents currently withheld have been appropriately designated as privileged.[3]

## II.     ANALYSIS

### A.     Legal Standard

The parties appear to agree that federal law applies to the privilege issues before the Court.[4] *See, e.g., Andersen v. City of Chicago*, No. 16 C 1963, 2019 WL 423144, at *2 (N.D.Ill. Feb. 4, 2019) ("Federal common law governs any privilege determination in this federal question suit . . . even though the complaint contains supplemental state law claims."). It is also agreed that the attorney-client privilege applies: (1) where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at [the client's] instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be

---

[3] The Board explains that following the parties' Local Rule 37.2 conferences, the Board agreed to "de-designate and produce more than a hundred documents from its log (and many others with redactions)." (Dckt. #450 at 4.) In response to Breuder's instant motion to compel, the Board has also agreed to de-designate the following entries: 542-43, 1265-66, 1302, and Supp 437. To the extent that the Board has not previously produced these documents, it shall promptly do so.

[4] The Board did not expressly concede to the application of federal privilege law in its response brief, but previously agreed to the application of federal law to the privilege issues raised in plaintiff's motion to compel Robling communications. (Dckt. #387 at 5, n.2.)

waived. *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992); *United States v. Lawless*, 709

F.2d 485, 487 (7th Cir. 1983); *Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7528, 2013 WL

2637936, at *2 (N.D.Ill. June 12, 2013). "Whether the privilege exists is a fact intensive inquiry

. . . , and cannot be solved by simply looking to the identity of the sender or recipient of the

communication." *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 17 C 1973, 2018 WL

1804350, at *4 (N.D.Ill. Apr. 17, 2018) (citation omitted).

The purpose of the attorney-client privilege "is to encourage full and frank

communication between attorneys and their clients and thereby promote broader public interests

in the observance of law and the administration of justice." *McCullough v. Fraternal Ord. of

Police, Chicago Lodge 7*, 304 F.R.D. 232, 236 (N.D.Ill. 2014). Because "the privilege is in

derogation of the search for truth," it is narrowly construed and applies "only where necessary to

achieve its purpose." *United States v. BDO Seidman*, LLP, 492 F.3d 806, 815 (7th Cir. 2007)

(internal quotations and citations omitted); *Lawless,* 709 F.2d at 487 (scope of the privilege

should be "strictly confined within the narrowest possible limits"). The Board, as the party

asserting the attorney-client privilege, has the burden of establishing all essential elements of the

privilege and that it has not been waived. *Lawless*, 709 F.2d at 487; *Square D Co. v. E.I. Elecs.,

Inc.*, 264 F.R.D. 385, 390 (N.D.Ill. 2009).

### B.     The Board Has Waived Its Attorney-Client Privilege Over The Communications That Include Individuals From Third-Party Media Consultants Res Publica Group and Levick Strategic Communications.

Breuder has challenged over 300 entries – reflected in Ex. E (Dckt. #428) – that include

individuals from the College's third-party public relations and media consultants, Res Publica

Group and Levick Strategic Communications. According to Breuder, the Board has failed to

meet its burden to show that the presence of the third-party PR consultants did not waive its

privilege. In response, the Board argues that it did not waive the privilege because: (1) Res Publica and Levick were acting as the "functional equivalent" of College employees; and (2) Res Publica and Levick were necessary to assist the Board's attorneys in rendering legal advice. The Court disagrees on both counts.

As this Court recently discussed at length, *see Breuder v. Board of Trustees*, No. 15 CV 9323, 2021 WL 4125084, at *1 (N.D.Ill. Sept. 9, 2021), "[i]t is clearly established black letter law that a party waives the attorney-client privilege when the otherwise privileged documents are disclosed to a third party." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D.Ill. 2020) (internal quotation and citation omitted); *Jenkins v. Bartlett,* 487 F.3d 482, 490 (7th Cir. 2007) ("[O]rdinarily, statements made by a client to his attorney in the presence of a third party do not fall within the privilege, even when the client wishes the communication to remain confidential"); *Burden-Meeks v. Welch,* 319 F.3d 897, 899 (7th Cir. 2003) ("Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option"). "However, there is an exception to the general rule that the presence of a third party will defeat a claim of privilege when that third party is present to assist the attorney in rendering legal services" though, as the Seventh Circuit has noted, "the presence of the third person is normally unnecessary for communication between the client and h[er] attorney." *Jenkins,* 487 F.3d at 490-91; *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. at 517.

