IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BREUDER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 CV 9323 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| BOARD OF TRUSTEES OF | ) | Magistrate Judge Jeffrey I. Cummings |
| COMMUNITY COLLEGE DISTRICT | ) | |
| NO. 502, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff Robert Breuder's cross-motion to compel the production of an August 19, 2015 memorandum prepared by the law firm Schuyler, Roche & Crisham P.C. for the defendant Board of Trustees of Community College District No. 502. (Dckt. #403.) For the reasons set forth below, Breuder's motion is denied.

**I.     Relevant Background**

Plaintiff Robert Breuder, who served as the President of the College of DuPage (the "College") from 2009 until his termination in October 2015, brings this lawsuit against defendants, the Board of Trustees of Community College District No. 502.,[1] and former individual Board members, Kathy Hamilton, Deanne Mazzochi, Frank Napolitano, and Charles Bernstein (the "Individual Trustees"), alleging claims concerning §1983 due process violations, breach of contract, defamation, and civil conspiracy. Certain defendants have, in turn, filed

---

[1] Generally speaking, the Court refers to defendant as "the Board," but when describing individuals, events, and facts related to the College as an entity might refer to "the College." At times, the two are used interchangeably.

1

counterclaims against Breuder alleging breach of contract, breach of fiduciary duty, and conversion.

In May 2019, the Board served a third-party subpoena on Kory Atkinson. Atkinson is a former Board trustee who, according to the Board, holds himself out as an unpaid attorney for Breuder, though it is undisputed that he is not an attorney of record for Breuder in this matter. Through its subpoena, the Board sought a wide range of documents and, after some motion practice, Atkinson made a rolling production of documents in late 2019 and early 2020.

The Board reviewed Atkinson's document production and it contends that certain documents contained the Board's privileged and/or confidential information, including the August 19, 2015 memorandum prepared for the Board by its outside counsel, the law firm Schuyler, Roche & Crisham, P.C. (the "Memorandum") (KAA026980-85). By the Board's description, the Memorandum, which has also been submitted to the Court for *in camera* review, contains a "detailed legal analysis of Breuder's employment agreement." (Dckt. #394 at 4.) The parties agree that the Memorandum was sent to Atkinson by email on September 5, 2015 from then Board Trustee Dianne McGuire.[2] (Dckt. #401-1 – Atkinson Declaration.)

Furthermore, it is undisputed that about a month after the Memorandum was prepared, the Board approved a public resolution that acknowledged and declared that "Dr. Breuder's Employment Contract, and all amendments and Addenda to the Employment Contract (including any purported extensions thereto) are void *ab initio*…" (Dckt. #403-1.) The stated reasoning for that resolution was as follows:

---

[2] According to the Complaint, Trustee McGuire voted against both the appointment of the Individual Trustees to officer positions and the resolution to place Breuder on administrative leave in April 2015. (Dckt. #1 at 20.) In August 2015, McGuire warned that the actions the Individual Trustees were taking to proceed with Breuder's termination lacked a valid and legal basis and she voted against authorizing the termination procedures. (*Id.*, at 26-27.) Later, on October 20, 2015, McGuire was the only trustee to vote against the resolution to terminate Breuder's employment. (*Id.*, at 31.)

> Dr. Breuder's Employment Contract, and all amendments and Addenda (including any extensions) exceeded the Board's authority, and violated Illinois law. Because its members are elected on a staggered basis, each iteration of the Board has a "term" of only two years. No Board may bind future Boards by entering into employment agreements with individuals in positions such as Dr. Breuder's that extend beyond that Board's term. In the absence of a valid employment contract extending until 2019, the Board had no basis and no power to award the severance package to Dr. Breuder. *See Millikan v. County of Edgar*, 142 Ill. 528, 32 N.E. 493 (Ill. 1892); *Cannizzo v. Berwyn Twp. 708 Cmty. Mental Health Bd.*, 318 Ill. App. 3d 478, 741 N.E.2d 1067, 1071 (1st Dist. 2000); *Trombetta v. Bd. of Education, Proviso Twp. High School Dist. 209*, No. 02-C-5895, 2003 WL 1193337 (N.D. Ill. Mar. 13, 2003).

