**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ROBERT L. BREUDER,          )
                                      )
       Plaintiff,         )
                                      )     No. 15-cv-09323
       v.                  )
                                      )     Judge Andrea R. Wood
BOARD OF TRUSTEES OF COMMUNITY  )
COLLEGE DISTRICT NO. 502, DUPAGE  )
COUNTY, ILLINOIS, et al.,      )
                                      )
       Defendants.      )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Robert L. Breuder served as President of the College of DuPage ("College") from January 1, 2009 until his termination on October 20, 2015. According to Breuder, he was wrongfully terminated as the College's President based on false charges of misconduct, leading him to bring a six-count complaint asserting claims against Defendant Board of Trustees of Community College District No. 502, DuPage County, Illinois ("Board") and four of its members. The parties are currently proceeding with discovery under the supervision of the Magistrate Judge. Now before the Court are two separate objections to the Magistrate Judge's discovery rulings. First, Defendant Kathy Hamilton objects to the Magistrate Judge's grant of her motion for a protective order. (Dkt. No. 458.) Second, the Board objects to the Magistrate Judge's order compelling it to disclose 25 documents over which the Board has asserted attorney-client privilege. (Dkt. No. 492.) For the reasons that follow, both objections are overruled.

## BACKGROUND

The parties have challenged two discovery rulings by the Magistrate Judge. First, Hamilton objects to the Magistrate Judge's March 31, 2021 ruling granting her a protective order

allowing her to withhold production of certain audio recordings, insofar as that ruling will subject her to an adverse inference jury instruction at trial. Second, the Board objects to the Magistrate Judge's September 9, 2021 order compelling it to produce 25 attorney-client communications for which a public relations and communications consultant was present. The Court addresses each in turn below.

### I. Magistrate Judge's March 31, 2021 Ruling Regarding Defendant Hamilton's Recordings

The first dispute concerns approximately 260 audio recordings made by Hamilton between January 2013 and November 2015. Many of those recordings capture Hamilton's conversations with individuals who were recorded without their knowledge or consent, including Hamilton's co-Defendants in this action. The recordings address a variety of topics, including Breuder and his performance as the College's President. According to Hamilton, she made the recordings because she struggles with dyslexia, but she does not elaborate further on the relationship between her dyslexia and the recordings.

When Breuder learned of the existence of the audio recordings, he served Hamilton with a request to produce all recordings and an interrogatory concerning them. All Defendants objected to Breuder's request for production of the recordings and they filed three separate motions before the Magistrate Judge requesting a protective order barring production. Defendants contended that because the recordings captured Hamilton's conversations with individuals who were recorded without their consent, production would violate Illinois's eavesdropping statute, 720 ILCS 5/14-1 *et seq.* Relevant here, the statute provides:

(a) A person commits eavesdropping when he or she knowingly and intentionally:

(1) Uses an eavesdropping device, in a surreptitious manner, for the purpose of overhearing, transmitting, or recording all or any part of any private conversation

to which he or she is not a party unless he or she does so with the consent of all of the parties to the private conversation;

. . .

(5) Uses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties.

720 ILCS 5/14-2(a). Under the statute, eavesdropping is a felony offense and also exposes an eavesdropper to civil liability. 720 ILCS 5/14-4; 720 ILCS 5/14-6.

The parties all agreed that Hamilton's recordings violated subsection (a)(1) of the statute but acknowledged that Hamilton could no longer be criminally charged because the applicable statute of limitations had run. Nonetheless, Hamilton argued that if she were to produce the recordings in connection with this litigation, she could be subject to criminal charges under subsection (a)(5) for using or disclosing information she obtained due to her violations of subsection (a)(1). Notably, the other Defendants declined to consent to the disclosure of recordings involving them. They also raised separate arguments based on Illinois's eavesdropping statute, not relevant here, in support of their motions for a protective order.

Ultimately, the Magistrate Judge granted Hamilton's motion for a protective order and denied the remaining Defendants' separate motions as moot. (Dkt. Nos. 456, 457.) The Magistrate Judge found that because Hamilton faced the possibility of prosecution for violating 720 ILCS 5/14-2(a)(5)'s prohibition against using or disclosing information obtained from a private conversation in violation of the eavesdropping statute, she was entitled to assert her Fifth Amendment privilege against self-incrimination with respect to the recordings. Consequently, he concluded that Hamilton's Fifth Amendment privilege provided good cause for the entry of a protective order. The Magistrate Judge went on to rule, however, that a jury may draw an adverse

inference against Hamilton regarding any recordings withheld on Fifth Amendment grounds, provided those recordings were not protected by some other privilege.