Accordingly, to avoid waiver over the communications that include individuals from Res Publica and Levick, the Board must show that the statements made to its attorneys in the presence of those third parties were "necessary to the obtaining or giving of legal advice." *Motorola Sols., Inc.*, 2018 WL 1804350, at *4; *Heriot v. Byrne*, 257 F.R.D. 645, 666 (N.D.Ill.

5

2009) ("[T]he attorney-client privilege should be limited to instances where a third party . . . assists a lawyer in giving legal advice, and where the third party's participation was required to enable the attorney to render legal advice.") (internal quotations and citations omitted).  In particular, the third party's presence must be "'necessary to clarify, facilitate, or improve an attorney's comprehension of the facts on which a legal opinion will be given or a client's comprehension of the attorney's opinion,' so that the client could 'obtain informed legal advice.'"  *Flo Pac, LLC v. NuTech, LLC,* No. WDQ-09-510, 2010 WL 5125447, at *8 (D.Md. Dec. 9, 2010), *quoting* Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine,* at 264 (5th ed. 2007).[5]  The involvement of the third party must be "nearly indispensable" or "serve some specialized purpose in facilitating the attorney-client communications."  *Id.*; *Dublin Eye Assocs., P.C. v. Massachusetts Mut. Life Ins. Co.,* No. 5:11-CV-128-KSF, 2013 WL 653541, at *8 (E.D.Ky. Feb. 2, 2013).

The Seventh Circuit has recognized that the exception to the third-party waiver rule "applies both to agents of the attorney, such as paralegals, investigators, secretaries and members of the office staff responsible for transmitting messages between the attorney and client, and to outside experts engaged to assist the attorney in providing legal services to the client, such as accountants, interpreters or polygraph examiners."  *Jenkins,* 487 F.3d at 491 (internal quotation marks omitted); *Pogorzelska v. VanderCook Coll. of Music,* No. 19 C 5683, 2021 WL 2660268, at *3 (N.D.Ill. June 29, 2021) (same, quoting *Jenkins*).  This exception covers retained experts

---

[5] The *Flo Pac* court elaborated on this point stating that "[a] third party's presence is 'necessary' when 'some arcane information must be transmitted,' and the third party acts 'as an interpreter' of a language, be the language verbal or technical."  *Flo Pac*, 2010 WL 5125447, at *8, *quoting* Epstein, *supra*, at 264; *see also Universal Standard Inc. v. Target Corp.,* 331 F.R.D. 80, 87 (S.D.N.Y. 2019) ("waiver is not found where the presence of a third party is needed to allow the client to communicate information to an attorney, such as where a translator is used or where an accountant supplies specialized knowledge to allow an attorney to understand the client's situation").

"when the expert assists the attorney by transmitting or interpreting client communications to the attorney or formulating opinions for the lawyer based on the client's communications." *Jenkins,* 487 F.3d at 491.

For the reasons that follow, the Board has not shown that this exception applies to Res Publica and Levick.

### 1. The Court Will Presume That The Communications With Res Publica And Levick Are Covered By The Attorney-Client Privilege.

To begin, the Board mistakenly asserts that Breuder "does not challenge whether these communications [with Res Publica and Levick] contain privileged information." (Dckt. #450 at 14.) On the contrary, a comparison of the communications with Res Publica and Levick (reflected in Ex. E, Dckt. #428) and those reflected in Ex. C, Dckt. #426 – which Breuder objects to as containing non-privileged, public relations and political strategy advice – reveals a significant overlap of entries. Thus, Breuder does dispute the privileged nature of many of the communications involving Res Publica and Levick. (*See* Dckt. #420 at 8-13.) Nonetheless, for purposes of determining whether the Board has waived its attorney-client privilege over these communications, the Court will presume that they contain legal advice and are covered by the attorney-client privilege. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D.Ill. 2013) ("[T]he privilege is limited to situations in which the attorney is acting as a legal advisor…").