(*Id*. at 3.) The Board's resolution was included in the publicly available Board meeting packet, *available* at https://www.cod.edu/about/board_of_trustees/pdf-docs/packets/2015sept17packet.pdf, and the Board's counsel provided a brief explanation for the resolution at the Board meeting, *available at* https://www.cod.edu/multimedia/bot/archive/2015_09_17.html, at 1:27:21 - 1:29:50.

In December 2020, the Board filed a motion to claw back the purportedly privileged documents in Atkinson's possession, including the Memorandum.[3] (Dckt. #394.) In response, Breuder filed the instant motion to compel the Board to produce the Memorandum. Breuder does not dispute that the Memorandum is presumptively privileged under the attorney-client privilege. However, according to Breuder, the Board has waived that privilege because: (1) the Board voluntarily disclosed the legal advice provided in the Memorandum through the resolution and at the public board meeting; (2) the Individual Trustees asserted an advice-of-counsel defense related to the advice provided in the Memorandum, which they have not withdrawn; and (3) the Board has failed to show that the disclosure of the Memorandum to Atkinson was

---

[3] On August 13, 2021, this Court entered an order granting in part and denying in part the Board's motion to claw back documents from Atkinson. (Dckt. #479.) The Court granted the motion to the extent that the Court agreed that the documents in question were privileged, but otherwise denied the motion for claw back. However, as the Court explained, that order did not address the arguments related to the Schuyler Memorandum. (Dckt. #479 at 2, n.1.)

3

inadvertent, and even if it was, that waiver has not occurred. Accordingly, Breuder seeks an order compelling the Board to produce the Memorandum and other withheld materials pertaining to the same subject matter. The Court addresses each argument in turn below.

## II.     The Attorney-Client Privilege and Waiver

The parties have generally agreed throughout their various discovery disputes that federal law applies to the privilege issues before the Court. *See, e.g., Andersen v. City of Chicago*, No. 16 C 1963, 2019 WL 423144, at *2 (N.D.Ill. Feb. 4, 2019) ("Federal common law governs any privilege determination in this federal question suit . . . even though the complaint contains supplemental state law claims."). It is also agreed that the attorney-client privilege applies: (1) where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at [the client's] instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be waived. *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). The Board, as the party asserting the attorney-client privilege, has the burden of establishing all essential elements of the privilege and that it has not been waived. *Lawless*, 709 F.2d at 487; *Square D Co. v. E.I. Elecs., Inc.*, 264 F.R.D. 385, 390 (N.D.Ill. 2009).

As discussed in more detail below, the attorney-client privilege can be waived either explicitly or by implication. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). "Express waiver occurs where 'information that would otherwise be privileged is not kept confidential.'" *Cage v. Harper*, No. 17-CV-7621, 2019 WL 6911967, at *1 (N.D.Ill. Dec. 19, 2019), *quoting Patrick v. City of Chicago*, 154 F.Supp.3d 705, 711 (N.D.Ill. 2015). Implied waiver occurs when a client asserts claims or defenses that put his or her attorney's advice "at

4

issue" in the litigation. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995); *Beneficial Franchise Co., Inc. v. Bank One, N.*A., 205 F.R.D. 212, 216 (N.D.Ill. 2001).

Here, where the parties do not dispute that the Memorandum is privileged, the Court need only determine whether the privilege has been waived, either explicitly or implicitly.

### A. The Defendants Have Not Implicitly Waived The Attorney-Client Privilege Because They Have Not Placed The Memorandum "At Issue" In This Litigation.

According to Breuder, privilege over the Memorandum has been waived because the individual defendants have relied on an advice-of-counsel defense in the course of this litigation – specifically in the appellate proceedings before the Seventh Circuit – and have not since withdrawn that defense. In Breuder's view, by asserting the advice-of-counsel defense before the Seventh Circuit, the individual defendants placed the Memorandum (and all related communications) at issue, thereby waiving the attorney-client privilege. Respectfully, the Court disagrees.