## II.     Magistrate Judge's September 9, 2021 Ruling Regarding the Board's Communications Involving Christopher Robling

The second dispute concerns the Magistrate Judge's ruling regarding the Board's communications with a public relations and communications consultant named Christopher Robling. In an affidavit submitted to the Magistrate Judge, Robling states that he began working for the College around April 2015. (Robling Aff. ¶ 6, Dkt. No. 371-3.) Yet the College's employment records show that Robling was not hired by the College until May 21, 2015, when he was hired to serve as an assistant to the interim President. Robling states that he was brought on at a time when the College was in crisis due to events touching upon government relations, media relations, alleged malfeasance, and legal issues. His role was to assist the Board and senior College leadership with strategic thinking about internal investigations, potential legal issues related to employment decisions made by the College, potential reforms, transition issues related to new executive and Board leadership at the College, relationships with the Illinois legislature, and media communications.

In many instances, Robling participated in discussions involving the College's counsel. Breuder filed a motion to compel the Board to produce numerous communications involving Robling that it had withheld as protected by the attorney-client privilege. While Breuder contended that Robling's presence in those communications waived the attorney-client privilege, the Board asserted that there was no waiver because Robling was a College employee. In his ruling, the Magistrate Judge found that the Board placed "all of its eggs in the 'Robling was a College employee' basket" and did "not even attempt to show that Robling [fell] within the exception to the third-party waiver rule" for communications that predated Robling's official

4

hiring as a College employee on May 21, 2015. (Sept. 9, 2021 Mem. Op. and Order at 15, Dkt. No. 483.) For that reason, the Magistrate Judge granted Breuder's motion to compel with respect to 25 communications from before May 21, 2015. As to communications postdating Robling's hiring, the Magistrate Judge found that the record was insufficient for him to determine if the Board's attorney-client privilege extended to Robling in the capacity in which he actually worked for the College. Thus, the Magistrate Judge denied the motion to compel as to those communications, without prejudice to renewal once the Board had supplemented the record.

## DISCUSSION

Federal Rule of Civil Procedure 72 governs this Court's review of rulings by magistrate judges. For non-dispositive matters such as the discovery orders here, a district court may only reverse a magistrate judge's order when the order is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Under Rule 72(a)'s clear error standard, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). That the district court would have decided the case differently provides an insufficient reason to overturn the magistrate judge's decision. *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006). Rather, under the clear error standard, reversal is appropriate only when the magistrate judge's decision strikes the district court "as wrong with the force of a 5 week old, unrefrigerated, dead fish." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001).

### I.    Hamilton's Recordings

Despite the Magistrate Judge granting Hamilton's request for a protective order shielding her from producing the audio recordings—the exact relief for which she asked—Hamilton now objects to his ruling. Specifically, Hamilton takes issue with the fact that the Magistrate Judge did

not simply prohibit disclosure of the recordings but also ruled that a jury could draw an adverse inference from Hamilton's refusal to disclose any audio recording that is not otherwise privileged.

Under Federal Rule of Civil Procedure 26(c), a court may enter a protective order forbidding disclosure or discovery "for good cause." In seeking a protective order from the Magistrate Judge, Hamilton asserted her Fifth Amendment right against self-incrimination to resist disclosure of the audio recordings. She contended that because disclosing the recordings would cause her to violate 720 ILCS 5/14-2(a)(5) and potentially expose her to a prison sentence, she was entitled to withhold the recordings on Fifth Amendment grounds. The Magistrate Judge agreed that Hamilton faced the possibility of prosecution for violating the Illinois eavesdropping statute and concluded that her assertion of the Fifth Amendment provided good cause for entry of a protective order. But the Magistrate Judge's award of a protective order came with a cost that Hamilton apparently did not anticipate—the allowance of an adverse inference.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Not only does the Amendment "protect[] the individual against being involuntarily called as a witness against himself in a criminal prosecution but [it] also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Unlike in criminal cases, where "it is constitutional error . . . to instruct a jury . . . that it may draw an inference of guilt from a defendant's failure to testify about facts relevant to his case," there is no such prohibition against drawing an adverse inference against a party claiming the Fifth Amendment privilege in a civil case. *Baxter v. Palmigiano*, 425 U.S. 308, 317–18 (1976). The Seventh Circuit has "interpreted *Baxter* to mean that the negative inference against a witness who invokes the

Fifth Amendment in a civil case is permissive, not required." *Evans v. City of Chicago*, 513 F.3d 735, 741 (7th Cir. 2008). Thus, it is well established that Hamilton's invocation of the Fifth Amendment may subject her to an adverse inference.