### 2. The Board's Reliance On The "Functional Equivalent" Test Is Misplaced.

According to the Board, the attorney-client privilege extends to third parties Res Publica and Levick because they were "consistently acting as the functional equivalent of College employees, further supporting their classification as privileged parties." (Dckt. #450 at 18 (citing *In re Bieter Co.*, 16 F.3d 929, 937-38 (8th Cir. 1994) for the proposition that the privilege

extends to an independent consultant acting as the "functional equivalent" of an employee)). However, despite its application in other Circuits, the Seventh Circuit "has not yet adopted the 'functional equivalent' test." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. at 517–18. Moreover, courts in this Circuit have "doubt[ed] the wisdom" of the functional equivalent test and questioned "whether the Seventh Circuit would endorse" it. *BSP Software, LLC v. Motio, Inc.*, No. 12 C 2100, 2013 WL 3456870, at *3 (N.D.Ill. July 9, 2013) ("We are doubtful that the Seventh Circuit would endorse this test, which has the potential to expand the privilege dramatically and thus would run contrary to the Seventh Circuit's frequent admonition that the scope of the privilege must be carefully circumscribed."); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F.Supp.2d 958, 963 (N.D.Ill. 2009) (collecting cases).

Notably, in *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, Judge St. Eve was tasked with determining whether Whirlpool's attorney-client and work product privileges extended to communications with third party advertising agencies acting as "functional equivalents" of Whirlpool employees. Judge St. Eve reviewed district court cases that "expressed doubts regarding the functional equivalent test" and opined that it was "not at all clear" that the Seventh Circuit would adopt the test. 661 F. Supp. 2d at 964. Ultimately, Judge St. Eve held that even if she applied the functional equivalent test, Whirlpool's third party consultants did not satisfy the elements of the test. *Id*. at 964. Thereafter, Whirlpool filed a writ of mandamus, which the Seventh Circuit denied. *In re Whirlpool Corp.*, 597 F.3d 858, 860 (7th Cir. 2010). In doing so, the Seventh Circuit found that Whirlpool failed to establish that the district court's "thoughtful" decision was "patently erroneous or usurpative in character—in other words, a serious error." *Id*. Thus, even when given the opportunity to comment on the applicability of the functional

equivalent test in this Circuit, the Court declined to do so. This calls further into doubt whether the Seventh Circuit would embrace the test.

This Court finds the above decisions to be persuasive and declines to adopt the functional equivalent test here. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. at 518.

> **3.    Even Presuming That The Functional Equivalent Test Is Recognized In This Circuit, The Board Has Failed To Meet Its Burden Of Showing That The Test Should Apply Here.**

Even presuming that the Seventh Circuit would recognize the functional equivalent test, the Board has fallen far short of showing that Res Publica and Levick should be deemed "functional equivalents" to College employees under that test. To begin, the Board's reliance on test is misguided given that the Board's *attorneys* – and not the College itself – retained Res Publica and Levick. *See, e.g., Stardock Sys., Inc. v. Reiche*, No. 417CV07025SBAKAW, 2018 WL 6259536, at *6 (N.D.Cal. Nov. 30, 2018) (describing a party's reliance on the functional equivalent test as "misguided" where the client's attorneys, and not the client, hired the PR firm). The Board has not cited a case, nor did the Court locate a case, where a PR firm hired by the client's outside law firm was found to be a functional equivalent of the client's employee. Instead, cases relied on by the Board in support of its functional equivalent argument involve the client itself engaging the third-party consultant. *See, e.g.*, *In re Bieter Co.*, 16 F.3d at 933 (plaintiff retained independent contractor for commercial advice); *Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F.Supp.3d 1198, 1200 (N.D.Cal. 2015) (defendant corporation hired public relations consultant); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (same).

Furthermore, the Board has failed to meet its burden to show that Res Publica or Levick satisfy the elements of the functional equivalent test. *See Exp.-Imp. Bank of the U.S.*, 232 F.R.D

9

at 113 (party asserting the privilege has the burden of showing that third party meets the functional equivalent test). In particular, courts applying the functional equivalent test apply a multi-factor analysis by assessing: (1) "whether the consultant had primary responsibility for a key corporate job, (2) whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation, and (3) whether the consultant is likely to possess information possessed by no one else at the company." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. at 518, *quoting LG Elecs.*, 661 F.Supp.2d at 963; *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005).