As mentioned above, implied waiver occurs when a client asserts claims or defenses that put his or her attorney's advice "at issue" in the litigation. *Garcia*, 58 F.3d at 1175. Courts, however, have cautioned that the "at issue" waiver doctrine is limited and "should not be used to eviscerate the attorney-client privilege." *Silverman v. Motorola, Inc.*, 07 CV 4507, 2010 WL 2697599 at *4 (N.D.Ill. July 27, 2010). Accordingly, "[m]erely asserting a claim or defense to which attorney-client communications are relevant, without more, does not constitute a waiver of attorney-client privilege. [Rather,] [t]he privileged party must affirmatively put at issue the specific communication to which the privilege attaches before the privilege will be deemed waived." *Cage*, 2019 WL 6911967, at *1 (citing *United States v. Capital Tax Corp.*, 04 CV 4138, 2011 WL 1399258 (N.D.Ill. 2011)); *see also Motorola Sols., Inc. v. Hytera Commc'ns*

5

*Corp.*, No. 17 C 1973, 2018 WL 1804350, at *5 (N.D.Ill. Apr. 17, 2018) ("A party impliedly waives the privilege only when he or she has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue.") (internal quotations and citations omitted); *Beneficial Franchise Co.*, 205 F.R.D. at 216; *see also Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994).[4]

    Here, there can be no dispute that the holder of the privilege, the Board, has not placed the Memorandum "at issue" in this litigation. As the Board points out, the Board has not raised an advice-of-counsel defense in its answer, affirmative defenses, or during the motion to dismiss stage of this litigation before the District Court or the Seventh Circuit. More importantly, the Board has not otherwise relied on or disclosed the Memorandum in an attempt to prove any of its claims or defenses in this matter, *Beneficial Franchise*, 205 F.R.D. at 216, and it expressly disavows in its brief any intent to do so. Accordingly, the Board has not waived its attorney-client privilege over the Memorandum because it has not placed the legal advice in the Memorandum at issue. *See, e.g., Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *12 (N.D.Ill. Apr. 16, 2021) ("United is not attempting to put its attorney's advice at issue in this case."); *Cage*, 2019 WL 6911967, at *2 (finding no waiver where defendants did not rely "upon the advice of counsel or any communications with counsel . . ." and further

---

[4] In *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995), the Seventh Circuit cited the standard adopted by the Third Circuit in *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3d Cir. 1994). Accordingly, courts in this district have adopted the Third Circuit's approach to at issue waiver. *See Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *11 (N.D.Ill. Apr. 16, 2021) (collecting cases). "In *Rhone–Poulenc,* the Third Circuit specifically rejected the proposition that a party impliedly waives the privilege merely by asserting a defense that would make an attorney's advice relevant." *Beneficial Franchise*, 205 F.R.D. at 216. "Rather, the Third Circuit held that 'the advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication.'" *Id.*, *quoting Rhone-Poulenc Rorer*, 32 F.3d at 863.

"disavow[ed] any reliance upon advice of counsel . . . in its response brief."); *Motorola*, 2018 WL 1804350, at *6 (finding no waiver where "advice of counsel has not been placed in issue by Motorola; nor has it yet attempted to prove its claim or its defense by disclosing or describing an attorney-client communication") (internal quotations and citations omitted).

      As for the individual defendants, Breuder is correct that they attempted to assert an advice-of-counsel defense in the interlocutory proceedings before the Seventh Circuit when they argued that before acting to discharge Breuder, they received a legal opinion that Breuder's contract was void under *Millikin v. Edgar County*, 142 Ill. 528, 32 N.E. 493 (1892). But as the Seventh Circuit itself noted, the individual defendants did "not put a copy of this opinion into the record . . . so they cannot present an advice-of-counsel defense." *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 888 F.3d 266, 271 (7th Cir. 2018). As this Court later opined in connection with a separate discovery dispute, the Seventh Circuit's finding does not necessarily preclude the individual defendants from later asserting an advice-of-counsel defense. Instead, it meant only that "at that time in front of the Court of Appeals . . . the predicate for asserting the defense was not there." (Dckt. #403-3 at 21 – 7/18/19 Hr'g Tr.) This Court then applied the same rationale when it sustained defendants' objections to Breuder's requests for production for documents and communications regarding the College's retention of legal counsel. (Dckt. #226 at 8-12.)