Nonetheless, Hamilton objects to the Magistrate Judge's allowance of such an adverse inference on the grounds that she never asserted her Fifth Amendment rights before him. But that claim is belied by the express language of the briefs she submitted to the Magistrate Judge. In her opening brief before the Magistrate Judge, Hamilton begins by stating that her "motion only addresses the Fifth Amendment issues arising from the recordings" and later states that "she has a constitutional right to assert the Fifth Amendment regarding production of the recordings." (Def. Hamilton's Mot. and Mem. for Entry of a Protective Order at 1, 4, Dkt. 311.) Again, in her reply brief, Hamilton confirms that her motion for a protective order "is based upon the applicable Fifth Amendment privilege against self-incrimination." (Def. Hamilton's Reply in Supp. of Mot. for Protective Order at 1, Dkt. No. 333.) Elsewhere she claims that "[b]y producing the recordings [she] commits a felony offense and therefore has the right to the protections granted by the Fifth Amendment of the United States Constitution." (*Id.* at 2.)

Breuder claims that Hamilton is engaging in gamesmanship and this Court agrees— Hamilton unquestionably invoked her Fifth Amendment privilege with respect to the recordings. The Magistrate Judge agreed that the Fifth Amendment provided good cause for entry of a protective order, although he went on to add the consequence of an adverse inference instruction. Finding that cost too much to bear, Hamilton now claims that she never asserted her Fifth Amendment privilege and asks this Court to grant her an unconditional right to withhold the recordings. Interpreting Hamilton's argument generously, she claims that the Magistrate Judge correctly granted her relief but incorrectly based that relief on Fifth Amendment grounds. Instead,

7

Hamilton suggests that her risk of violating Illinois's eavesdropping statute, by itself, supplies good cause for a protective order. Had that been the basis for the Magistrate Judge's ruling, perhaps Hamilton could avoid an adverse inference attaching to her refusal to disclose the recordings. But given the deferential standard of review afforded to a magistrate judge's discovery orders, this Court will not reverse the Magistrate Judge's ruling simply because he afforded Hamilton her requested relief on less favorable terms than she preferred. *See Ball v. Kotter*, No. 08-cv-1613, 2009 WL 3824709, at *3 (N.D. Ill. Nov. 12, 2009) ("[U]nder clearly erroneous review, if there are two permissible views, the reviewing court should not overturn the decision solely because it would have chosen the other view." (internal quotation marks omitted)).

If the Magistrate Judge had misapplied the Fifth Amendment and therefore issued a ruling contrary to law, the Court would have reason to look past Hamilton's gamesmanship. Hamilton argues that the Fifth Amendment does not apply (and thus no adverse inference may attach) where she seeks a protective order to avoid being compelled to commit acts constituting the crime of using or disclosing information obtained in violation of Illinois's eavesdropping statute—a crime that she has not yet committed. Essentially, she argues that the Fifth Amendment privilege does not apply to future criminal conduct. But that is not the case. In *Marchetti v. United States*, 390 U.S. 39, 53–54 (1968), the Supreme Court explains that there is "no reason to suppose that the force of the constitutional prohibition [against self-incrimination] is diminished merely because confession of a guilty purpose precedes the act which it is subsequently employed to evidence." Indeed, "if the factual situations in which the privilege may be claimed were inflexibly defined by a chronological formula, the policies which the constitutional privilege is intended to serve could easily be evaded." *Id.* at 54. The Supreme Court therefore held in *Marchetti* that "it is not mere time to which the law must look but the substantiality of the risks of incrimination." *Id.* At the

same time, *Marchetti* emphasizes that future acts will "ordinarily involve only speculative and insubstantial risks of incrimination." *Id.* Accordingly, courts have recognized that the Fifth Amendment privilege only "rarely will apply to future conduct." *United States v. Harvey*, 869 F.2d 1439, 1447 (11th Cir. 1989) ("When the witness has not yet committed the crime, or is not in the process of committing it, his risk of incrimination is generally so speculative as to remove him from the aegis of the fifth amendment privilege.").