The Board does not explicitly assess these factors. Instead, citing a few e-mail communications that have been produced, it states generally that Res Publica and Levick "regularly consulted with College counsel on their work," "served as the College's representative to third-parties" (including the *Tribune* and *Daily Herald*), and "made decisions on the College's behalf." (Dckt. #450 at 19.) The Board also states – without evidentiary support – that "the sheer number of documents on which Res Publica and Levick are involved . . . shows the depth of their integration into the College's hierarchy." (Dckt. #450 at 19.) Such vague claims are insufficient to show that Res Publica and Levick were so heavily intertwined with the College's operations so as to meet the multi-factor test and establish that they are functional equivalents to College employees. *See, e.g., In re New York Renu with Moistureloc Prod. Liab. Litig.*, No. CA 2:06-MN-77777-DCN, 2008 WL 2338552, at *8-9 (D.S.C. May 8, 2008) (distinguishing *In re Copper Market*).

10

In sum:  even assuming *arguendo* that the Seventh Circuit would adopt the functional equivalent test – which is far from clear – the factors considered under the test establish that Res Publica and Levick do not qualify as the functional equivalents of College employees.  *See, e.g., LG Elecs.,* 661 F.Supp.2d at 965.

### 4. The Board Has Not Shown That The Involvement Of Res Publica And Levick Was Necessary To Enable The Board's Counsel To Render Legal Services.

As explained above in Section II.B, the Board must show that the involvement of Res Publica and Levick was necessary to assist the Board's attorneys in rendering legal services and advice to avoid waiver.  The "necessity element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications."  *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013) (internal quotations and citations omitted).  Given the record before the Court, the Board has failed to meet this demanding standard.

Board documents reveal that Res Publica was hired in March 2015 by the Board's then outside counsel Franczek Radelet.  *See* March 19, 2015 Board Packet, at p. 180-85, *available at* https://www.cod.edu/about/board_of_trustees/pdf-docs/packets/2015mar19packet.pdf (last visited Sept. 17, 2021).  The Board documents approving the hire include the following statement:

> Recent developments have brought about increased media and public interest on various topics which are related to and/or affect the College's legal matters.  The services of Res Publica Group will assist the College and its counsel in communicating with the public and media in order to provide facts and minimize the dissemination of misinformation.

(*Id*. at 180.)  A letter from Res Publica to Franczek Radelet confirming the agreement between the parties further states that "[Res Publica] will provide your client, the Board of Trustees of the

College of DuPage, with communications counsel including message strategy and media relations." (*Id.* at 182.)

As for Levick, it was hired in May 2015 by the Board's new outside counsel Rathje Woodward. *See* May 21, 2015 Board Packet, at p. 140, *available at* https://www.cod.edu/about/board_of_trustees/pdf-docs/packets/2015may21packet.pdf (last visited Sept. 17, 2021). However, Board documents approving the hire explain that the College actually "engaged the services" of Levick back in 2014 and "intends to continue working with Levick during the work of the COD Transition Team and various external investigations." *Id.* Accordingly, the Board authorized Rathje Woodward to engage Levick "for the purpose of providing public relations services." *Id.* In its brief, the Board elaborates further that its outside counsel hired Res Publica and Levick to assist in the "message conveyed in the media, correcting any misstatements, and in being careful on what it did (or did not) disclose to the media." (Dckt. #450 at 16.)

In sum: the record shows that Res Publica and Levick were retained – albeit by counsel – to perform general public relations work for counsel and the College, including conveying appropriate and accurate information to the public at large during the College's period of admitted turmoil, legal and otherwise.

Courts have consistently held that this type of general public relations work, even when related to ongoing litigation, falls outside the scope of the narrowly construed attorney-client privilege. *See e.g., Egiazaryan*, 290 F.R.D. at 431 ("to the extent [the PR firm] was performing public relations functions, its participation in attorney-client communications resulted in a waiver—even if those functions were related to the various litigations in which [plaintiff] was embroiled."); *LifeVantage Corp. v. Domingo,* No. 2:13-CV-01037-DB-PMW, 2015 WL

5714426, at *2 (D.Utah Sept. 29, 2015) ("Courts have widely rejected claims of attorney-client privilege or work-product protection over communications with public relations firms."); *DRFP, LLC v. Republica Bolivariana de Venezuela,* No. 2:04-CV-793, 2015 WL 6122988, at *2 (S.D.Ohio Oct. 19, 2015) ("Venezuela has consistently maintained that disclosure of otherwise privileged documents to a public relations firm is a waiver of the privilege. That is generally true."); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (holding that disclosure of otherwise privileged communications to a public relations firm providing "ordinary public relations advice" constituted a waiver).