      The record has not changed following the Seventh Circuit's decision and this Court's earlier discovery ruling. The individual defendants have not placed the Memorandum at issue or otherwise asserted an advice-of-counsel defense. As such, the individual defendants have not waived the attorney client privilege over the Memorandum by referencing an advice-of-counsel

7

defense in the Seventh Circuit proceedings.⁵ However, the Court again advises the individual defendants and the Board that "this ruling is subject to reconsideration if defendants intend to rely upon the advice of counsel as a justification for their decision to terminate plaintiff." (Dckt. #226 at 11); *see also Motorola*, 2018 WL 1804350, at *6 (noting that "the issue will have to be revisited" if Motorola later placed the attorney-client communications at issue). Should any of the defendants implicate the advice-of-counsel defense in their deposition testimony, the parties shall promptly notify the Court so that this issue can be revisited.⁶

### B.  The Board Did Not Explicitly Waive Its Privilege When It Disclosed Certain Legal Advice Through the Resolution At The Public Board Meeting.

Breuder also argues that the Board explicitly waived its privilege over the Memorandum when it voluntarily disclosed the legal advice set forth in the Memorandum through the public posting of its September 17, 2015 resolution finding Breuder's agreement void *ab initio* and further discussion of the issue at the Board meeting by the Board's counsel. Again, the Court disagrees.

Breuder is correct that "[g]enerally, a party that voluntarily discloses part of a conversation covered by the attorney-client privilege waives the privilege as to the portion disclosed and to all other communications relating to the same subject matter." *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012); *Graco Children's Prod., Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, No. 95 C 1303, 1995 WL 360590, at *7 (N.D.Ill. June 14,

---

⁵ Notably, even if the individual defendants affirmatively raised the advice-of-counsel defense for their finding that Breuder's agreement was void *ab initio*, any resulting waiver would likely not extend to the Memorandum, which includes a different legal analysis.

⁶ Defendants are also advised that "[a] party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel defense." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2015 WL 5123652, at *7 (N.D.Ill. Sept. 1, 2015), *quoting Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, L.P.*, 210 F.R.D. 673, 676–77 (D.Minn. 2002) (internal quotation marks and citations omitted).

8

1995) ("Any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the confidential nature of the attorney-client relationship and, thus, waives the privilege."); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D.Ill. 2020) ("It is clearly established black letter law that a party waives the attorney-client privilege when the otherwise privileged documents are disclosed to a third party.") (internal quotation and citation omitted); *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) ("Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option.").

Here, Breuder's assumption that the Memorandum includes the legal advice discussed in the Board's resolution and at the Board meeting is certainly a reasonable one. However, the Court's *in camera* review of the Memorandum has confirmed the Board's contention that the Schuyler Memorandum does not encompass the legal advice and analysis in the Board's resolution which concluded that Breuder's agreement was void *ab initio.* Accordingly, the Board's discussion of the legal basis for its void *ab initio* finding does not serve as a waiver over the separate legal analysis set forth in the Memorandum.[7]

### C. The Board Did Not Waive The Attorney-Client Privilege Over The Memorandum When Then Board Trustee Dianne McGuire Sent the Memorandum To Atkinson.

Breuder also argues that the Board waived its privilege when then Trustee McGuire voluntarily sent the Memorandum to third-party Atkinson on September 5, 2015. The Board responds that Trustee McGuire did not have the authority to unilaterally waive the Board's

---

[7] The Court distinguishes this case from *Chinnici v. Cent. Dupage Hosp. Ass'n*, 136 F.R.D. 464 (N.D.Ill. 1991), order clarified, No. 89 C 07752, 1991 WL 127606 (N.D.Ill. July 10, 1991), relied on by Breuder. There, the Court determined that when the defendants "disclosed the advice of [counsel] concerning the applicability of the condominium declaration to restrict the practice of chiropractic, they . . . waived the privilege as to all other communications *on that subject*." (emphasis added). Here, the legal advice set forth in the Memorandum does not relate to the basis for the Board's void *ab initio* finding.

9

privilege without the approval of the full Board, meaning her disclosure of the Memorandum to Atkinson was not voluntary in so far as the Board is concerned and thus did not waive the Board's privilege. The Court agrees with the Board's position on this point.

Corporate entities like the Board of Trustees "cannot speak directly to their lawyers; they are inanimate entities that can only act through their agents." *Diemer v. Fraternal Ord. of Police, Chicago Lodge 7*, 242 F.R.D. 452, 458 (N.D.Ill. 2007) (citing *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 348 (1985)). Nor can a corporate entity directly waive the attorney-client privilege. *Id*. Instead, "power to do that rests with the entity's management and must be exercised by its board . . . [n]otably board *members* as individuals do not have the power to waive the entity's privilege." (*Id*.) (emphasis in original); *see also Galli v. Pittsburg Unified Sch. Dist.*, No. C 09-3775 JSW JL, 2010 WL 4315768, at *4 (N.D.Cal. Oct. 26, 2010) ("The power to waive the privilege rests with the Board, and the actions of an individual Board member alone cannot waive the privilege.").