In light of *Marchetti*, the Magistrate Judge did not misapply the Fifth Amendment's protection by allowing Hamilton to assert it as to future conduct. *Marchetti* has been described as involving "nothing short of a compelled admission of an intent to violate the law imminently, an admission that would be decisive evidence in a subsequent trial." *United States v. Sasson*, 334 F. Supp. 2d 347, 370 (E.D.N.Y. 2004). The circumstances here are similar. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 189 (2004). It is well established that "the ***act*** of producing documents may be testimonial and incriminating," particularly where compliance with the requested production "concedes the existence (or nonexistence) of the records demanded and their possession or control by the witness." *In re Special Feb. 2011-1 Grand Jury Subpoena Dated Sept. 12, 2011*, 691 F.3d 903, 906 (7th Cir. 2012). If Hamilton were compelled to turn over the audio recordings, which she has already acknowledged were made in violation of 720 ILCS 5/14-2(a)(1) (*i.e.*, they are recordings of a private conversation made without the consent of all participants), she would be admitting that she possessed recordings made in violation of the statute and those recordings are what she is transferring to Breuder in response to his discovery request. That admission establishes all the elements of the crime defined at 720 ILCS 5/14-2(a)(5)

and could subsequently be used to prosecute Hamilton under that statute.[1] Therefore, the Magistrate Judge did not err in recognizing Hamilton's assertion of her Fifth Amendment privilege as to the recordings.

Having properly allowed Hamilton to invoke the Fifth Amendment to shield her recordings from production, it was appropriate for the Magistrate Judge to advise her that an adverse inference could be drawn against her as a result. Yet the Magistrate Judge apparently went further and concluded that the adverse inference *would* apply. To the extent the Magistrate Judge "held" that Hamilton will be subject to an adverse inference instruction at trial, that ruling went beyond the scope of the Court's referral, which was limited to discovery supervision and settlement. The question of whether an adverse inference instruction actually will be given and, if so, the content of the instruction fall outside the scope of the referral. Thus, the Court construes the Magistrate Judge's order as recommending that an adverse inference be allowed.

---

[1] For present purposes, the Court accepts that Hamilton's production of the recordings would potentially violate Illinois's eavesdropping statute. But as Breuder argued to the Magistrate Judge, there is a substantial question regarding whether disclosure of many of the recordings could in fact violate 720 ILCS 5/14-2(a)(5). The recordings were made between January 2013 and November 2015. Yet the current version of Illinois's eavesdropping statute only became effective on December 30, 2014, after the prior version had been amended in response to the Illinois Supreme Court's decision in *People v. Melongo*, 6 N.E.3d 120 (Ill. 2014), which invalidated sections of the statute that otherwise would apply to Hamilton's conduct. As a result of *Melongo*, the legality of Hamilton's recordings made before December 30, 2014 would be governed not by the unconstitutional version of the eavesdropping statute but instead by the statute as it existed before 1994, which is when the version of the statute that was declared unconstitutional was adopted via amendment. *Angelo v. Moriarty*, No. 15 C 8065, 2016 WL 640525, at *3–4 (N.D. Ill. Feb. 18, 2016). Under the pre-1994 version of the statute, as interpreted by the Illinois Supreme Court, "no eavesdropping occurs where an individual to whom statements are made or directed records them, even without the knowledge or consent of the person making the statements, because the declarant does not intend to keep his statements private *vis-a-vis* that individual." *People v. Herrington*, 645 N.E.2d 957, 958–59 (Ill. 1994) (internal quotation marks omitted). Thus, there is a colorable argument that Hamilton's recordings from before the December 30, 2014 effective date of the current eavesdropping statute likely were not illegal due to the lack of consent from other parties to the recorded conversations. It seemingly would follow that Hamilton could not violate 720 ILCS 5/14-2(a)(5) by using or disclosing those recordings since they were not "obtained from a private conversation . . . *in violation of this Article*." *Id.* (emphasis added). However, Breuder does not pursue that argument in his response to Hamilton's objections. Because the issue has not been adequately briefed, the Court declines to address it here.