Furthermore, the Board has put forth little, if any, effort to meet its burden to show that the involvement of Res Publica and Levick was "necessary" to either enable the Board's counsel to render legal advice to the Board or to otherwise serve some "specialized purpose" in the litigation beyond their general public relations work to protect the College's image. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 315 CV 07658MASLHG, 2021 WL 3140050, at *14 (D.N.J. July 22, 2021) (finding waiver where consultant's services "consisted of general public relations assistance, the primary purpose of which was to present a favorable public image of Valeant, not to assist its attorneys in litigation."); *In re Signet Jewelers Ltd. Sec. Litig.,* 332 F.R.D. 131, 135-136 (S.D.N.Y. 2019), *aff'd,* No. 16CIV6728CMSDA, 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019) (finding waiver where the PR firms "were not called upon to perform a specific litigation task that the attorneys needed to accomplish in order to advance their litigation goals…[but] were involved in public relations activities aimed at burnishing Signet's image."); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York,* 171 F. Supp. 3d 136, 146–47 (S.D.N.Y. 2016) (party asserting privilege did not show that counsel needed public relations consultant "for any purpose other than communicating with the general public at large").

Even if the Court were to presume that Res Publica and Levick were actively contributing legal recommendations and participating in the development of legal strategy – a claim the Board does not expressly make – this too would be insufficient to show that they were "necessary" to enable counsel to provide legal advice.[6]  Indeed, the fact that Res Publica and Levick may have been "inserted into the legal decision making process does nothing to explain" why their involvement was necessary to the Board's obtaining legal advice from its counsel.  *Egiazaryan*, 290 F.R.D. at 431; *see also Woodard v. Victory Recs., Inc.,* No. 11 CV 7594, 2013 WL 5951768, at *7 (N.D.Ill. Nov. 7, 2013) (finding waiver over communications involving third-party consultant where there was no evidence demonstrating the consultant provided counsel "with expertise necessary to assist counsel in the rendering legal advice.").

Moreover, while the Court does not doubt that the public relations services provided by Res Publica and Levick were useful to the attorneys and the Board during the tumultuous time in question, this too is insufficient to avoid a waiver of privilege over communications disclosed to third parties not necessary to facilitate legal advice.  *See, e.g., In re New York Renu*, 2008 WL 2338552, at *7 ("it is not enough that the services are beneficial to the client in some way unrelated to the legal services of the lawyer"); *Calvin Klein,* 198 F.R.D. at 54-55 ("the possibility that communications between [the PR firm] and [the law firm] may help the latter to formulate legal advice is not in itself sufficient to implicate the privilege" and the "possibility" that the PR firm may "have been helpful" to the law firm "in formulating legal strategy is neither here nor there"); *see also Rao v. Bd. of Trustees of the Univ. of Illinois*, No. 14-CV-0066, 2016 WL

---

[6] The Board also points out that Randall Samborn of Levick – who is involved in a large number of the communications at issue – "is a lawyer by training with extensive prior experience at the Department of Justice who uses that background in all of his engagements – particularly like in cases like this where law enforcement investigations have begun."  (Dckt. #450 at 17.)  The Board does not, however, contend that Samborn was acting in his capacity as an attorney when working with the Board or its counsel.

6124436, at *4 (N.D.Ill. Oct. 20, 2016) ("The Court accepts that Ms. Jasti was important to the litigation, but that alone is not enough to preserve the privilege.").  At the end of the day, "a media campaign is not a legal strategy," and although some attorneys "may feel it is desirable at times to conduct a media campaign . . . that decision does not transform their coordination of a campaign into legal advice."  *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.,* No. 02 CIV.7955 DLC, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003); *Egiazaryan,* 290 F.R.D. at 431 (same).