The Board asserts – without contradiction – that it has a practice of voting on issues of privilege. (Dckt. #440 at 9 (citing to a June 11, 2015 vote by the Board trustees to waive the attorney-client privilege over an investigative report that had been prepared by the Board's law firm).) That practice was not followed with respect to the privileged Memorandum because it is undisputed that Trustee McGuire did not seek approval of the full Board to disclose the document to Atkinson. Therefore, her unilateral and unauthorized action in sending the Memorandum to Atkinson does not constitute a waiver. *See Galli*, 2010 WL 4315768, at *4 (finding that an individual Board member's unilateral disclosure did not waive the privilege because he was acting without any authorization from the Board.); *see also Brown v. Unified Sch. Dist. No. 501*, No. 10-1096-JTM, 2011 WL 111693, at *4 (D.Kan. Jan. 13, 2011) ("The

10

'client' in this case is Unified School District 501 and plaintiff presents no controlling or persuasive authority that Ms. Johnson, an individual board member, has authority to waive the district's privilege.").

Moreover, given the chain of events surrounding the timing of McGuire's disclosure to Atkinson, it is not unlikely, as the Board suggests, that Trustee McGuire was acting "in her own interests rather than for the benefit" of the Board when she sent Atkinson the Memorandum. *See Stopka v. All. of Am. Insurers*, No. 95 C 7487, 1996 WL 204324, at *6 (N.D.Ill. Apr. 25, 1996). As pointed out above (*supra,* at n.2), by the time McGuire sent the Memorandum to Atkins on September 5, 2015, she had already expressed her objection to the will of the majority of the Board's trustees by voting against their decision to proceed with Breuder's termination. This too weighs against a finding of a voluntary waiver. *See Galli*, 2010 WL 4315768, *4 ("[Board members] must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interest of the [District] and not of themselves as individuals."), *quoting Weintraub*, 471 U.S. at 349. For all of these reasons, McGuire's action in sending the Memorandum to Atkinson did not waive the Board's privilege over the document.

Lastly, the Court need not address Breuder's argument that McGuire's disclosure to Atkinson requires an inadvertent disclosure analysis under *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387-88 (7th Cir. 2008).[8] As this Court previously indicated, (*see* Dckt. #479), this is not a case where the Board – the holder of the privilege – inadvertently disclosed documents to the opposing party either before or during litigation.

---

[8] In *Judson*, the Seventh Circuit explained that "if a document is found to be [privileged] and inadvertently produced, the court must . . . determine whether privilege was waived." 529 F.3d at 387-88. To do so, courts often consider the following factors: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Id*. at 388.

11

Instead, an individual Board member disclosed the Board's privileged document to Atkinson without Board approval. Atkinson, an officer of the Court, has represented that he has not shared those documents with anyone, including Breuder and, again, the Court has no reason to doubt his sworn declaration on this point. *See, e.g.*, *Fuery v. City of Chicago*, 900 F.3d 450, 454 (7th Cir. 2018) (recognizing "a trial judge's faith that she can rely upon the lawyers before her – officers of the court – to set forth a fair and accurate presentation of the facts and law"); *Briggs v. Marshall*, 93 F.3d 355, 359 (7th Cir. 1996) ("We take him at his word given that he is an officer of the court"). Having already determined that neither McGuire's disclosure to Atkinson nor the Board's resolution amount to a waiver of the privilege, the inadvertent disclosure analysis proposed by Breuder is not required on this factual record.

## CONCLUSION

For the foregoing reasons, Breuder's cross-motion to compel the production of the Schuyler Memorandum (Dckt. #403) is denied. The Board need not produce the Memorandum to Breuder at this time. As the Court previously ordered, (*see* Dckt. #479), although it lacks the authority to direct Atkinson (a non-party) to return or destroy the Memorandum, the Court expects Atkinson to retain the Memorandum in his possession without dissemination to anyone else, including to Breuder, subject to further order of Court.

**Dated: December 23, 2021**

_____
**Jeffrey I. Cummings
United States Magistrate Judge**

12