That recommendation is well taken. Hamilton asserts that allowing an adverse inference based on her withholding of the recordings puts her in a constitutionally untenable bind whereby she must decide either to expose herself to criminal liability or to be subject to an adverse inference. But "[t]hat between-a-rock-and-a-hard-place situation is not uncommon. Even so, courts routinely require witnesses to sit in the witness chair, and make the tough decision about whether to assert the Fifth Amendment." *Johnson v. City of Chicago*, No. 19-cv-3904, 2021 WL 1952489, at *2 (N.D. Ill. May 10, 2021); *see also LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) (allowing an adverse inference to be "drawn from Fifth Amendment silence in civil proceedings" does not "impose an unconstitutional cost on the exercise of the privilege"). The Court ultimately will decide issues concerning the applicability of the adverse inference as they arise. For now, it is enough to conclude that the Magistrate Judge properly recognized Hamilton's invocation of the Fifth Amendment and that, should she continue to withhold the recordings on that basis, her decision will likely have consequences down the line.

The Court next turns to Hamilton's request that the Court conduct an *in camera* review of the recordings should it overrule her objections. In particular, she contends that an *in camera* inspection of the recordings is necessary prior to production to determine the relevancy and materiality of the recordings. Hamilton's request is denied. Notably, she is not being compelled to produce any recording; rather, the Magistrate Judge's order shields her from having to produce the recordings. If Hamilton decides that she would rather produce the recordings (*i.e.*, waive her privilege) than be subject to an adverse inference, she should meet-and-confer with the other parties regarding production and, if need be, raise any issues with the Magistrate Judge in the first

instance. As it stands, Hamilton's objections to the Magistrate Judge's order concerning her audio recordings are overruled.[2]

## II.  Communications Involving Robling From Before May 21, 2015

With its objection, the Board contends that the Magistrate Judge incorrectly found that it waived the attorney-client privilege with respect to communications that included Robling and were made prior to May 21, 2015—the date on which Robling officially became a College employee.

Since this case was brought under the Court's federal question jurisdiction, federal law governs the Board's assertion of privilege. *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 710 (N.D. Ill. 2015) ("Questions of privilege that arise in the adjudication of federal rights require courts to address the questions as a matter of the federal common law of privileges." (quoting *United States v. Zolin*, 491 U.S. 554, 562 (1989))). The Seventh Circuit has articulated the following test to determine the applicability of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

---

[2] Two additional matters remain to be addresses. First, the other Defendants have filed what they style as a motion for limited relief from the Magistrate Judge's report and recommendation, seeking to argue that their trial should be severed from Hamilton's trial. (Dkt. No. 459.) That motion is granted and a briefing schedule will be set by separate order. Second, Breuder requests that this Court unseal the briefing on Hamilton's objections and the underlying motions for entry of a protective order. The Magistrate Judge stated that he sealed the briefing as a precautionary measure given the privacy interests involved. In ruling on the motions for a protective order, the Magistrate Judge held that the filings should be unsealed except to the extent that any particular filing impacts the privacy interests of persons whose conversations were recorded by Hamilton without their consent. Thus, he directed the parties to meet and confer to determine whether any portion of the filings should remain sealed and submit a joint position paper on the matter. In the position paper, Hamilton argued that the filings should remain sealed pending the Court's ruling on her objections. The seal therefore remained in place. Since the Court has now overruled Hamilton's objections, the parties should proceed as originally instructed by the Magistrate Judge and any disputes should first be heard by him.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). "In addition to protecting statements made by the client, the privilege also protects statements from the lawyer to the client 'where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client.'" *Naik v. Boehringer-Ingelheim Pharms., Inc.*, No. 07 C 3500, 2008 WL 4866015, at *1 (N.D. Ill. June 19, 2008) (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000)). The Seventh Circuit has emphasized that "the scope of the privilege is narrow, because it is in derogation of the search for truth." *White*, 950 F.2d at 430 (internal quotation marks omitted). The party asserting the privilege has the burden of establishing all the essential elements. *Id.*

The Board contends that the Magistrate Judge incorrectly treated the Board's entire argument as to the applicability of the attorney-client privilege to communications that included Robling as predicated on his status as a College employee. Thus, the Magistrate Judge concluded that because Robling was simply a third party prior to the official start of his employment with the College, his involvement in the communications during that time effected a waiver of the privilege. Generally, "statements made by a client to his attorney in the presence of a third person do not fall within the privilege, even when the client wishes the communication to remain confidential, because the presence of the third person is normally unnecessary for the communication between the client and his attorney." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007). The Board claims that the Magistrate Judge erred by failing to consider its argument that, even before May 21, 2015, Robling served as an independent consultant to the Board and therefore its attorney-client privilege extends to communications involving Robling because he was acting as the Board's agent.