Lastly, the Court distinguishes this case from *In re Grand Jury Subpoenas*, 265 F.Supp.2d 321, 331 (S.D.N.Y. 2003), on which the Board heavily relies for the proposition that the attorney-client privilege extends to "confidential communications . . . between lawyers and public relations consultants . . . hired by the lawyers to assist them in dealing with the media in cases . . . that are made for the purpose of giving or receiving advice . . . directed at handling the client's legal problems."

As aptly explained by another court, *In Re Grand Jury Subpoenas:*

involved a high profile target of a criminal investigation.  The target's attorney determined that a public relations firm should be engaged to conduct a media campaign in an effort to paint the target in a favorable light so that the prosecutors might feel less pressure to indict.  The court found that the engagement of the public relation firm was necessary for the lawyers to perform some of their most fundamental client functions— such as (a) advising the client of the legal risks of speaking publicly and of the likely legal impact of possible alternative expressions, (b) seeking to avoid or narrow charges brought against the client, and (c) zealously seeking acquittal or vindication.  In other words, the public relations function being performed — characterized as a lawyer's public advocacy on behalf of the client, — was necessary to achieve a circumscribed litigation goal: specifically, influencing the decision whether or not to indict.  The court limited its holding to situations where a public relations consultant was hired by the lawyers to assist them in dealing with the media in cases such as this, and where the communications are made for the purpose of giving or receiving advice directed at handling the client's legal problems.

*Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 91–92 (S.D.N.Y. 2019) (internal citation and quotations to *In Re Grand Jury Subpoenas,* 265 F.Supp.2d 321, omitted).  Courts

have repeatedly described this ruling as "very narrow," *In re Chevron Corp.*, 749 F.Supp.2d 170, 184 n.64 (S.D.N.Y. 2010), and "fundamentally restricted," *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *10–11; *see also In re Signet Jewelers Ltd. Sec. Litig.,* 332 F.R.D. at 135 n.3 (collecting cases describing the "narrow" ruling of *In Re Grand Jury Subpoenas*).

Given the roles of Res Publica and Levick as described by the Board (*see* Section II.B.4, above), they simply do not fit within this narrow exception. Contrary to the public relations consultants in *In Re Grand Jury Subpoenas* – who were hired to "achieve a circumscribed litigation goal," *Universal Standard Inc.*, 331 F.R.D. at 92 – Res Publica and Levick were hired months before this litigation began to perform general public relations work. *See Egiazaryan,* 290 F.R.D. at 432 (retention of PR firm prior to litigation undercuts privilege claim). Thus, notwithstanding the miscellaneous legal challenges and ongoing investigations swirling around the College at the time Res Publica and Levick were hired, this Court declines to apply the narrow and non-precedential holding of *In Re Grand Jury Subpoenas* to extend the umbrella of the Board's attorney-client privilege over the communications involving the PR firms. *See Universal Standard Inc.* 331 F.R.D. at 91–92 (collecting cases distinguishing *In Re Grand Jury Subpoenas*).

For these reasons, the Court finds that the Board has waived its attorney-client privilege over the communications that include individuals from Res Publica and Levick. The Board shall produce those communications (reflected in Dckt. #428), and any attachments thereto, by October 5, 2021.

## C. The Board's Communications With Third-Party Auditor Crowe Horwarth Are Protected Work Product.

Breuder also takes issue with the Board's redactions in a few communications between the Board and individuals from the Board's independent auditor, Crowe Horwath. (Dckt. #428

16

at 2.)  Breuder again argues that the Board has waived its attorney-client privilege over those redactions by disclosing the information to third party Crowe Horwath.  The Board responds, providing further description of the communications at issue, which relate to the Board's Comprehensive Annual Financial Report for fiscal year 2015.  According to the Board,

> In October 2015, the College prepared a presentation related to its 2015 report.  In it, the College discussed changes that it anticipated making to the report, one of which was recommended by the College's attorneys.  This change was subsequently disclosed to Crowe.

(*See* Dckt. #420 at 20.)  The Board has asserted both the attorney-client privilege *and* work product protection over these communications "because they relate to Breuder's termination and lawsuit." [7]  (*Id.*); *see also,* Fed.R.Civ.P (26)(b)(3) (codifying the work product privilege to protect "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.").  On the current record, the Court will uphold the Board's work product designations.