While the Seventh Circuit has not directly addressed the issue, "other courts in this District have held, applying varying standards, that the attorney-client privilege in the corporate context may include communications with non-employees who are agents or consultants to the entity." *SEC v. Hollnagel*, No. 07 CV 4538, 2010 WL 11586980, at *13 (N.D. Ill. Jan. 22, 2010). Some courts have adopted a fairly restrictive standard, requiring that the third-party consultant be the functional equivalent of an employee or a *de facto* employee. *Id.* Many courts apply a more lenient standard and require that the corporation demonstrate that the "third party retained by the corporation had confidentially communicated with the corporation's counsel for the purpose of obtaining or providing legal advice." *Id.* Similarly, other courts simply consider "whether the particular communication advanced the underlying purpose of the attorney-client privilege in the corporate context—the encouragement of full and frank communication of relevant information on behalf of the corporate client to attorneys seeking to render legal advice to the client corporation." *Id.*

At bottom, the Magistrate Judge concluded that the Board failed to meet its burden of establishing that any articulation of the exception applied. This Court is not left with a definitive and firm conviction that he was wrong. Indeed, the Board's argument to the Magistrate Judge concerning Robling's consultant status consisted of a single paragraph claiming that, as an independent consultant, Robling served as an advisor to senior leadership and his advice often guided the College's final decisions. As factual support for its claim that he is covered by the privilege, the Board relies solely on Robling's affidavit. But, as the Magistrate Judge explained, the affidavit is unclear as to the work Robling performed for the Board prior to his official employment date. Instead, Robling merely states that he worked for the College between April 2015 and December 2015 (while acknowledging that he did not officially become an employee

until May 21, 2015) and provides a high-level overview of the work he did during that period. (*See* Robling Aff. ¶¶ 6–10.)

More importantly, Robling's affidavit provides little information that would allow either the Magistrate Judge or this Court to conclude that his involvement in the Board's communications with its attorneys was for the purpose of assisting the attorneys in rendering legal services. *See Jenkins*, 487 F.3d at 491 ("[T]here is an exception to the general rule that the presence of a third party will defeat a claim of privilege when that third party is present to assist the attorney in rendering legal services."). No matter which version of the third-party waiver exception is applied, courts consistently have held that the third-party's presence must be necessary to the obtaining or giving of legal advice. *See, e.g.*, *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 17 C 1973, 2018 WL 1804350, at *4 (N.D. Ill. Apr. 17, 2018) ("[S]tatements made to one's attorney in the presence of a third party non-lawyer, who is not necessary to the obtaining or giving of legal advice will result in a waiver of the privilege."); *Heriot v. Byrne*, 257 F.R.D. 645, 666 (N.D. Ill. 2009) ("[T]he attorney-client privilege should be limited to instances where a third party assists a lawyer in giving legal advice, and where the third party's participation was required to enable the attorney to render legal advice." (internal quotation marks omitted)). Determining whether the attorney-client privilege exists is a fact-intensive inquiry. *Motorola Sols.*, 2018 WL 1804350, at *4. Yet, here, the Board fails to explain how Robling's work as an independent consultant aided its attorneys in rendering legal advice.

In sum, the Board had the burden of proving that the 25 attorney-client communications involving Robling from before May 21, 2015 are privileged. It was not clear error for the Magistrate Judge to find that the Board's one-paragraph argument supported by an imprecise and unclear affidavit failed to satisfy its burden, particularly given that the attorney-client privilege is

15

to be construed narrowly. For that reason, the Board's objection to the Magistrate Judge's ruling compelling the disclosure of those 25 communications is overruled.

## CONCLUSION

For the foregoing reasons, Hamilton's objections to the Magistrate Judge's March 31, 2021 ruling regarding her motion for entry of a protective order (Dkt. No. 458) and the Board's objection to the Magistrate Judge's September 9, 2021 discovery order (Dkt. No. 492) are overruled. With respect to Hamilton's objection, the Court considers the Magistrate Judge's conclusions with respect to the availability of an adverse inference as a result of Hamilton's assertion of the privilege as a recommendation. Whether an adverse inference instruction will actually be available to the factfinder and the extent of that adverse inference are matters to be determined by this Court at the appropriate stage in the litigation.

ENTERED:

Dated:  January 31, 2021

Andrea R. Wood
United States District Judge