As the Board itself concedes, disclosure of privileged information to an independent auditor typically results in a waiver of the attorney-client privilege.  *See United States v. S. Chicago Bank*, No. 97 CR 849-1, 1998 WL 774001, at *3 (N.D.Ill. Oct. 30, 1998) ("[A]uditors are not generally part of the circle of persons, including secretaries and interpreters, for example, with whom confidential information may be shared without destroying the privilege.").  However, even assuming that the Board waived its attorney-client privilege through its disclosure to Crowe Horwath, this disclosure does not waive the Board's work-product privilege unless the disclosure was made "in a manner which substantially increases the opportunity for

---

[7] The Board's assertion of work product protection comes in a letter to plaintiff's counsel following the parties' meet and confer efforts in August 2020.  (Dckt. #420-7 at 16.)  To the extent that the Board has not yet formally amended its privilege log to reflect work product designations over the communications with Crowe Horwath, it should promptly do so.

17

potential adversaries to obtain the information." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 183 (N.D.Ill. 2006), *quoting Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D.Ill. 2003). Where, as here, Breuder has not specifically argued that the Board's disclosure to Crowe Horwath was made in such a manner, or otherwise objected to the Board's work product designations, the Court will permit those designations to stand. Breuder's motion is denied with respect to the Crowe Horwath communications.

### D. The Court Is Unable To Make Its Privilege Determination Regarding The Majority Of The Remaining Communications Without Reviewing The Documents *In Camera*.

Breuder also challenges hundreds of communications (in four different categories) that he contends contain non-privileged business-related advice, as opposed to legal advice, and a handful of communications designated as work product. The categories of purportedly non-privileged communications are: (1) planning and preparing for board meetings and developing board policies (Dckt. #424); (2) personnel matters (Dckt. #425); (3) public relations and political strategy[8] (Dckt. #426); and "miscellaneous" non-privileged matters (Dckt. #427). In response, the Board objects to Breuder's "categories" or "groupings" of objectionable communications, arguing that "privilege assertions are to be made (and evaluated) on a document-by-document basis, not on a category-by-category basis." (Dckt. #450 at 5.) While the Board is indeed correct in this regard, its attempt to transfer the document-by-document burden to Breuder is misplaced. Ultimately, it is the Board's burden – and not Breuder's – to establish the applicability of the attorney-client privilege on a document-by-document basis. *Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D.Ill. 2020);

---

[8] Notably, many of the communications in this category involve individuals from Res Publica and Levick and thus – regardless of their content – must be produced under the Court's ruling above, *supra* at Section II.B.

*Lawless*, 709 F.2d at 487.  As such, the Board's request to deny the motion in its entirety for Breuder's organizational approach – which at a minimum streamlined the issues for the Court – is denied.

Turning to the privileged nature of the communications, as both parties agree, the attorney-client privilege extends only to communications "in which the attorney is acting as a legal advisor;" business and financial advice, or other non-legal matters "are not protected." *RBS Citizens*, 291 F.R.D. at 217 (citing *Burden–Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003)); *In re Sulfuric Acid Antitrust Litig.,* 235 F.R.D. 407, 417 (N.D.Ill. 2006), supplemented, 432 F.Supp.2d 794 (N.D.Ill. 2006) ("The attorney-client privilege, itself, excludes from its ambit even confidential communications with a lawyer about business or other non-legal matters."); *Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D.Ill. 2005) ("Just as documents prepared for a business purpose are not privileged… documents concerning advice on political, strategic or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege.") (internal quotations and citations omitted).  Indeed, "simply copying a lawyer on an otherwise nonprivileged communication will not transform the non-privileged document into a privileged one." *McCullough v. Fraternal Ord. of Police, Chicago Lodge 7*, 304 F.R.D. 232, 237 (N.D.Ill. 2014).  Furthermore, "[w]hen an attorney provides both legal and non-legal services to a client, the legal aspect must predominate in the communication under review in order for it to be protected by the attorney-client privilege." *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-CV-00864, 2020 WL 7866172, at *2 (N.D.Ill. Mar. 4, 2020) (internal quotation marks omitted).

As Courts in this District have recognized, the distinction between what constitutes business advice and legal advice "is often not an easy one to make" and, indeed, "can be quite

difficult." *BankDirect*, 326 F.R.D. at 181. "But that difficulty is not, of course, an insuperable bar to decision." *Id*. At the end of the day, "the touchstone of the inquiry is whether the purpose of the communication is 'generated for the purpose of obtaining or providing legal assistance.'" *Id*., *quoting In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (noting that "legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.").

Based on the Court's review of the briefs and privilege log entries at issue, the Court questions whether the following entries include predominantly legal advice.

**Entry Nos. 512, 513, 758, 759, 766-69 and 885 (Dckt. #425):** As Breuder argues (Dckt. #420 at 8, n.10), these entries appear to be e-mails transmitting to the Board correspondence between it and plaintiff's counsel. The Court agrees that to the extent any of these communications merely transmit updates and correspondence from opposing counsel, they are not privileged and shall be produced. *See Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F.Supp.3d 889, 894 (N.D.Ill. 2018) (noting that "progress or status reports, investigation summaries, and general updates are generally not privileged merely because they were written by a lawyer to the client.").

**Entry No. 812 (Dckt. #426):** As Breuder points out, (Dckt. #420 at 10, n.14), this entry appears to be the final version of a press release prepared for distribution. If that is the case, this document is not privileged and must be produced. *Lauth Grp., Inc. v. Grasso*, No. 1:07-CV-0972-SEB-TAB, 2008 WL 926631, at *3 (S.D.Ind. Apr. 4, 2008) ("communications which are intended to be public are not privileged.").

The Court expects the Board will re-review the above entries given the Court's comments and shall de-designate entries or portions thereof where appropriate by October 5, 2021.

Regrettably, as for the hundreds of remaining entries at issue, the Court finds, within its discretion, that it cannot make a proper determination without conducting an *in camera* review. *Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *3 (N.D.Ill. July 14, 2020) ("[U]ltimately the question of whether to engage in an *in camera* review lies within the Court's discretion."). As the "Seventh Circuit has warned . . . privilege determinations ought not to be made without the judge first reviewing the questioned documents *in camera.*" *Slaven v. Great Am. Ins. Co.*, 83 F.Supp.3d 789, 801 (N.D.Ill. 2015) (citing cases). "Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies." *Id.*, quoting *American Nat. Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc. of United States*, 406 F.3d 867, 880 n.7 (7th Cir. 2005).

Here, given the nature of this case, the parties involved in the communications, the documents at issue, and the Board's log descriptions – which are arguably minimal, though not deficient – an *in camera* review of the documents is necessary for the Court to make a proper privilege determination. *See Slaven,* 83 F.Supp.3d at 801 ("[T]he responsibility of determining whether the privilege exists rests upon the judge and not upon the lawyer whose client claims the privilege."). The Court reaches the same conclusion regarding the need for *in camera* review with respect to the smaller number of documents Breuder contends have been improperly withheld as work product (Dckt. #429). *See United States v. Bd. of Educ. of City of Chicago*, 610 F.Supp. 695, 701 (N.D.Ill. 1985) (requiring *in camera* review to determine if documents were properly withheld under the attorney-client and/or work product privileges).

21

However, the Court will not dive right into an *in camera* review of all of the privilege log entries remaining in dispute and it will deny plaintiff's motion to compel the production of those documents without prejudice. Instead, after the Board produces the documents ordered by this decision and defendants produce the documents ordered by this Court's September 9th ruling (Dckt. #483), plaintiff's counsel should give fresh consideration to which of the remaining documents at issue (if any) that plaintiff will continue to seek in view of the likely importance of the documents and the proportionality considerations of Rule 26(b)(1). As the Board has pointed out, the College has already produced nearly 870,000 pages of documents. (Dckt. #450 at 3.) Although the stakes in this case are high, there may come a time when the likely marginal utility of the additional information sought in discovery will be outweighed by the other relevant considerations under Rule 26(b)(1). *See Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 365 F.Supp.3d 916, 924-25 (N.D.Ill. 2019). Plaintiff's counsel must, of course, meet and confer with the Board's counsel to try to reach agreement prior to filing a renewed motion to compel with respect to any additional documents that are at issue.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel defendant Board of Trustees to produce withheld documents (Dckt. #420) is granted in part and denied without prejudice in part. The Board should produce all documents ordered in this Opinion by October 5, 2021.

**ENTERED: September 21, 2021**

**Jeffrey I. Cummings**
**United States Magistrate Judge**